MORGAN, LEWIS & BOCKIUS LLP
Joseph Duffy, Bar No. 241854
joseph.duffy@morganlewis.com
Nicolette Young, Bar No. 280810
nicolette.young@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel:    +1.213.612.2500
Fax:   +1.213.612.2501

Attorneys for Defendant
ADP, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Plaza Home Mortgage, Inc., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>Automated Data Processing, a Delaware corporation doing business as ADP, LLC; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 3:20-cv-01352-WQH-DEB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>[Notice of Motion and Motion to Dismiss filed concurrently herewith; Order lodged concurrently herewith]<br><br>Date: October 5, 2020<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**<br><br>Judge: Hon. William Q. Hayes<br><br>Complaint filed: March 16, 2020<br>Action removed: July 16, 2020<br>First Amended Complaint filed:<br>August 13, 2020 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................... 1

II.   PROCEDURAL HISTORY ................................................................. 3

III.  RELEVANT FACTUAL BACKGROUND ...................................... 4

     A.   Plaza's Allegations ................................................................ 4

     B.   The MSA ................................................................................ 5

IV.  LEGAL STANDARD ......................................................................... 8

     A.   Federal Rules Of Civil Procedure 12(b)(6) And 8(a) .......... 8

     B.   Federal Rule Of Civil Procedure 9(b) .................................. 9

     C.   Choice Of Law ...................................................................... 9

V.    ARGUMENT ...................................................................................... 9

     A.   The MSA Defeats Plaza's First Amended Complaint .......... 9

     B.   Plaza Fails To Allege Facts Sufficient To State A Claim For
Breach Of Contract ............................................................ 11

     C.   Plaza's Claims for Express Indemnity and Equitable Indemnity
Fail as a Matter of Law ...................................................... 14

     D.   Plaza's UCL Claim Fails Because Plaza Has Not Adequately
Alleged Any Unlawful Or Unfair Conduct Or Unfair, Deceptive,
Untrue, Or Misleading Advertising .................................... 16

     E.   Plaza's Claim For Declaratory Relief Is Improper And Must Be
Dismissed ........................................................................... 19

     F.   Plaza Fails To State Facts Sufficient To Support The Damages
Sought ................................................................................. 21

VI.  CONCLUSION ................................................................................ 22

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 39476285

i

MEMORANDUM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Aetna Life Ins. Co. v. Haworth*
300 U.S. 227, *aff'd*, 568 U.S. 85 (2013)............................................................. 20

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ...................................................................................... 8, 9

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ...................................................................................... 8, 9

*Cook v. Wells Fargo Bank*
No. 09-CV-2757 WQH (NLS), 2010 WL 2724270 (S.D. Cal. July
7, 2010)....................................................................................................... 20

*CRV Imperial-Worthington, LP v. Gemini Ins. Co.*
770 F. Supp. 2d 1070 (S.D. Cal. 2011) ................................................. 19, 20, 21

*EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*
309 F. Supp. 3d 89 (S.D.N.Y. 2018) ................................................................ 20

*Exxon Shipping Co. v. Airport Depot Diner*
120 F.3d 166 (9th Cir. 1997) ............................................................................ 20

*In re: First Am. Home Buyers Prot. Corp. Class Action Litig.*
313 F.R.D. 578 (S.D. Cal. 2016), *aff'd sub nom. Carrera v. First*
*Am. Home Buyers Prot. Co.*, 702 F. App'x 614 (9th Cir. 2017)........................ 17

*In re Sony Litig.*
903 F. Supp. 2d 942 (S.D. Cal. 2012) ................................................. 9, 17, 18, 19

*Liftech Consultants Inc. v. Samsung Shipbuilding & Heavy Indus., Ltd.*
No. C 10-CV-2976 SBA, 2010 WL 4510905 (N.D. Cal. Nov. 2,
2010)........................................................................................................... 14

*Maloney v. Verizon Internet Servs., Inc.*
No. ED CV 08-1885, 2009 WL 8129871 (C.D. Cal. Oct. 4, 2009),
*aff'd*, 413 F. App'x 997 (9th Cir. 2011) ......................................................... 17, 18

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 39476285

ii

MEMORANDUM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

*Marder v. Lopez*
  450 F.3d 445 (9th Cir. 2006) .................................................................... 4

*McAdam v. State Nat. Ins. Co.*
  No. 12-CV-1333 BTM MDD, 2012 WL 4364655 (S.D. Cal. Sept.
  24, 2012) ............................................................................................... 19

*Moss v. U.S. Secret Serv.*
  572 F.3d 962 (9th Cir. 2009) .................................................................... 8

*Rhynes v. Stryker Corp.*
  No. 10-CV-5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011) ................ 19

*Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*
  806 F.2d 1393 (9th Cir. 1986) ................................................................. 11

*Symquest Grp., Inc. v. Canon U.S.A., Inc.*
  186 F. Supp. 3d 257 (E.D.N.Y. 2016) ....................................... 11, 12, 13

**CALIFORNIA CASES**

*BFGC Architects Planners, Inc. v. Forum/Mackey Constr., Inc.*
  119 Cal. App. 4th 848 (2004) .................................................................. 15

*Daugherty v. Am. Honda Monotor Co., Inc.*
  144 Cal. App. 4th 824 (2006) .................................................................. 17

*Gregory v. Albertson's, Inc.*
  104 Cal. App. 4th 845 (2002) .................................................................. 16

*Khoury v. Maly's of Calif., Inc.*
  14 Cal. App. 4th 612 (1993) .................................................................... 16

*Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*
  34 Cal. 4th 960 (2004) ............................................................................ 22

*Taliaferro v. Taliaferro*
  125 Cal. App. 2d 419 (1954) ................................................................... 20

**OTHER CASES**

*Chatham Towers, Inc. v. Castle Restoration & Constr., Inc.*
  151 A.D.3d 419 (N.Y. App. Div. 2017) ..................................................... 15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

DB2/ 39476285

MEMORANDUM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

*Greenfield v. Phillies Records, Inc.*
    98 N.Y.2d 562 (N.Y. 2002) ................................................................. 21

*Tonking v. Port Auth. of N.Y. & N.J.*
    3 N.Y.3d 486 (N.Y. 2004) ................................................................. 14

**FEDERAL STATUTES**

28 U.S.C. § 2201 ................................................................................. 20

**OTHER STATUTES**

Bus. & Prof. Code § 17200 *et seq.* ..................................................... passim

N.Y. Prac., Contract Law § 22:22 ....................................................... 22

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a) ......................................................................... 8, 9

Fed. R. Civ. P. 9(b) ...................................................................... 3, 9, 18

Fed. R. Civ. P. 12(b)(6) ................................................................... 3, 8

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 39476285

iv

MEMORANDUM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

1      **MEMORANDUM OF POINTS AND AUTHORITIES**

2          ADP, Inc., f/k/a ADP, LLC ("ADP") respectfully submits this Memorandum

3      of Points and Authorities in support of its Motion to Dismiss the First Amended

4      Complaint filed by Plaintiff Plaza Home Mortgage, Inc. ("Plaza").

5      **I.    INTRODUCTION**

6          ADP and Plaza's relationship is governed by a negotiated written contract

7      between sophisticated parties.  That contractual relationship addresses each of

8      Plaza's complaints against ADP in this action, and either assigns responsibility to

9      Plaza or establishes a contractual standard that Plaza has not met—and cannot

10     meet—to support the relief it seeks.  As a matter of law, the parties' contract bars

11     Plaza's claims in their entirety, and Plaza cannot allege sufficient factual support to

12     the contrary.[1]

13         More specifically, in separate underlying lawsuits, Plaza faces claims from

14     current and former employees that Plaza failed to provide meal and other break

15     times and failed to pay the overtime wages that result from failure to provide such

16     breaks.  Plaza has denied all liability as to these underlying lawsuits, while also

17     turning to ADP to cover any expenses that Plaza may incur relating to those

18     actions.  In its attempt to state claims against ADP, Plaza does not—because it

19     cannot—allege facts sufficient to state plausible claims for relief.  Plaza's

20     allegations amount to a mischaracterization of the parties' agreements and their

21     respective obligations thereunder, coupled with conclusory statements and legal

22     conclusions that cannot sustain its causes of action.  Plaza's first amendment has

23     not improved its cause of action.

24         Plaza's mischaracterization of the parties' agreement is the fundamental flaw

25

26     _____

       [1] Though Plaza's claim for unfair business practices under Bus. & Prof. Code §
27     17200 *et seq.* does not directly stem from the parties' contract, it is based on the
       conduct "described above," which recounts the scope of the services ADP offers
28     under the parties' agreement, and fails to sufficiently plead facts to support the
       claim.  FAC ¶¶ 57-60.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 39476285

1

MEMORANDUM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

1  in its legal theory and comes in two forms.  *First*, Plaza summarily alleges the bare
2  legal conclusion that ADP negligently designed and implemented certain payroll
3  software and also failed to obtain from Plaza all information needed to run that
4  payroll software.  These failures allegedly resulted in the unpaid break time claims
5  asserted by Plaza's employees.  Plaza ignores that under the parties' agreement,
6  Plaza is responsible for how it uses ADP's payroll system, is responsible for giving
7  all necessary instruction to ADP for operation of that system, is responsible for the
8  accuracy of the employee data entered in that system, and is ultimately responsible
9  for maintaining its own compliance with applicable regulatory and policy
10  requirements like mandatory breaks and compensation for missed breaks.  *Second*,
11  Plaza asserts that ADP must indemnify Plaza, but fails to sufficiently allege the full
12  extent of the parties' indemnification agreement, the terms of which do not support
13  Plaza's claims.

14      This fundamental flaw defeats Plaza's First Amended Complaint as follows:

15      &bull; *First*, Plaza cannot state a claim for breach of contract because the
16          obligations allegedly breached were either owed by Plaza, not ADP, or
17          because the contractually agreed-to standard entitling Plaza to relief
18          has not been satisfied by the facts alleged.

19      &bull; *Second*, Plaza cannot state claims for express indemnity or equitable
20          indemnity because such relief is either prohibited by the parties'
21          contractual arrangements or barred on account of the Plaza's failure to
22          sufficiently allege tort liability.

23      &bull; *Third*, Plaza cannot state a claim for unfair business practices because
24          it has failed to allege facts sufficient to show unfair or unlawful
25          conduct or unfair, deceptive, untrue, or misleading advertising by ADP
26          and seeks economic relief, not the equitable relief provided under Bus.
27          & Prof. Code § 17200 *et seq.*

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 39476285

2

MEMORANDUM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

- *Fourth*, Plaza cannot state a claim for declaratory relief because the relief sought concerns a hypothetical controversy and serves no purpose.
- *Fifth*, Plaza fails to state a claim for incidental or consequential damages because such a recovery is barred by the terms of the parties' agreement, and Plaza has not sufficiently pled an exception.

Thus, Plaza's First Amended Complaint, in its entirety, must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) without leave to amend.

## II.   PROCEDURAL HISTORY

On March 16, 2020, Plaza filed a complaint for damages and declaratory relief in the Superior Court of the State of California, County of San Diego, entitled *Plaza Home Mortgage, Inc., a California corporation, Plaintiff v. Automated Data Processing, Inc., a Delaware corporation doing business as ADP, LLC; and DOES 1 through 20, inclusive*, Case No. 37-2020-00016686-CU-BC-CTL (the "Original Complaint"), alleging eight causes of action: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Express Indemnity; (4) Equitable Indemnity; (5) Negligence; (6) Unfair Business Practices (Bus. & Prof. Code § 17200 *et seq.*); (7) Contribution; and (8) Declaratory Relief.  Plaza served ADP with the Original Complaint on June 16, 2020.  On July 16, 2020, ADP timely removed the action to this Court and, on July 23, 2020, moved to dismiss the Original Complaint under Fed. R. Civ. P. 12(b)(6) and 9(b).  Instead of opposing ADP's motion to dismiss, Plaza filed a first amended complaint alleging five causes of action: (1) Breach of Contract; (2) Express Indemnity; (3) Equitable Indemnity; (4) Unfair Business Practices (Bus. & Prof. Code § 17200 *et seq.*); and (5) Declaratory Relief (the "First Amended Complaint" or "FAC").  ADP now moves to dismiss the First Amended Complaint under Fed. R. Civ. P. 12(b)(6) and 9(b).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 39476285

3

MEMORANDUM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

### III. **RELEVANT FACTUAL BACKGROUND**

#### A. **Plaza's Allegations**[2]

ADP provides payroll and human resources services to its clients, including Plaza.  FAC ¶ 6.  On May 22, 2017, Plaza signed a Master Services Agreement ("MSA") with ADP to obtain such services, including payroll processing through the ADP Workforce Now Time and Attendance module ("TA Module").  *See* FAC ¶ 13; MSA, attached here to as **Exhibit A**.[3]  Plaza employees entered their time in TA Module and ADP assigned a pay code based on the data provided.  FAC ¶ 13. In turn, the assigned pay codes dictated how individual employees were paid.  FAC ¶ 13.  Plaza alleges that ADP's payroll software was "negligently designed and implemented."  FAC ¶ 5.  In support of this conclusion, Plaza alleges system changes in 2016 that pre-date the MSA, its own payment of alleged "missed meal period premiums" to select employees in 2018, and certain categories of allegedly erroneous data.  *See* FAC ¶¶ 14-15, 21.

On account of these alleged failures, Plaza asserts that three lawsuits were filed by current former employees against Plaza:  *Leslie McDonough v. Plaza Home Mortgage, Inc.*, Superior Court of the State of California, County of San Diego, Case No. 37-2018-00020121-CU-OE-CTL; *Mario R. Guerrero v. Plaza Home Mortgage, Inc.*, Superior Court of the State of California, County of San Diego, Case No. 37-2018-00027882-CU-DE-CTL; *Mario R. Guerrero, et al. v. Plaza Home Mortgage, Inc.*, Superior Court for the State of California, County of

---

[2] These facts are taken from Plaintiff's First Amended Complaint and are accepted as true for purposes of the instant Motion.

[3] A true and correct copy of the MSA is attached hereto as **Exhibit A**.  The MSA superseded the parties' prior agreements.  MSA, Annex A, Section 13.A.; Original Compl. ¶ 33 ("The 2017 Agreement [MSA] superseded prior agreements.").  The Court may consider the MSA for this Motion to Dismiss because the First Amended Complaint necessarily relies on and refers to it, it is central to Plaza's claims, and its authenticity is not contested.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 39476285

4

MEMORANDUM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

1  Imperial, Case No. ECU001150 (collectively, the "Lawsuits Against Plaza").[4]  FAC

2  ¶ 17.

3       Plaza alleges that, on April 12, 2018, it "sent ADP a litigation hold and put

4  ADP on notice" of "a wage and hour demand from counsel representing multiple

5  Plaza ex-employees."  FAC ¶ 16.  Thereafter, the Lawsuits Against Plaza were

6  filed, and Plaza alleges that it provided copies thereof to ADP and "requested that

7  ADP confirm it would honor its agreement to indemnify, defend, and hold Plaza

8  harmless pursuant to the terms of their agreement."  FAC ¶¶ 17-18.  Plaza alleges

9  that ADP provided the following response:  "ADP had the accurate design to

10  comply with the legal and regulatory requirements of California law, however,

11  ADP claimed Plaza 'failed to give instructions to implement it.'"  FAC ¶ 19.

12       Separately, without regard for its own compliance obligations, Plaza selects

13  three quotations from ADP's website and alleges that its experience was "contrary

14  to" or "a stark contrast to" portions of those statements.  *See* FAC ¶¶ 14, 19, 29.

15  Plaza does not allege when it read those statements or that it relied on them when

16  deciding to contract with ADP, instead alleging that it "relied on ADP's expertise."

17  FAC ¶ 6.

18       The allegations of the First Amended Complaint are insufficient in at least

19  two respects: (1) they fail to present facts giving rise to any claim on which relief

20  could be granted and (2) they fail to fully and accurately present the parties'

21  contractual agreements and related roles and obligations, which likewise bar Plaza's

22  claims.

23       **B.**    **The MSA**

24       Plaza's First Amended Complaint is largely premised on incomplete excerpts

25  of the parties' respective contractual obligations under the MSA.  Relevant

---

26  [4] On or around January 24, 2020, Mr. Guerrero dismissed his first complaint and

27  filed a new class-action complaint.  FAC ¶ 23.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 39476285

5

MEMORANDUM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

provisions are included below, with all language omitted by Plaza in *italics.*

Annex A, Section 2.A.

**Services**.  . . . *Services may include the provision of certain ADP Products and Client shall comply with the terms of this Agreement related to such ADP Products. . . .*  ADP will provide the Services in a good, diligent and professional manner in accordance with industry standards, utilizing personnel with a level of skill commensurate with the Services to be performed.

Annex A, Section 2.E.ii.

**Compliance.   Design of Services.**   ADP will design the Services, including the functions and processes applicable to the performance of the Services, to assist the Client in complying with its legal and regulatory requirements applicable to the Services, and ADP will be responsible for the accuracy of such design. *Client and not ADP will be responsible for (i) how it uses the Services to comply with its legal and regulatory requirements and (ii) the consequences of any instructions that it gives or fails to give to ADP, including as part of the implementation of the Services, provided ADP follows such instructions.*

Annex A, Section 7.B.

**Limit on Liability.  No Consequential Damages.**[5] *NEITHER ADP NOR CLIENT WILL BE RESPONSIBLE FOR SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL, PUNITIVE OR OTHER SIMILAR DAMAGES . . . .  THE FOREGOING EXCLUSION SHALL NOT APPLY TO CLAIMS FOR CONSEQUENTIAL DAMAGES TO THE EXTENT ARISING FROM (i) EITHER PARTY'S WILLFUL, CRIMINAL OR FRAUDULENT MISCONDUCT, OR (ii) ADP'S BREACH OF ITS CONFIDENTIALITY OBLIGATIONS UNDER SECTION 6 OF THIS ANNEX A OR ADP'S BREACH OF ITS DATA SECURITY OBLIGATIONS UNDER SECTION 8C OF THIS ANNEX A; . . . .*

Annex A, Section 7.C.

**Limit on Liability.  General Indemnity.**[6]  Subject to monetary limit on damages in Section 7.A. of the Annex A of the

---

[5] As amended by the Addendum to the MSA.

[6] As amended by the Addendum to the MSA.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 39476285

6

MEMORANDUM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

Agreement, ADP will indemnify, defend and hold Client harmless from and against any and all third party liabilities, claims, penalties, damages, forfeitures, suits, and the costs and expenses incident thereto (including the costs and expenses of defense, settlement and reasonable attorneys' fees), arising from the negligence or willful misconduct of ADP in its performance of the Services including any Incident *provided that, (i) ADP is promptly notified in writing of such suit or cause of action, (ii) ADP controls any negotiations or defense and Client assists ADP as reasonably required by ADP, and (iii) Client takes all reasonable steps to mitigate any potential damages that may result.*

Annex D, Section 2.A.

**Time and Attendance Managed Services [including TA Module].  End of Pay Period Administration; Resolution of Error Exceptions.**  *Client acknowledges and agrees that Client will be responsible for ensuring that all time and labor data input submitted by Client to ADP is accurate, complete and delivered on time.*

Annex D, Section 2.B.

**Time and Attendance Managed Services [including TA Module].  Data Administration.**  *All data entry, adjustment and corrections to the TA module must be made by Client. . . .  Prior to commencement of Services, Client shall provide to ADP all necessary information and guidance relating to its time and attendance policies and guidelines and coordinate with ADP to establish standards for ADP in its execution of the Services.*

Schedule 1 to Annex D, Client Roles and Responsibilities

**Payroll Services. Time and Attendance Managed Services [including TA Module].**  *Provide to ADP Client business rules and policies for time capture, changes in organizational structure, etc. required to set-up and maintain TA module.*

*Collect employee time according to Client business rules and policies within the appropriate payroll schedule.*

*Client assigns employees to work schedules within TA module.*

*Review and approve employee time data; notify employees and*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 39476285

7

MEMORANDUM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

*reconcile error exceptions and discrepancies in accordance with Client business rules and policies.*

*Client is responsible for all time entries, adjustments and approvals.*

## IV.   LEGAL STANDARD

### A.   Federal Rules Of Civil Procedure 12(b)(6) And 8(a)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a plaintiff must plead factual content allowing the court to draw a reasonable inference that the defendant is liable). It is well-settled that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Plaza must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

This Court must disregard "legal conclusions" and "conclusory statements" and must scrutinize the well-pleaded factual allegations to ensure that they are more than "merely consistent with a defendant's liability." *Iqbal*, 556 U.S. at 677-79 (citations omitted). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Rule 8(a) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief" and a pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Conclusory allegations are "disentitle[d] . . . to the presumption of truth." *Iqbal*, 556 U.S. at 681.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 39476285

8

MEMORANDUM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

1

**B.     Federal Rule Of Civil Procedure 9(b)**

2      Rule 9(b) applies to California consumer protection claims.  *In re Sony Litig.*,

3   903 F. Supp. 2d 942, 967 (S.D. Cal. 2012).  A plaintiff "must state the time, place,

4   and specific content of the false misrepresentations as well as the identities of the

5   parties to the misrepresentation" and "set forth an explanation as to why the

6   statement or omission complained of was false and misleading."  *Id.*

7

**C.     Choice Of Law**

8      If this case proceeds beyond the motion to dismiss stage, it may eventually

9   present choice of law questions because, by its terms, the MSA is governed by the

10   laws of the State of New York.  MSA, Annex A, Section 13.I.  But Plaza has

11   alleged certain California state law claims, and certain federal procedural rules

12   apply.  For purposes of this Motion, there is no conflict among the relevant

13   jurisdictions concerning the basic principles that require dismissal of the First

14   Amended Complaint in its entirety.

15   **V.     ARGUMENT**

16      Plaza has not met the pleading requirement described in *Iqbal* and *Twombly*

17   or those necessitated by Fed. R. Civ. P. 8(a) and 9(b), and thus fails to state any

18   claim for which relief can be granted.

19

**A.     The MSA[7] Defeats Plaza's First Amended Complaint.**

20      In essence, Plaza complains that it is facing legal action brought against it by

21   employees alleging that Plaza failed to appropriately provide meal and other break

22   times and then pay the resulting additional compensation to its employees, as

23   required under California law.  Plaza does not accept that these employees

24   sustained damages (*see* FAC ¶¶ 45, 53), yet, in turn, blames ADP, alleging that

25   ADP's payroll software service must have been negligently designed and, as a

26   result, ADP has breached the parties' agreement, must indemnify Plaza, and has

27

28   [7] To the extent implicated, the parties' prior contracts likewise bar Plaza's claims.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 39476285

9

MEMORANDUM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

1   been conducting business unlawfully, unfairly, and pursuant to unfair, deceptive,

2   untrue, or misleading advertising.  Plaza fails to provide sufficient factual detail to

3   support its positions.  Instead, Plaza makes conclusory allegations concerning

4   ADP's alleged failings, without regard for Plaza's own obligations under the

5   parties' contract—which places responsibility for regulatory and policy compliance

6   and the accuracy of all time data on Plaza, and not on ADP.

7        Per the MSA, Plaza is responsible for how it uses ADP's services to comply

8   with its own legal and regulatory requirements.  MSA, Annex A, Section 2.E.ii.

9   Plaza is responsible for the consequences of any instructions that it gives, or fails to

10  give, to ADP.  MSA, Annex A, Section 2.E.ii.  Plaza is responsible for ensuring

11  that all time and labor data input submitted to ADP is accurate and complete.

12  MSA, Annex D, Section 2.A.  Plaza is responsible for providing to ADP all

13  necessary information and guidance relating to its time and attendance policies and

14  guidelines.  MSA, Annex D, Section 2.B.  Specifically regarding TA Module, Plaza

15  is responsible for providing to ADP its business rules and policies for time capture

16  required to set-up and maintain TA module, collecting employee time according its

17  own business rules and policies, assigning employees to work schedules within TA

18  Module, and reviewing and approving employee time data and reconciling errors

19  therein.  MSA, Schedule 1 to Annex D, Client Roles and Responsibilities.  Overall,

20  Plaza "is responsible for all time entries, adjustments and approvals" within TA

21  Module.  MSA, Schedule 1 to Annex D, Payroll Service, Client Roles and

22  Responsibilities.  The MSA is clear:  None of these obligations falls on ADP.

23       Aside from cursory allegations that Plaza complied with the parties'

24  agreement, Plaza rejects its contractual obligations, alleging that "ADP did not ask

25  Plaza to select the laws it wanted ADP to incorporate into its services"; that "ADP

26  never informed Plaza that it would not implement aspects of California wage and

27  hour laws, including without limitation, meal period penalties, unless specifically

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 39476285

10

MEMORANDUM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

1  requested to do so"; and that certain data was erroneous.  FAC ¶¶ 10-11, 21, 26.

2  Under the MSA, Plaza was responsible for providing such instructions to ADP and

3  confirming the accuracy all entered data.  Thus, it is Plaza's own failures—and not

4  any action or inaction by ADP—that have exposed it to potential liability in the

5  Lawsuits Against Plaza.

6        The parties' contractual agreements, and Plaza's responsibilities thereunder,

7  defeat each and every cause of action alleged, as detailed below.  Thus, Plaza has

8  failed to state a claim upon which relief can be granted, ADP cannot be held liable

9  for Plaza's alleged harms, and the First Amended Complaint must be dismissed in

10 its entirety.

11       Since "allegation[s] of other facts consistent with the challenged pleading

12 could not possibly cure the deficiency," the Court should not grant leave to amend.

13 *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.* 806 F.2d 1393, 1401 (9th

14 Cir. 1986).  Plaza has already attempted to strengthen its allegations through

15 amendment once, to no avail.  A second chance is not warranted.

16        **B.    Plaza Fails To Allege Facts Sufficient To State A Claim For Breach Of Contract.**

17        The MSA is governed by the laws of the State of New York, and "[t]o state a

18 claim for breach of contract under New York law, a complaint must set forth the

19 following elements: (1) a contract; (2) performance of the contract by one party; (3)

20 breach by the other party; and (4) damages."  *Symquest Grp., Inc. v. Canon U.S.A.,*

21 *Inc.*, 186 F. Supp. 3d 257, 263 (E.D.N.Y. 2016) (internal quotation and citation

22 omitted) (applying New York law).  Plaza attempts to assert two breach of contract

23 arguments under this standard, both of which fail.

24        *First*, Plaza alleges that ADP breached the MSA by "failing to provide the

25 Services in a good, diligent and professional manner in accordance with industry

26 standards, utilizing personnel with a level of skill commensurate with the Services

27 to be performed."  FAC ¶ 27.  No factual allegations support this assertion.  Plaza

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 39476285

11

MEMORANDUM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

1    fails to allege what actions by ADP were not good, not diligent, not professional, or

2    not in accordance with industry standards.  Plaza makes no allegations concerning

3    the ADP personnel who worked on its account.  Plaza's only factual allegations—

4    errors in how its employees entered time data and errors in how Plaza paid its

5    employees—implicate Plaza's obligations under the MSA, not ADP's.  *See*

6    Sections III.B. & V.A., *supra.*  A breach of contract claim cannot stand where the

7    failed contractual obligation was not owed by the defendant.  *Symquest Grp.*, 186 F.

8    Supp. 3d at 264-65 (dismissing breach of contract claim under New York law

9    where the alleged breach was not defendant's obligation).

10     *Second*, Plaza alleges that ADP breached the MSA by failing to indemnify

11   and defend Plaza in the Lawsuits Against Plaza.  FAC ¶ 35.  This allegation

12   presumes that Plaza is entitled to indemnification under the MSA, which it is not.

13   A general indemnification provision is not included in the parties' main contract,

14   but Plaza negotiated for inclusion of the following provision in an Addendum to the

15   MSA.  Under that provision, ADP will indemnify Plaza for the following:

16     ADP will indemnify, defend and hold Client harmless from and
17     against any and all third party liabilities, claims, penalties,
  damages, forfeitures, suits, and the costs and expenses incident
18     thereto (including the costs and expenses of defense, settlement
  and reasonable attorneys' fees), ***arising from the negligence or***
19     ***willful misconduct of ADP in its performance of the Services***
***including any Incident provided that, (i) ADP is promptly***
20     ***notified in writing of such suit or cause of action, (ii) ADP***
21     ***controls any negotiations or defense and Client assists ADP as***
***reasonably required by ADP, and (iii) Client takes all***
22     ***reasonable steps to mitigate any potential damages that may***
23     ***result.***

24   MSA, Annex A, Section 7.C. (emphasis added).

25     By its plain terms, Plaza's right to indemnification only arises from "the

26   negligence or willful misconduct of ADP."  Plaza fails to sufficiently allege either.

27   Plaza alleges that ADP's payroll software was negligently designed and

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 39476285

12

MEMORANDUM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

implemented, but fails to provide sufficient factual support for that allegation.
Instead, Plaza alleges system changes in 2016 that pre-date the MSA, its own
payment of alleged "missed meal period premiums" to select employees in 2018,
and certain categories of allegedly erroneous data. *See* FAC ¶¶ 14-15, 21. Even if
sufficiently pled—which Plaza has failed to do—acts that pre-date the MSA,
corrective payments to mitigate "potential liability," and Plaza's failure to confirm
the accuracy of submitted data do not equate to ADP's negligence under the MSA.
It is Plaza's obligation to confirm the accuracy all data—an obligation Plaza claims
to have satisfied, despite its complaints to the contrary. *See* Section III.B., *surpa*;
FAC ¶¶ 10, 26. Other than instances where Plaza directly quotes or parrots Section
7.C., the First Amended Complaint makes no allegation concerning willful
misconduct by ADP. *See* FAC ¶¶ 9, 39-40, 62-64, Prayer for Relief no. 6.

Without sufficiently alleging that the third-party claims Plaza faces "aris[e]
from the negligence or willful misconduct of ADP in its performance of the
Services," indemnification is not owed. Without its indemnification obligation
triggered, ADP could not have breached the MSA by rejecting Plaza's
indemnification request. The claim must fail. *See Symquest Grp.*, 186 F. Supp. 3d
at 264 (dismissing breach of contract claim under New York law where the alleged
breach was within defendant's contractual rights).

Additionally, Plaza's allegations have not sufficiently addressed the full
extent of the bargained-for indemnification provision—i.e., "(i) ADP is promptly
notified in writing of such suit or cause of action, (ii) ADP controls any
negotiations or defense and Client assists ADP as reasonably required by ADP, and
(iii) Client takes all reasonable steps to mitigate any potential damages that may
result." MSA, Annex A, Section 7.C. The First Amended Complaint does not
allege facts showing that Plaza "promptly notified [ADP] in writing of" the
Lawsuits Against Plaza. Plaza alleges that, on or around April 12, 2018, it "sent

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 39476285

13

MEMORANDUM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

1  ADP a litigation hold notice and put ADP on notice of a wage and hour demand

2  from counsel representing multiple Plaza ex-employees."  FAC ¶ 16.  This

3  allegation does not state whether the April 12, 2018 notice was provided in writing

4  or otherwise.  In later allegations, Plaza asserts that it "gave written notice to ADP

5  of the commencement of the McDonough and Guerrero complaints," but does not

6  state when.  FAC ¶¶ 46, 54.  The First Amended Complaint is devoid of allegations

7  concerning whether ADP controls any negotiations or defense of the Lawsuits

8  Against Plaza and makes one passing reference to "mitigate[ing] [Plaza's] potential

9  liability."  FAC ¶ 15.  It is unknown whether that mitigation effort occurred before

10  or after the filing of the Lawsuits Against Plaza or to what extent it addressed the

11  full extent of the indemnity Plaza claims is owed.  Again, by its own terms, the

12  First Amended Complaint does not show that indemnification was owed under the

13  MSA.  ADP cannot breach an obligation that is not owed, so this claim must fail.

14  ### C.  Plaza's Claims for Express Indemnity and Equitable Indemnity Fail as a Matter of Law.

15  As established in Section V.B.¸ *supra*, Plaza is not entitled to indemnification

16  from ADP.  Assertion of separate causes of action for Express and Equitable

17  Indemnity does not change that.  Both New York and California law are clear that

18  when the parties' contract provides for indemnification, the contractual language

19  controls, thus defeating these claims.  *See Tonking v. Port Auth. of N.Y. & N.J.*, 3

20  N.Y.3d 486, 490 (N.Y. 2004) (dismissing indemnification claim and stating "a

21  contract assuming that [indemnification] obligation must be strictly construed to

22  avoid reading into it a duty which the parties did not intend to be assumed");

23  *Liftech Consultants Inc. v. Samsung Shipbuilding & Heavy Indus., Ltd.*, No. C 10-

24  CV-2976 SBA, 2010 WL 4510905, at *4 (N.D. Cal. Nov. 2, 2010) (internal

25  quotation marks and citation omitted) (applying California law and dismissing

26  claims where "the parties have expressly contracted with respect to the duty to

27  indemnify, the extent of the duty must be determined from the contract and not by

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 39476285

14

MEMORANDUM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

1   reliance on the independent doctrine of equitable indemnity").  By its own

2   allegations, Plaza's claim for Express Indemnity relies on the indemnification

3   provision of the parties' agreement.  That agreement controls, and indemnification

4   is not owed thereunder.  *See* Section V.B.¸ *supra.*

5        Plaza's claim for Equitable Indemnity seeks to obtain indemnification

6   outside of the MSA, which the parties entered into on May 22, 2017, by seeking

7   relief related to "any member of the defined class [in the Lawsuits Against Plaza]

8   during the period of April 23, 2014 to May 21, 2017."  FAC ¶ 53.  This claim fails

9   for two reasons.

10       *First*, before the MSA, the parties' relationship was governed by other

11  contractual agreements that did not provide for the indemnification Plaza now

12  seeks.  Plaza makes no allegation that suggests otherwise.  *Second*, to the extent

13  Plaza seeks to state a claim outside of any contractual agreement, that claim must

14  be based on tort liability against ADP.  *BFGC Architects Planners, Inc. v.*

15  *Forum/Mackey Constr., Inc.*, 119 Cal. App. 4th 848, 852-53 (2004) (dismissing

16  equitable indemnity claim for lack of predicate tort liability where claim was based

17  on breach of contract, without any action sounding in tort); *Chatham Towers, Inc.*

18  *v. Castle Restoration & Constr., Inc.*, 151 A.D.3d 419, 420 (N.Y. App. Div. 2017)

19  (dismissing claim for equitable (or common law) indemnification where plaintiff

20  sought recovery because of defendant's alleged breach of contract, and did not seek

21  to hold defendant vicariously liable for negligence).  Plaza has not alleged (because

22  it cannot) a basis for tort liability against ADP—Plaza even dropped a purported

23  "negligence" claim from the Original Complaint.  Simply seeking relief via

24  indemnification "in equity and good conscience" does not overcome the

25  aforementioned restrictions.  FAC ¶ 56.

26

27

28

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Los Angeles

DB2/ 39476285

15

MEMORANDUM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

**D.    Plaza's UCL Claim Fails Because Plaza Has Not Adequately Alleged Any Unlawful Or Unfair Conduct Or Unfair, Deceptive, Untrue, Or Misleading Advertising.**

In its cause of action for Unfair Business Practices in Violation of Bus. & Prof. Code § 17200 *et seq.* ("UCL"), Plaza summarily asserts that ADP "engaged in an unfair or unlawful or fraudulent business practice, and/or unfair, deceptive, untrue, or misleading advertising as described above . . . ."  FAC ¶ 58.  Plaza fails to allege facts sufficient to support such conduct by ADP.

*First*, Plaza's claim fails under the "unlawful" prong of Section 17200 because it fails to identify, as it must, which law, statute, or regulation it believes ADP violated.  To state a cause of action based on an "unlawful" business act or practice under the UCL, a plaintiff must identify a predicate violation on which the UCL claim is based, and describe with "reasonable particularity" facts sufficient to show a violation of that law.  *See Khoury v. Maly's of Calif., Inc.*, 14 Cal. App. 4th 612, 619 (1993) (dismissing claim where complaint "identifie[d] no particular section of the statutory scheme which was violated and fail[ed] to describe with any particularity facts supporting violation").  Other than cursory allegations that ADP's acts were "unlawful," Plaza does not identify any specific statute, state law, or federal law on which its UCL claim rests.  *See* FAC ¶¶ 58-59.  And, the First Amended Complaint fails to assert a violation of any kind with "reasonable particularity."  Plaza has therefore failed to state a claim under the UCL's unlawful prong.

*Second,* Plaza's claim fails under the "unfair" prong of Section 17200 because it fails to identify with reasonable particularity any alleged business practice by ADP that was allegedly unfair and that was allegedly applied to it.  For purposes of the UCL, a business practice is "unfair" when the conduct "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."  *See Gregory v. Albertson's,*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 39476285

16

MEMORANDUM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

1    *Inc.*, 104 Cal. App. 4th 845, 852, 854 (2002). No such allegation exists in the First

2    Amended Complaint.

3       Moreover, plaintiffs asserting claims under the "unfair" prong bear the

4    burden of proving that they suffered a "substantial" injury that they could not

5    reasonably have avoided and that it is "not outweighed by any countervailing

6    benefits to consumers or to competition." *Daugherty v. Am. Honda Monotor Co.,*

7    *Inc.*, 144 Cal. App. 4th 824, 839 (2006). There are no such allegations in Plaza's

8    First Amended Complaint. Accordingly, Plaza has failed to state a claim under the

9    UCL's unfair prong.

10       *Third*, Plaza's claim fails under the "advertising" prong of Section 17200

11    because it cannot "show that members of the public are likely to be deceived." *In*

12    *re Sony Litig.*, 903 F. Supp. 2d at 967. "Likely to deceive . . . indicates that the ad

13    is such that it is probable that a significant portion of the general consuming public

14    or of targeted consumers, acting reasonably in the circumstances, could be

15    misl[e]d." *Id.* (internal quotation marks and citation omitted). Statements that

16    amount to "mere puffery" are not actionable. *In re: First Am. Home Buyers Prot.*

17    *Corp. Class Action Litig.*, 313 F.R.D. 578, 608 (S.D. Cal. 2016), *aff'd sub nom.*

18    *Carrera v. First Am. Home Buyers Prot. Co.*, 702 F. App'x 614 (9th Cir. 2017)

19    ("no reasonable consumer relies on puffery"). And, agreement with the advertising

20    party that negates the allegedly unfair, deceptive, untrue, or misleading advertising

21    defeats a claim. *See, e.g.*, *In re Sony Litig.*, 903 F. Supp. 2d at 968 (dismissing

22    UCL claim because "no reasonable consumer could have been deceived" where

23    plaintiffs agreed to "clear admonitory language that Sony's security was not

24    'perfect'"); *Maloney v. Verizon Internet Servs., Inc.*, No. ED CV 08-1885, 2009

25    WL 8129871, at *5 (C.D. Cal. Oct. 4, 2009), *aff'd*, 413 F. App'x 997 (9th Cir.

26    2011) (dismissing UCL claim where advertising qualified in the terms of service

27    contract "was not likely to deceive a reasonable customer"). Moreover, pursuant to

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 39476285

17

MEMORANDUM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

1   Rule 9(b), a plaintiff "must state the time, place, and specific content of the false

2   misrepresentations as well as the identities of the parties to the misrepresentation"

3   and "set forth an explanation as to why the statement or omission complaint of was

4   false and misleading." *In re Sony Litig.*, 903 F. Supp. 2d at 967.

5       Plaza cannot meet these standards.  Plaza does not allege (let alone with

6   particularity) when it read the challenged statements from ADP's website[8] or that it

7   relied on and was deceived by those statements.  Plaza also fails to allege that a

8   reasonable consumer was likely to be deceived by the quoted content.  Plaza's

9   allegations amount to its own impression that its experience was "contrary to" or "a

10  stark contrast to" portions of statements on ADP's website—which Plaza may or

11  may not have read before contracting with ADP, or ever—because it has been sued

12  by current and former employees alleging non-compliance with California law

13  (claims that Plaza denies).  *See generally* FAC ¶¶ 5-23.  Plaza's claim fails on this

14  ground alone.

15      But, even accepting for purposes of this Motion only that the statements

16  Plaza has identified could be actionable, Plaza's claim is negated by the express

17  terms of its written negotiated contract with ADP in which Plaza, not ADP,

18  accepted ultimate responsibility for maintaining its own compliance with applicable

19  regulatory and policy requirements, as well as the accuracy, completeness, and

20  timeliness of all data.  *See* Section III.B., *supra.*  No reasonable consumer could be

21  deceived by the quoted language on Plaza's website when also agreeing to these

---

[8] The First Amended Complaint alleges that ADP's website contains the following statements:  (1) "In addition to taking work off your plate and freeing up time for you and your staff, ADP stays on top of changing rules and regulations – to help keep you compliant and protect you from potential fines and penalties."  (2) "ADP payroll services help you save time with these convenient features: Automated and error-free online payroll processing."  (3) "We've got your back for compliance and more.  Rest easier, knowing that your payroll is always accurate, on time and in compliance.  Our 2,500+ compliance and support specialists make it their job to stay on top of regulations – so you don't have to.  You'll know you're in compliance with local, state, federal and global payroll and tax regulations, tax reform, overtime rules, FLSA, Health Care Reform, EEOC, new-hire reporting and much more."  FAC ¶ 7.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 39476285

18

MEMORANDUM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

specific responsibilities, as Plaza has done.  *See In re Sony Litig.*, 903 F. Supp. 2d at 968; *Maloney*, 2009 WL 8129871, at *5.  Thus, Plaza has failed to state a claim under the UCL's advertising prong.

*Finally*, Plaza has an adequate remedy at law, which precludes its UCL claim.  "The UCL only provides equitable remedies," limited to restitution and injunctive relief.  *Rhynes v. Stryker Corp.*, No. 10-CV-5619 SC, 2011 WL 2149095, at *3 (N.D. Cal. May 31, 2011) (dismissing UCL claim where alleged money damages provide adequate remedy at law).  Plaza's UCL claim must be dismissed because any damages it suffered are based on an alleged breach of contract.  Plaza's claim, if any, is for whatever contractual damages are available to it under the MSA.  *See, e.g.*, *McAdam v. State Nat. Ins. Co.*, No. 12-CV-1333 BTM MDD, 2012 WL 4364655, at *3 (S.D. Cal. Sept. 24, 2012) (dismissing UCL claim with prejudice where plaintiff "has an adequate legal remedy in the form of his breach of contract claim and does not have a legitimate claim for injunctive relief or restitution").

For the foregoing reasons, Plaza has failed to state a claim under the UCL and this cause of action must be dismissed.

### E. Plaza's Claim For Declaratory Relief Is Improper And Must Be Dismissed.

Plaza seeks a declaration from this Court that ADP must honor an excerpted portion of the General Indemnity provision in Annex A, Section 7.C. of the parties' MSA that is inapplicable to the facts alleged—the same relief Plaza seeks in its claims for Breach of Contract and, Express Indemnity, and Equitable Indemnity.  *Compare* FAC ¶¶ 61-65 *with* 24-56.  This claim for Declaratory Relief fails for several reasons.

*First*, Ninth Circuit precedent[9] dictates that this claim must be dismissed

---

[9] "When a claim for declaratory relief is in federal court based on diversity of citizenship, the 'the question whether to exercise federal jurisdiction to resolve the controversy becomes a procedural question of federal law." *CRV Imperial-*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 39476285

19

MEMORANDOM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

because the relief serves no purpose and "would not address any issues that are not addressed by [Plaza's] other claims." *Cook v. Wells Fargo Bank*, No. 09-CV-2757 WQH (NLS), 2010 WL 2724270, at *4 (S.D. Cal. July 7, 2010) (citing *Exxon Shipping Co. v. Airport Depot Diner*, 120 F.3d 166, 168–170 (9th Cir. 1997) ("[A] declaratory judgment action must serve some purpose in resolving a dispute. If the relief serves no purpose, or an illegitimate one, the district court should not grant it.")) (dismissing claim for declaratory relief as duplicative of other claims); *see EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 100 (S.D.N.Y. 2018) (dismissing plaintiffs' declaratory judgment claims as duplicative of their breach of contract claim).

*Second*, Plaza has not sufficiently alleged the requisite non-hypothetical "actual controversy." *See* 28 U.S.C. § 2201; *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, *aff'd*, 568 U.S. 85 (2013) (distinguishing a justifiable controversy from "a difference or dispute of hypothetical or abstract character"). Plaza recites an excerpted portion of the General Indemnity provision in the parties' MSA, improperly extends it to non-qualifying third-party claims, and asserts that "ADP denies such obligation," thereby creating an "actual controversy." FAC ¶¶ 62-63. ADP does not deny that is has an obligation under the MSA to indemnify Plaza, ***when all contractual conditions in the MSA agreed to by the parties entitling Plaza to such indemnification have been satisfied***. Here, as demonstrated above and on the face of the First Amended Complaint, Plaza's allegations fail to show those conditions have been met. *See* Sections V.B. & V.C., *supra*. Instead, Plaza has created a hypothetical controversy by asserting that ADP has denied an obligation that does not exist in the parties' agreement. As presented, Plaza's claim asks this Court to rewrite the existing terms of the parties' written

---

*Worthington, LP v. Gemini Ins. Co.*, 770 F. Supp. 2d 1070, 1072 (S.D. Cal. 2011) (internal quotation marks and citation omitted). "The federal court will still apply state law to the substantive issues in a declaratory judgment action." *Id.*

1   agreement, which is not a permissible request.  *See, e.g.*, *Taliaferro v. Taliaferro*,

2   125 Cal. App. 2d 419, 427 (1954) ("It is settled that the purpose of an action for

3   declaratory relief is to obtain an interpretation of a contract, and a decree in such a

4   case provides only for a determination of the purposes intended by the instrument,

5   and not for a modification of its terms."); *Greenfield v. Phillies Records, Inc.*, 98

6   N.Y.2d 562, 569 (N.Y. 2002) ("[A] written agreement that is complete, clear and

7   unambiguous on its face must be enforced according to the plain meaning of its

8   terms.").

9        *Third*, any actual controversy Plaza could allege must also "relate to a claim

10  upon which relief can be granted."  *CRV Imperial-Worthington, LP v. Gemini Ins.*

11  *Co.*, 770 F. Supp. 2d 1070, 1072-73 (S.D. Cal. 2011) (dismissing declaratory

12  judgment claim where underlying relief could not be granted).  As established

13  throughout, Plaza is not entitled to relief on its first four causes of action, so cannot

14  be entitled to declaratory relief here.

15       *Finally*, Plaza's assertion that the requested judicial determination "will

16  obviate the need for multiple future lawsuits between the same parties" is false.

17  FAC ¶ 65.  A judicial determination that alters the parties' obligations under an

18  existing agreement, the enforceability of which the parties do not dispute, creates

19  additional disputes rather than obviates them.

20       Plaza's claim for Declaratory Relief is improper and serves no purpose, so

21  must be dismissed.

22   **F.    Plaza Fails To State Facts Sufficient To Support The**
23        **Damages Sought.**

24       For all of the foregoing reasons, Plaza's causes of action fail to state facts

25  sufficient to support its claims and fail as matter of law.  Plaza's claims for

26  damages are no different.  In the face of a reciprocal bar on, *inter alia*, incidental

27  and consequential damages in Annex A, Section 7.B. of the MSA, Plaza seeks

28  recovery for "incidental, consequential and non-economic damages, according to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 39476285

21

MEMORANDUM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

1  proof at trial." FAC, Prayer for Relief no. 2. The MSA provides two exceptions to

2  the bar on consequential damages, neither of which are sufficiently pled in the First

3  Amended Complaint. Under the first exception, consequential damages may be

4  recovered when "arising from (i) either party's willful, criminal or fraudulent

5  misconduct." MSA, Annex A, Section 7.B.(i). The First Amended Complaint

6  asserts no criminal or fraudulent misconduct and presents only conclusory

7  allegations concerning willfulness. *See* Section V.B., *supra*. Such allegations do

8  not entitle Plaza to consequential damages here. The second exception concerns

9  breach of confidentiality obligations and data security obligations, which are not

10  relevant to the present action. MSA, Annex A, Section 7.B.(ii).

11  Moreover, to the extent Plaza seeks damages related to the Lawsuits Against

12  Plaza on a theory other than contractual indemnification, such a recovery is

13  prohibited by the MSA's bar on consequential damages. Such damages do not flow

14  directly from the alleged breach, but are still alleged to have been caused by that

15  breach. 28A N.Y. Prac., Contract Law § 22:22 (defining consequential damages);

16  *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 968

17  (2004) (defining consequential or special damages as "those losses that do not arise

18  directly and inevitably from any similar breach of any similar agreement").

19  Damages stemming from the third-party Lawsuits Against Plaza are by definition

20  "consequential" and are therefore barred.

21  Plaza is not entitled to any of the relief it seeks, and it is specifically barred

22  by the MSA from seeking incidental and consequential damages.

23  **VI.  CONCLUSION**

24  For the foregoing reasons, Defendant ADP respectfully requests that the Court

25  dismiss Plaintiff's First Amended Complaint without leave to amend.

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 39476285

22

MEMORANDUM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

1   Dated:       August 27, 2020              MORGAN, LEWIS & BOCKIUS LLP

2

3                                            By  /s/ Joseph Duffy

4                                                Joseph Duffy
                                                 Attorney for Defendant
5                                                ADP, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 39476285

23

MEMORANDUM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

# EXHIBIT A



**Sales Order**
Quote Number
02-2017-2321375.1


A more human resource.

Company Information

Plaza Home Mortgage, Inc.
4820 Eastgate MallSte 100
San Diego, CA 92121-1993
United States

Executive Contact

Mike Fontaine
CFO
mfontaine@plazahomemortgage.com
(858) 346-1210

## Processing Fees and Considerations

Number of Employees: 800 on Plaza Home Mortgage, Inc.

### Monthly Processing

| | Count | Min | Base | Rate | Monthly | Annual |
|---|---|---|---|---|---|---|
| Comprehensive Services Bundle (24.0% Discount) | 800 | $2,575.00 | - | See Below | $29,128.00 | $349,536.00 |
| ▪ Workforce Now Comprehensive Payroll | | | | | | |
| ADP DataCloud (24.0% Discount) | 800 | - | - | $1.20 | $960.00 | $11,520.00 |
| ▪ ADP DataCloud - Analytics | | | | | | |
| Non-Paid Employees, if applicable, based upon client's active coding to 'Non-Paid' | 1 | - | - | $10.40 | $10.40 | $124.80 |
| Workforce Now Document Cloud (24.0% Discount) | 801 | - | - | $1.00 | $801.00 | $9,612.00 |
| Monthly Administrative Fee (24.0% Discount) | 1 | - | $275.00 | - | $275.00 | $3,300.00 |
| Comprehensive Services Bundle | 1 - 99 | | | $51.50 | | |
| | 100 - 249 | | | $43.50 | | |
| | 250 - 499 | | | $34.50 | | |
| | 500 - 999 | | | $29.50 | | |
| Additional Jurisdiction (if applicable) | 2+ | | | $8.95/month | | |

### Annual Processing

| | Count | Min | Base | Rate | Annual |
|---|---|---|---|---|---|
| Year End Forms, W2s or 1099s | 800 | - | - | $6.95 | $5,560.00 |

Carrier Connection Annual Maintenance Fee: 1 Feed - $250 per year; 2 Feeds - $500 per year; Over 2 Feeds - $750 per year

### Total Annual Investment

| | Total Annual |
|---|---|
| Workforce Now Services | $379,652.80 |
| Annualized Discount Value | ($89,752.32) |
| Estimated Total Net Annual Investment | $289,900.48 |

### Other Considerations

| | Count | Rate | Setup |
|---|---|---|---|
| Hardware and Other Fees | | | |
| ▪ Health & Welfare Benefit Carrier Feed Setup | 3 | $0.00 | $0.00 |

| Implementation | | | |
|---|---|---|---|
| ▪ Client does not need or already has hours history in WFN | | | N/A |
| Health & Welfare Benefit Carrier Feed Setup included at no charge: 3 | | | |

Exhibit A, 000024



**Sales Order**
Quote Number
02-2017-2321375.1



A more human resource

Company Information

Plaza Home Mortgage, Inc
4820 Eastgate MallSte 100
San Diego, CA 92121-1993
United States

Executive Contact

Mike Fontaine
CFO
mfontaine@plazahomemortgage.com
(858) 346-1210

## Important Project & Billing Information

**Product Billing**

Billing for Comprehensive Services shall begin upon the earlier of (a) the date the Client is first able to use the services in a live production environment or (b) ninety (90) days from the Effective Date. The billing count is based on all "All Non-Archived" employees excluding terms. Any lives classified as Non-Paid will be billed a separate lower rate. 1099 Contractors paid through a specific 1099 Contractor company code will also be billed via a separate rate.

Any non-terminated employees based outside the United States will be billed separately as International Employees.

**Promotion Terms**

Promotion will be applied to the first month of services (also referred to as the Promotional Period). Actual promotional value may vary based on a number of reasons, including but not limited to: start date and actual number of employees paid.

**Other**

Start Date: Payroll:8/21/2017
Client agrees to direct debit of fees for service:            YES
Expiration Date:                                              5/25/2017

| Summary | | | |
|---|---|---|---|
| Estimated Annual Net Investment: | $289,900.48 | Total Implementation: | $0.00 |
| Estimated Annual Net Investment during promotional period: | $266,205.44 | | |

The ADP Services Listed on this sales order are provided at the prices set forth on the above pages and in accordance with ADP's standard terms and conditions of service attached to this sales order. By signing below you are acknowledging receipt of and, agreement to such terms and conditions and to the listed prices.

ADP, LLC                                                      Client: Plaza Home Mortgage, Inc

Signature:  *Laura Schrandt-Hayward*                         Signature:  _____
Name:       Laura Schrandt-Hayward                           Name:       Aixin Wadsworth
Title:      CS DM                                            Title:      VP of HR
Date:       5/22/2017                                        Date:       5/22/17



**Sales Order**
Quote Number
02-2017-2321375.1


A more human resource.™

Company Information

Plaza Home Mortgage, Inc.
4820 Eastgate MallSte 100
San Diego, CA 92121-1993
United States

Executive Contact

Mike Fontaine
CFO
mfontaine@plazahomemortgage.com
(858) 346-1210

## Workforce Now Included Services

### Workforce Now Comprehensive Payroll
- Enhanced HR
- Enhanced Benefits
- Employee & Manager Service Center
- Service Delivery Manager
- Workforce Now Recruitment
- Essential ACA

- Enhanced Payroll
- Essential Time
- Payroll & Tax Support
- Payroll Specialist
- Workforce Now Performance

### ADP DataCloud - Analytics
- Pre-Configured Key Performance Indicators
- Executive Dashboard

- Ability to Customize Additional KPIs

### Workforce Now Document Cloud
- Secure Cloud Based Document Storage
- Search & Auditing Functionality

- Digital Employee Record
- Roles Based Security

## Thank you for your consideration

Exhibit A, 000026

 Workforce*Now*

ADP Workforce Now Comprehensive Services
MASTER SERVICES AGREEMENT

05-22-2017
(Effective Date)

| | | |
|---|---|---|
| ADP, LLC: | One ADP Boulevard<br>Roseland New Jersey 07068 | (referred to herein as "ADP") |
| CLIENT: | Plaza Home Mortgage, Inc. | (referred to herein as "Client") |
| | 4820 Eastgate MallSte 100<br>San Diego, CA 92121-1993, United States | |
| Attention: | Mike Fontaine | |

ADP and Client agree that ADP shall provide Client with the following services in accordance with the terms and subject to the conditions set forth in this ADP Workforce Now Comprehensive Services Master Services Agreement (the "Agreement")

| ANNEX A: | GENERAL TERMS AND CONDITIONS |
|---|---|
| ANNEX D: | ADP WORKFORCE NOW COMPREHENSIVE PAYROLL SERVICES |
| ANNEX E: | ESSENTIAL ACA |

BY SIGNING BELOW, CLIENT ACKNOWLEDGES THAT THEY HAVE REVIEWED THE ENTIRE AGREEMENT INCLUDING THE TERMS AND CONDITIONS IN EACH ANNEX CORRESPONDING TO SERVICES PURCHASED PURSUANT TO THE SALES ORDER.

This Agreement includes the Annexes related to the services selected by Client. Each Annex listed above is attached hereto and is incorporated into this Agreement in full by this reference as if set forth in this Agreement in full.

| ADP, LLC | CLIENT |
|---|---|
| *Laura Schrandt-Hayward* | |
| (Signature of Authorized Representative) | (Signature of Authorized Representative) |
| Laura Schrandt-Hayward | *Alzia WADSworth* |
| (Name - Please Print) | (Name - Please Print) |
| CS DM                  5/22/2017 | *VP of HR*             5/22/17 |
| (Title)                (Date) | (Title)                (Date) |

Exhibit A, 000027

## ADDENDUM
### to
### ADP WORKFORCE NOW® COMPREHENSIVE SERVICES MASTER SERVICES AGREEMENT
### between
### ADP, INC.
### and
### PLAZA HOME MORTGAGE, INC.

This Addendum (the "Addendum"), made as of the _07_ day of _May_____, 2017, by and between ADP, LLC ("ADP") with its principal office at One ADP Boulevard, Roseland, New Jersey 07068 and and Plaza Home Mortgage, Inc. with a principal place of business at 4820 Eastgate Mall, Ste 100, San Diego, CA 92121 ("Client"), contains changes, modifications, revisions and additions to the ADP Workforce Now® Comprehensive Services Master Services Agreement dated of even date herewith between ADP and Client (the "Agreement").

In consideration of the mutual covenants contained in the Agreement and in this Addendum, and for other good and valuable consideration, notwithstanding anything to the contrary in the Agreement, ADP and Client agree as follows:

1. Section 3B of ANNEX A – ADP Workforce Now Comprehensive Services -- General Terms and Conditions (together with Statements of Core and Optional Services) of the Agreement, titled "Travel and Expenses" is hereby amended by the insertion of "upon prior written approval from Client," after "writing," in the first sentence of the Section.

2. Section 6 of ANNEX A – ADP Workforce Now Comprehensive Services – General Terms and Conditions (together with Statements of Core and Optional Services) of the Agreement, titled "NONDISCLOSURE" is hereby amended by the addition of the following after the third sentence of the Section:  "With respect to subsections (a) and (b) above, the receiving party shall provide the disclosing party with notice (unless otherwise directed by law enforcement authorities) with the intent that the disclosing party has an opportunity to seek a protective order, and where no protective order is granted, the receiving party shall disclose only those documents which are necessary to comply with the law, rule, regulation, court ruling, summons, litigation request, subpoena or Order, and will advise the party seeking such Confidential Information of the confidential nature of such Information."

3. Section 7A of ANNEX A – ADP Workforce Now Comprehensive Services – General Terms and Conditions (together with Statements of Core and Optional Services) of the Agreement, titled "Limit on Monetary Damages" is hereby amended by the 1) deletion "three (3)" and replacement with "twelve (12)" in subsection (ii) of the first sentence and the deletion of the second sentence in its entirety and replacement with: "ADP will issue Client, at Client's sole discretion, either a credit(s) or monetary payment by check equal to the applicable amount; if Client chooses a credit, such credit(s) shall be applied against subsequent fees owed by Client."

4. Section 7B of ANNEX A – ADP Workforce Now Comprehensive Services -- General Terms and Conditions (together with Statements of Core and Optional Services) of the Agreement, titled "**No Consequential Damages**", is hereby amended by adding the following at the end of such section: "THE FOREGOING EXCLUSION SHALL NOT APPLY TO CLAIMS FOR CONSEQUENTIAL DAMAGES TO THE EXTENT ARISING FROM (i) EITHER PARTY'S WILLFUL, CRIMINAL OR FRAUDULENT MISCONDUCT, OR (ii) ADP'S BREACH OF ITS CONFIDENTIALITY OBLIGATIONS UNDER SECTION 6 OF THIS ANNEX A OR ADP'S BREACH OF ITS DATA SECURITY OBLIGATIONS UNDER SECTION 8C OF THIS ANNEX A; PROVIDED HOWEVER, THAT ANY CONSEQUENTIAL DAMAGES RECOVERED BY CLIENT IN A CALENDAR YEAR NOT ARISING FROM ADP'S WILLFUL, CRIMINAL OR FRAUDULENT MISCONDUCT WILL BE SUBJECT TO THE LIMIT SET FORTH IN THE FIRST SENTENCE OF SECTION 7A ABOVE."

5. Section 7 of ANNEX A – ADP Workforce Now Comprehensive Services – General Terms and Conditions (together with Statements of Core and Optional Services) of the Agreement is hereby amended by the addition of the following as Section 7.C.: "C. **General Indemnity.** Subject to monetary limit on damages in Section 7.A. of the Annex A of the Agreement, ADP will indemnify, defend and hold Client harmless from and against any and all third party liabilities, claims, penalties, damages, forfeitures, suits, and the costs and expenses incident thereto (including the costs and expenses of defense, settlement and reasonable attorneys' fees), arising from the negligence or willful misconduct of ADP in its performance of the Services including any Incident provided that, (i) ADP is promptly

Exhibit A, 000028

notified in writing of such suit or cause of action, (ii) ADP controls any negotiations or defense and Client assists ADP as reasonably required by ADP, and (iii) Client takes all reasonable steps to mitigate any potential damages that may result."

6. Section 12G of ANNEX A – GENERAL TERMS AND CONDITIONS of the Agreement, titled "Application of Funds" is hereby amended by deleting the following sentence which is the penultimate sentence in this Section: "ADP'S CURRENT PROCESS FOR DISBURSEMENT OF SUCH FUNDS IS DESCRIBED IN ATTACHMENT 1 TO THIS ANNEX G."

7. Section 2C of ANNEX E – ESSENTIAL ACA of the Agreement, titled "Client Instructions" is hereby amended by the addition of the following at the end of the Section: "ADP will make any transfer of employee related data, Confidential Information or Client Personal Information in accordance with ADP's data security policy."

All other terms and conditions of the Agreement shall remain in full force and effect. In the event of any conflict between the terms and conditions of this Addendum and the terms and conditions of the Agreement, this Addendum shall prevail. The terms defined in the Agreement and used in this Addendum shall have the same respective meanings as set forth in the Agreement, unless clearly otherwise defined in this Addendum.

IN WITNESS WHEREOF, this Addendum to the Agreement is hereby executed by an authorized representative of each party hereto as of the date first above written.

**ADP, LLC**

By: _____

Name: _____

Title: _____

**PLAZA HOME MORTGAGE, INC.**

By: _____

Name: _Alicia Wadsworth_

Title: _VP of HR_

Exhibit A, 000029

 Workforce*Now*

**ANNEX A**
**GENERAL TERMS AND CONDITIONS**

**1. CERTAIN DEFINITIONS**

Unless otherwise specified, any reference in this Annex A to a section or subdivision is a reference to a section or subdivision of this Annex A. Capitalized words used in this Agreement but not otherwise defined herein shall have the meanings set forth below.

A. **"ADP Products"** mean (i) the computer software programs and modules delivered, or otherwise made available, to Client as part of the Services, other than pre-packaged third-party software, (ii) all manuals and related documentation generally provided or made available by ADP to Client in connection with such computer software programs and modules, (iii) tutorials and other training materials provided or made available by ADP to Client, (iv) all ADP provided manuals, and (v) other documentation related to the foregoing.

B. **"ADP Workforce Now"** means ADP's web-based portal that provides a single point of access to ADP online solutions and employee-facing websites and resources related to payroll, HR and benefits, and time and attendance.

C. **"Amendment"**, means a written supplement or addendum to this Agreement, signed by Client and ADP, describing additional Services to be provided by ADP to Client or amending the terms and conditions set forth in this Agreement.

D. **"Buy Out Fee"** has the definition set forth in Section 9D.

E. **"Client"** means Client and its affiliates receiving Services and ADP Products under this Agreement. For purposes of this Agreement, **"affiliate"** means, with respect to any individual, corporation or partnership or any other entity or organization (a **"person"**), any person that controls, is controlled by or is under common control with such person in question. For purposes of the preceding definition, **"control"** as used with respect to any person, means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such person, whether through ownership of voting securities or by contract or otherwise.

F. **"Client Content"** means information and materials provided by Client, its agents or employees, regardless of form.

G. **"Client Infringement Event"** means (i) any change, or enhancement in the Services made by Client or any third party on behalf of Client other than at the direction of ADP, (ii) Client's use of the Services except as contemplated by this Agreement, or (iii) to the extent ADP Products include computer software programs, Client's use of other than the most current release or version of such computer software programs included in the ADP Products, or Client's failure to use corrections or enhancements to such computer software programs included in the ADP Products, in each case provided by ADP to Client at no charge, that results in a claim or action for infringement that could have been avoided by use of such current release or version, or by such corrections or enhancements.

H. **"Confidential Information"** means all information of a confidential or proprietary nature, including pricing and pricing related information and all personally identifiable payroll and employee-level data, provided by the disclosing party to the receiving party for use in connection with ADP Products or Services, or both, but does not include (i) information that is already known by the receiving party, (ii) information that becomes generally available to the public other than as a result of disclosure by the receiving party in violation of this Agreement, and (iii) information that becomes known to the receiving party from a source other than the disclosing party on a non-confidential basis.

I. **"Effective Date"** means the date set forth in the cover sheet to this Agreement.

J. **"Incident"** has the meaning set forth in Section 7D.

K. **"Initial Term"** means the period beginning as of the Effective Date and ending two (2) years after the date of Client's first monthly invoice for Services pursuant to Section 3C below.

L. **"Intellectual Property Rights"** means all rights, title and interest to or in patent, copyright, trademark, service mark, trade secret, business or trade name, know-how and rights of a similar or corresponding character

M. **"Payment Services"** means any Services that require ADP, as part of such Services, to impound funds from Client's bank account to pay Client's third-party payment obligations (e.g., Tax Filing Services, Wage Garnishment Processing Services, ALINE Card, Full Service Direct Deposit Services and/or ADPCheck™ Services).

N. **"Personal Information"** means any information relating to an identified or identifiable natural person. An identifiable person is one who can be identified, directly or indirectly, in particular by reference to an identification number or to one or more factors specific to such person's physical, physiological, mental, economic, cultural or social identity.

O. **"Renewal Term"** means each additional one (1) year period after the Initial Term.

P. **"Services"** means the services described in each Annex elected by Client under this Agreement or Amendment and any other services offered pursuant to this Agreement and that ADP provides to Client at Client's request.

Q. **"Term"** means, either individually or collectively, the Initial Term and each Renewal Term.

**2. GENERAL TERMS**

A. **Services.** ADP shall provide the Services and ADP Products required for such Services in accordance with sales order(s) between Client and ADP (the **"Sales Order(s)"**). Services may include the provision of certain ADP Products and Client shall comply with the terms of this Agreement related to such ADP Products. All Services provided hereunder may be modified from time to time at ADP's sole discretion; provided, however, that any such modifications will not delete or have a material adverse impact on any of the Services Client is receiving. The Services are hosted in the United States and are intended for use in the United States only, except that the HR and/or Talent modules of ADP Workforce Now (but specifically excluding any eLearning Courses accessible through the Comprehensive HR Learning Content Management Tool, the EAP and employee perks services, document cloud services and any other modules/tools that ADP, in its sole discretion, determines shall not be accessible to Client employees located outside the United States) have been reviewed and approved for access and use by Client in the countries specified on the "Approved Country" list which may be viewed at www.productdescription.majoraccounts.adp.com (which may be modified from time to time). To the extent Client determines that any such use in an Approved Country located in the European Union requires the parties to enter into model contract clauses, ADP

Exhibit A, 000030

shall provide such model clauses upon Client's request.  ADP will provide the Services in a good, diligent and professional manner in accordance with industry standards, utilizing personnel with a level of skill commensurate with the Services to be performed.

**B.  Errors; Review of Data.**  All Services provided hereunder will be based upon information provided to ADP by Client or any person who is authorized by Client to use, access or receive the Services.  Client will promptly review all documents and reports produced by ADP and provided or made available to Client in connection with the Services and promptly notify ADP of any error, omission, or discrepancy with Client's records.  ADP will promptly correct such error, omission or discrepancy and, if such error, omission or discrepancy was caused by ADP, then such correction will be done at no additional charge to Client.  To help prevent employee fraud, ADP recommends that Client has someone other than its designated payroll contact, promptly and thoroughly review Client's disbursement reports to enable Client to spot and correct errors and inconsistencies.

**C.  Records.**  ADP does not serve as Client's record keeper and Client will be responsible for retaining copies of all documentation received from or provided to ADP in connection with the Services to the extent required by Client or applicable law.

**D.  Use of ADP Products and Services.**  ADP Products and Services include confidential and proprietary information.  Client shall use the ADP Products and Services only for its internal business purposes.  Client shall not provide, directly or indirectly, any of the ADP Products or Services or any portion thereof to any other party.  Client shall not provide service bureau or other data processing services that make use of the ADP Products or Services or any part thereof without the express written consent of ADP.  Client shall be responsible for the use of the Services by its affiliates, employees, plan participants and any other persons authorized by Client to access or use the Services in accordance with the terms of this Agreement.  Client will be responsible for the consequences of any instructions Client may give to ADP.  Client shall use Services in accordance with the instructions and reasonable policies established by ADP from time to time and communicated to Client.  Client is responsible for the accuracy, completeness and use of all Client Content.

**E.  Compliance.**

   **i.  Applicable Laws.**  Each party will comply with applicable laws and regulations that affect its business generally, including any applicable anti-bribery, export control and data protection laws and rules and regulations promulgated by the United States Department of Treasury, Office of Foreign Assets Control ("OFAC") regarding export controls and trade with prohibited parties.  For clarity, Client represents that Personal Information transferred by Client or at Client's direction to ADP has been collected in accordance with applicable privacy laws, and ADP agrees that it shall only process the Personal Information as needed to perform the Services, or as required or permitted by law.

   **ii.  Design of the Services.**  ADP will design the Services, including the functions and processes applicable to the performance of the Services, to assist the Client in complying with its legal and regulatory requirements applicable to the Services, and ADP will be responsible for the accuracy of such design.  Client and not ADP will be responsible for (i) how it uses the Services to comply with its legal and regulatory requirements and (ii) the consequences of any instructions that it gives or fails to give to ADP, including as part of the implementation of the Services, provided ADP follows such instructions.  Services do not include any legal, financial, regulatory, benefits, accounting or tax advice.

   **iii.  Online Statements.**  If Client instructs ADP to provide online pay statements, Forms W2, or Forms 1099 without physical copies thereof, Client will be exclusively responsible for determining if and to what extent Client's use of online pay statements, Forms W-2 or Forms 1099 satisfies Client's obligations under applicable laws and the consequences resulting from such determinations.

**F.  Links to Third-Party Sites.**  Certain ADP Products or Services may be accessed by Client and its authorized employees and plan participants through the Internet at a website provided by ADP or on behalf of ADP, including those hosted by ADP on behalf of Client (a "**Site**").  Links to and from the Site to other third-party sites do not constitute an endorsement by ADP or any of its subsidiaries or affiliates of such third-party sites or the acceptance of responsibility for the content on such sites.  Client's business dealings with any third-party advertiser found on the Site(s) are solely between Client and such advertiser and ADP shall not be responsible or liable for any loss or damage of any sort incurred as the result of any such dealings or as the result of the presence of such advertisers on ADP Workforce Now.

**G.  Transmission of Data.**  In the event that Client elects to use an application programming interface ("**API**") to provide, or requests that ADP provide any Client Content or employee or plan participant information to any third party or to any non-U.S. Client location, Client represents that it has acquired any consents or provided any notices required to transfer such content or information and that such transfer does not violate any applicable international, federal, state or local laws and/or regulations.  Additionally, ADP shall not be responsible for any services or data provided by any such third party.

**3.  FEES, PAYMENTS, AND TAXES**

**A.  Fees.**  Client agrees to pay ADP for the Services indicated on the Sales Order at the rates and for the number of employees set forth thereon for the Initial Term, assuming no changes in requirements, specifications, volumes or quantities.  Total fees charged, including within the Initial Term, may change commensurate with the number of Client's employees being serviced.  Client shall pay ADP for Services added by Client after the Effective Date at ADP's then prevailing prices for such Services.  ADP may increase prices for Services at any time after the Initial Term upon at least thirty (30) days prior written notice to Client if such change is part of a general price change by ADP to its clients for affected items.

**B.  Travel and Expenses.**  Except as may be included in the Services or otherwise specified in writing, Client shall reimburse ADP for all reasonable expenses incurred by ADP personnel in connection with services performed by such personnel under this Agreement.  Upon written request, ADP will provide Client with itemized invoices with respect to such expenses.  ADP will adhere to its Travel and Expense Policy (which can be made available to Client upon Client's request) as may be modified from time to time by ADP.

**C.  Billing.**  Client will be invoiced for fees on a monthly billing cycle.  If Client is purchasing Comprehensive HR alone or with any other of the Services under this Agreement, billing shall begin starting the monthly billing cycle following the initial kickoff call with Client's applicable ADP Primary Contact.  If Client is purchasing Comprehensive Benefits and/or Comprehensive Payroll (without Comprehensive HR), billing shall begin upon the earlier of (a) the date the Client is first able to use the services in a live production environment or (b) ninety (90) days from the Effective Date.  Client will pay all invoices via direct debit of funds ("**DDF**") pursuant to a schedule set by ADP.  Client will receive a consolidated bill regardless of the number of ADP-assigned company codes attributed to Client.  If Client fails to pay any amount due hereunder (whether by acceleration or otherwise) not under good faith dispute, Client, after

written notice, shall pay interest at the rate of 1.5% per month (or the maximum allowed by law if less) on such past due amount from the due date thereof until the payment date.  Client shall reimburse ADP for any expenses incurred, including interest and reasonable attorney fees, in collecting amounts due ADP hereunder that are not under good faith dispute by Client.

**D.**  **Taxes.**  Client shall be responsible for payment of all taxes (excluding those on ADP's net income) relating to the provision of Services, except to the extent a valid tax exemption certificate or other written documentation acceptable to ADP to evidence Client's tax exemption status is provided by Client to ADP prior to the delivery of Services.

**4.  WARRANTIES AND DISCLAIMER**

**A.**  **Warranties**.  Each party warrants that (i) it has full corporate power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby and (ii) this Agreement has been duly and validly executed and delivered and constitutes the valid and binding agreement of the parties, enforceable in accordance with its terms.

**B.**  **DISCLAIMER**.  EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, ALL EQUIPMENT PROVIDED BY ADP OR ITS SUPPLIERS IS PROVIDED "AS IS" AND ADP AND ITS LICENSORS EXPRESSLY DISCLAIM ANY WARRANTY, EITHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, NON-INTERRUPTION OF USE, AND FREEDOM FROM PROGRAM ERRORS, VIRUSES OR ANY OTHER MALICIOUS CODE WITH RESPECT TO THE SERVICES, THE ADP PRODUCTS, ANY CUSTOM PROGRAMS CREATED BY ADP OR ANY THIRD-PARTY SOFTWARE DELIVERED BY ADP.  ADP AND ITS LICENSORS FURTHER DISCLAIM ANY WARRANTY THAT THE RESULTS OBTAINED THROUGH THE USE OF THE SERVICES, THE ADP PRODUCTS, ANY CUSTOM PROGRAMS CREATED BY ADP OR ANY THIRD-PARTY SOFTWARE DELIVERED BY ADP WILL MEET CLIENT'S NEEDS.

**5.  INTELLECTUAL PROPERTY**

**A.**  **Client IP Rights.**  Except for the rights expressly granted to ADP in this Agreement, all rights, title and interests in and to Client Content, including all Intellectual Property Rights inherent therein and pertaining thereto, are owned exclusively by Client or its licensors.  Client hereby grants to ADP for the Term a non-exclusive, worldwide, non-transferable, royalty-free license to use, edit, modify, adapt, translate, exhibit, publish, reproduce, copy and display the Client Content for the sole purpose of performing the Services; provided Client has the right to pre-approve the use by ADP of any Client trademarks or service marks.

**B.**  **ADP IP Rights.**  Except for the rights expressly granted to Client in this Agreement, all rights, title and interest in and to the Services, including all Intellectual Property Rights inherent therein and pertaining thereto, are owned exclusively by ADP or its licensors.  ADP grants to Client for the term of this Agreement a personal, non-exclusive, non-transferable, royalty-free license to use and access the ADP Products or Services in accordance with the terms of this Agreement.  The ADP Products or Services do not include any Client-specific customizations unless otherwise agreed in writing by the parties.  Client will not obscure, alter or remove any copyright, trademark, service mark or proprietary rights notices on any materials provided by ADP in connection with the Services, and will not copy, decompile, recompile, disassemble, reverse engineer, or make or distribute any other form of, or any derivative work from, such ADP materials.

**C.**  **Ownership of Reports.**  Client will retain ownership of the content of reports and other materials that include Client Content produced and delivered by ADP as a part of the Services, provided that ADP will be the owner of the format of such reports.  To the extent any such reports or other materials incorporate any ADP proprietary information, ADP (i) retains sole ownership of such proprietary information and (ii) provides the Client a fully paid up, irrevocable, perpetual, royalty-free license to access and use same for its internal business purposes without the right to create derivative works (other than derivative works to be used solely for its internal business purposes) or to further distribute any of the foregoing rights except to its affiliates, employees, plan participants and any other persons authorized by Client to access or use the Services.

**D.**  **ADP Infringement Indemnity.**  Subject to Section 5F, ADP shall defend Client against any third party claims, and indemnify and hold Client harmless against any resulting damage awards or settlement amounts in any cause of action to the extent such cause of action is based on a claim alleging that the Services or the ADP Products, as provided by ADP and used in accordance with this Agreement, infringe upon any Intellectual Property Rights of a third party in the U.S. or any Approved Country that Client uses a permitted ADP Product.  The foregoing infringement indemnity will not apply and ADP will not be liable for any damages assessed in any cause of action to the extent resulting from a Client Infringement Event or ADP's use of Client Content as contemplated by this Agreement.

**E.**  **Client Indemnity.**  Subject to Section 5F, Client will defend ADP against any third party claims and will indemnify and hold ADP harmless from any resulting damage awards or settlement amounts in any cause of action to the extent such cause of action is based on the occurrence of a Client Infringement Event or ADP's use of Client Content as contemplated by this Agreement.

**F.**  **Indemnity Conditions.**  The indemnities set forth in this Section 5 are conditioned upon the following:  (i) the indemnitee ("the Indemnitee") promptly notifies the indemnitor ("the Indemnitor") in writing of such suit or cause of action, (ii) the Indemnitor controls any negotiations or defense and the Indemnitee assists the Indemnitor as reasonably required by the Indemnitor, and (iii) the Indemnitee takes all reasonable steps to mitigate any potential damages that may result.

**6.  NONDISCLOSURE**

All Confidential Information disclosed hereunder will remain the exclusive and confidential property of the disclosing party.  The receiving party will not disclose the Confidential Information of the disclosing party and will use at least the same degree of care, discretion and diligence in protecting the Confidential Information of the disclosing party as it uses with respect to its own confidential information, but in no case less than reasonable care.  The receiving party will limit access to Confidential Information to its affiliates, employees and authorized representatives with a need to know and will instruct them to keep such information confidential.  Notwithstanding the foregoing, the receiving party may disclose Confidential Information of the disclosing party (a) to the extent necessary to comply with any law, rule, regulation or ruling applicable to it, (b) as appropriate and with prior notice where practicable, to respond to any summons or subpoena or in connection with any litigation, (c) relating to a specific employee, to the extent such employee has consented to its release, and/or (d) in order to provide the Services under this Agreement.  Upon the request of the disclosing party, the receiving party will return or destroy all Confidential Information of the disclosing party that is in its possession.  Notwithstanding the foregoing, (x) ADP may retain information for regulatory purposes or in back-up files, provided that ADP's

Exhibit A, 000032

confidentiality obligations hereunder continue to apply; (y) ADP may use the Client's and its employees' and participants' information for purposes other than the performance of the Services but only in an aggregated, anonymized form, such that neither Client nor its employees or participants may be identified, and Client will have no ownership interest in such aggregated, anonymized data. The obligations of ADP set forth in this Section 6 shall not apply to any suggestions and feedback for product or service improvement, correction, or modification provided by Client in connection with any present or future ADP product or service, and, accordingly, neither ADP nor any of its clients or business partners shall have any obligation or liability to Client with respect to any use or disclosure of such information.

7.  **LIMIT ON LIABILITY**

   A.  **Limit on Monetary Damages**.  Notwithstanding anything to the contrary contained in this Agreement, ADP's aggregate liability under this Agreement during any calendar year for damages (monetary or otherwise) under any circumstances for claims of any type or character made by Client or any third party arising from or related to ADP Products or Services, will be limited to the lesser of (i) the amount of actual damages incurred by Client or (ii) the average monthly charges for three (3) months for the affected ADP Products or Services during such calendar year.  ADP will issue Client a credit(s) equal to the applicable amount and any such credit(s) will be applied against subsequent fees owed by Client.  The foregoing limit on liability shall not apply to (i) ADP's willful, criminal or fraudulent misconduct; (ii) the infringement indemnity set forth in Section 5D  (iii) loss or misdirection of Client funds in possession or control of ADP due to ADP's error or omission; and (iv) in connection with the Tax Filing Services (as defined below), (a) interest charges imposed by an applicable tax authority on Client for the failure by ADP to pay funds to the extent and for the period that such funds were held by ADP and (b) all tax penalties resulting from ADP's error or omission in the performance of such Service.  The provisions of Section 7A(iv) shall only apply if (x) Client permits ADP to act on Client's behalf in any communications and negotiations with the applicable taxing authority that is seeking to impose any such penalties or interest and (y) Client assists ADP as reasonably required by ADP.

   B.  **No Consequential Damages**.  NEITHER ADP NOR CLIENT WILL BE RESPONSIBLE FOR SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL, PUNITIVE OR OTHER SIMILAR DAMAGES (INCLUDING, WITHOUT LIMITATION, ANY LOST PROFITS OR DAMAGES FOR BUSINESS INTERRUPTION OR, LOSS OF INFORMATION) THAT THE OTHER PARTY MAY INCUR OR EXPERIENCE IN CONNECTION WITH THIS AGREEMENT OR THE SERVICES OR ADP PRODUCTS, HOWEVER CAUSED AND UNDER WHATEVER THEORY OF LIABILITY, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

8.  **SECURITY AND CONTROLS**

   A.  **Service Organization Control Reports.**  Following completion of implementation of any applicable Services, ADP will, at Client's request and at no charge, provide Client with copies of any routine Service Organization Control 1 reports (**"SOC 1 Reports"**) (or any successor reports thereto) directly related to the core ADP Products utilized to provide the Services provided hereunder for Client and already released to ADP by the public accounting firm producing the report.  SOC 1 Reports are ADP Confidential Information and Client will not distribute or allow any third party (other than its independent auditors) to use any such report without the prior written consent of ADP.  Client will instruct its independent auditors or other approved third parties to keep such report confidential and Client will remain liable for any unauthorized disclosure of such report by its independent auditors or other approved third parties.

   B.  **Business Continuity; Disaster Recovery.**  ADP maintains a commercially reasonable business continuity and disaster recovery plan and will follow such plan.

   C.  **Data Security.**  ADP has an established information security program containing appropriate administrative, technical and physical measures to protect Client data against accidental or unlawful destruction, alteration, unauthorized disclosure or access consistent with applicable laws.  In the event ADP suspects any unauthorized access to, or use of, the Services, ADP may suspend access to the Services to the extent ADP deems necessary to preserve the security of the Client's data.

   D.  **Data Security Incident Notification.**  If ADP becomes aware of a security breach (as defined in any applicable law) or any other event that compromises the security, confidentiality or integrity of Client's Personal Information (an **"Incident"**), ADP will take appropriate actions to contain, investigate and mitigate the Incident.  ADP shall notify Client of an Incident as soon as reasonably possible. In the event that applicable law requires notification to individuals and others of such an Incident, ADP will take additional mitigation steps including providing assistance with the drafting and mailing of such notifications.  ADP and Client shall mutually agree on the content and timing of any such notifications, in good faith and as needed to meet applicable legal requirements.

9.  **TERM AND TERMINATION; DEFAULT BY CLIENT; REMEDIES UPON DEFAULT**

   A.  **Term.**  This Agreement is effective for the Initial Term and will automatically renew at the end of such Term for additional Renewal Terms unless terminated by either party upon at least ninety (90) days prior written notice to the other.

   B.  **Termination Event.**  Either party may suspend performance and/or terminate this Agreement immediately upon written notice at any time if: (i) the other party is in material breach of any material warranty, term, condition or covenant of this Agreement and fails to cure that breach within sixty (60) days, unless such breach is due to Client's failure to pay amounts due hereunder then time to cure such breach shall be five (5) business days, after written notice thereof, (ii) the other party ceases business operations, or (iii) the other party becomes insolvent, generally stops paying its debts as they become due or seeks protection under any bankruptcy, receivership, trust deed, creditors arrangement, composition or comparable proceeding, or if any such proceeding is instituted against the other (and not dismissed within ninety (90) days after commencement of one of the foregoing events).

   C.  **Termination by ADP.**  If Client fails to fulfill its obligations in connection with the implementation services such that ADP is unable to complete the implementation services and commence Services, then ADP may terminate this Agreement by further written notice to Client.  ADP may also suspend performance and/or terminate this Agreement immediately without prior notice in the event Client, its employee(s) or any other third party (i) includes in any Site any Client Content which is obscene, offensive, inappropriate, threatening, malicious, which violates any applicable law or regulation or any contract, privacy or other third-party right or which otherwise exposes ADP to civil or criminal liability or (ii) wrongfully uses or accesses ADP Products or any other ADP systems used in the performance of its obligations under this Agreement.  ADP may also immediately terminate this Agreement or the Services if Client has violated or, if conducting business with Client, a payee of Client, or Client subsidiary is in violation of, any of the rules or regulations promulgated by

Exhibit A, 000033

OFAC. Notwithstanding anything herein to the contrary, Payment Services may be immediately suspended or terminated by ADP without prior notice if (i) ADP has not received timely funds from Client as required by this Agreement, (ii) a bank notifies ADP that it is no longer willing to originate debits and credits for any reason, (iii) the authorization to debit Client's account is terminated or ADP reasonably believes that there is or has been fraudulent activity on the account, (iv) ADP reasonably determines that Client no longer meets ADP's credit/financial eligibility requirements for such Services or (v) Client has any material adverse change in its financial condition, (vi) Client's violation of any applicable operating rules of the National Automated Clearing House Association ("NACHA") or (vii) with respect to the ADP Wage Payments Card Services (if applicable), the Issuing Bank (as defined in Annex J) cancels the cards issued on behalf of Client. Without limiting the foregoing, the parties agree that Payment Services involve credit risk to ADP. As such, ADP shall not be required to provide such Payment Services if ADP reasonably determines that Client presents an undue credit risk to ADP or in the event of any other termination right. If Payment Services are not terminated despite the occurrence of any of the events described above, ADP may require Client to pay its outstanding and all future third-party payment amounts covered by Payment Services and/or ADP's fees and charges for Payment Services to ADP (x) by bank or certified check, (y) by wire transfer of immediately available funds, and/or (z) in advance of the then current schedule, as a condition to receiving further Payment Services.

**D. Buy Out Fee; Early Termination.** If, prior to the end of any Term, (i) Client terminates any or all the Services, for any reason, except for those reasons set forth in Section 9B or (ii) ADP terminates this Agreement pursuant subitem (i) of Section 9B or Section 9C, Client shall pay to ADP a buy out fee ("**Buy Out Fee**"). The Buy Out Fee shall be equal to fifty percent (50%) of A multiplied by B where A equals the number of months remaining in the applicable Term, as of the date of termination and B equals the average monthly fee for the terminated Services during the twelve-month period immediately preceding the termination (or a shorter period of time if monthly fees have been payable for less than twelve (12) months at the termination date). If monthly fees for Services have not been payable at the time of termination, the amount in B above shall be equal to the estimated monthly fees that would have been payable under the Agreement. In the case of a partial termination, ADP may adjust the fees for the remaining Services accordingly. Client shall also pay the Buy Out Fee in the event of any reduction in Client's volume or usage of Services by more than fifty percent (50%).

**E. Post-Termination.** If use of any ADP Products or Services are or may be terminated by ADP pursuant to Sections 9B or 9C, ADP shall be entitled to allocate any funds remitted or otherwise made available by Client to ADP in such priorities as ADP (in its sole discretion) may determine appropriate (including reimbursing ADP for payments made by ADP hereunder on Client's behalf to a third party) and if any such ADP Products or Services are terminated, Client will immediately (i) become solely responsible for all of its third-party payment obligations covered by such ADP Products or Services then or thereafter due (including, for Tax Filing Services, all related penalties and interest), (ii) reimburse ADP for all payments made by ADP hereunder on Client's behalf to any third party, and (iii) pay any and all fees and charges incurred by ADP relating to ADP Products or Services rendered prior the termination date. Client agrees that ADP shall be entitled to collect any fees and charges incurred by ADP prior to the termination date via DDF. At any time prior to the actual termination date, Client may download Client's information or reports available to it in conjunction with all of the Services provided to Client by ADP. Upon termination of this Agreement, Client may order from ADP any data extraction offered by ADP, at the then prevailing hourly time and materials rate.

**F. Other Remedies.** If ADP elects not to terminate any or all of the ADP Products or Services as permitted hereunder, ADP, in its sole discretion, may require Client to pay its outstanding and all future third-party payments relating to the provision of ADP Products or Services and/or ADP's fees and charges for ADP Products or Services to ADP by bank or certified check or by wire transfer as a condition to receiving further ADP Products or Services.

**10. PAYROLL PROCESSING, TAX FILING & PAYMENT SERVICES.**

ADP will process payroll for Client's employees and payees, deliver pay checks and related reports to Client, process direct deposits to those employees electing such service, remit payroll taxes on Client's behalf to those federal, state, and most local taxing jurisdictions designated by Client (not including the filing or depositing of excise, sales, use, corporate, or similar taxes), and file related tax returns (such remitting of payroll taxes and filing of related tax returns, the "**Tax Filing Services**"). For an additional fee, ADP will also process calendar year-end Forms W-2 for Client's employees and Forms 1099-MISC for payments to individuals that provide services to Client as independent contractors. Client shall be liable for, and shall indemnify ADP against, any loss, liability, claim, damage or exposure arising from or in connection with any fraudulent or criminal acts of Client's employees or payees.

**A. Funding**. Client shall have sufficient funds in Client's account within the deadline established by ADP to satisfy Client's third-party payment obligations in their entirety. A mandatory credit check will be performed prior to the provision of any Payment Services. ADP may commingle Client's impounded funds with other clients', ADP's or ADP-administered funds of a similar type. ALL AMOUNTS EARNED ON SUCH FUNDS WHILE HELD BY ADP WILL BE FOR THE SOLE ACCOUNT OF ADP.

**B. Debits**. Client shall be liable for debits properly initiated by ADP hereunder. Client unconditionally promises to pay to ADP the amount of any unfunded payroll file (including any debit returned to ADP because of insufficient or uncollected funds or for any other reason), plus any associated bank fees or penalties, upon demand and interest on the unfunded payroll amount at the rate of 1.5% per month (or the maximum allowed by law, if less). Also, if any debit to an employee's or other payee's account reversing or correcting a previously submitted credit(s) is returned for any reason, Client unconditionally promises to cooperate with ADP and pay the amount of such debit upon demand and interest thereon. Client agrees to cooperate with ADP and any other parties involved in processing any transactions hereunder to recover funds credited to any employee as a result of an error made by ADP or another party processing a transaction on behalf of ADP.

**C. Full Service Direct Deposit (FSDD)**. Prior to the first credit to the account of any employee or other individual under FSDD services, Client shall obtain and retain a signed authorization from such employee or individual authorizing the initiation of credits to such party's account and debits of such account to recover funds credited to such account in error.

**D. ADPCheck™**. Client shall not distribute any ADPChecks to payees prior to the check date. If Client distributes any ADPChecks prior to the check date, ADP may impose an early cashing fee against Client. If Client desires to stop payment on any ADPCheck, Client shall provide ADP with a stop payment request in such form required by ADP. ADP shall then place a stop payment order with ADP's bank within twenty-four (24) hours of ADP's receipt of such stop payment request. Client shall not request ADP to stop payment on any ADPCheck that represents funds to which the applicable payee is rightfully entitled. Client agrees to indemnify, defend, and hold

Exhibit A, 000034

harmless ADP and its affiliates and their successors and assigns from and against any liability whatsoever for stopping payment on any ADPCheck requested by Client and from and against all actions, suits, losses, claims, damages, charges, and expenses of every nature and character, including attorney fees, in any claims or suits arising by reason of stopping payment on said check, including claims made by a "holder in due course" of such check.

E. **Important Tax Information (IRS Disclosure)**.  Notwithstanding Client's engagement of ADP to provide ADP Tax Filing Services, Client is responsible for the timely filing of payroll tax returns and the timely payment of payroll taxes for its employees.  The Internal Revenue Service recommends that employers enroll in the U.S. Treasury Department's Electronic Federal Tax Payment System (EFTPS) to monitor their accounts and ensure that timely tax payments are being made for them.  Online enrollment in EFTPS is available at www.eftps.gov; an enrollment form may also be obtained by calling (800) 555-4477.  State tax authorities generally offer similar means to verify tax payments.  Client may contact appropriate state offices directly for details.

F. **State Unemployment Insurance Management**.  Subject to Section 12, Client's compliance with its obligations in Sections i and ii herein, any delays caused by third parties (e.g., postal service, agency system and broker delays) and events beyond ADP's reasonable control, ADP will deliver the State Unemployment Insurance Management Services ("**SUI Management Services**") within the time periods established by the relevant unemployment compensation agencies.

   i. **Provision of Information; Contesting Claims**.  Client will on an ongoing basis provide ADP and not prevent ADP from furnishing all information necessary for ADP to perform the SUI Management Services within the timeframes established or specified by ADP.  The foregoing information includes without limitation the claimants' names, relevant dates, wage and separation information, state-specific required information, and other documentation to support responses to unemployment compensation agencies.

   ii. **Transfer of Data**.  Client may transfer the information described in Section 10Fi to ADP via: (i) on-line connection between ADP and Client's computer system, or (ii) inbound data transmissions from Client to ADP.  Client will provide the data using mutually acceptable communications protocols and delivery methods.  Client will promptly notify ADP in writing if Client wishes to modify the communication protocol or delivery method.

   iii. Client acknowledges that ADP is not providing storage or record keeping of Client records as part of the SUI Management Services, and that if the SUI Management Services are terminated, ADP may, in conformity with Section 9B, dispose of all such records.  If the SUI Management Services are terminated, any access Client has to ADP websites containing Client's data will expire and Client will be responsible for downloading and gathering all relevant data prior to expiration of any such access that may have been granted.

11. **HR, BENEFITS AND TALENT MANAGEMENT SERVICES**
   The terms of this Section 11 shall apply only to the extent Client is receiving HR, Benefits and/or Talent Management products and services hereunder.

A. **Initial Setup Services**.  Client shall promptly deliver to ADP the Client Content required by ADP to perform initial setup services.  Such information and materials shall be in an electronic file format acceptable to ADP

B. **Additional Configuration**.  After completion of initial setup services, any subsequent changes Client requests to the configuration of the Client Content in the HR and/or Benefits module will be charged at ADP's then current benefits maintenance fees.

C. **ADP Carrier Connection®**.  If Client is receiving the WFN HR & benefits module, ADP, or its authorized agent(s), will electronically transmit employee data, including employee benefits enrollment data, to Client's carriers or other third parties authorized by Client, and Client authorizes ADP and its authorized agent(s), to provide such transmission on Client's behalf.  Additionally, commencement of the Carrier Connection service is subject to Client completing the configuration setup of Client Content and the format of such transmission to the designated carriers.  ADP's ability to transmit Client's employee benefits enrollment data is subject to the provision by the designated carriers of a current functional interface between the benefits module and the designated carriers' systems.  ADP will not be obligated to transmit Client's data to the designated carriers if at any time Client's designated carriers fail to provide the proper interface as described above.  If Client requires the development of any special interfaces in order to transmit such data to the designated carriers, all work performed by ADP to create such interfaces will be at ADP's then current fees for such services.  Client is responsible for promptly reviewing all records of carrier transmissions and other reports prepared by ADP for validity and accuracy according to Client's records, and Client will notify ADP of any discrepancies promptly after receipt thereof.  In the event of an error or omission in the Carrier Connection services caused by ADP, ADP will correct such error or omission, provided that Client promptly advises ADP of such error or omission.  Client shall remain responsible for transmission of all enrollment/disenrollment data to Client's carriers other third parties authorized by Client until ADP confirms that carrier connection implementation is complete.

D. **Talent Management Services.**  Talent Management Services includes Performance, Recruitment and Compensation Management products and services.

   i. **Hiring Practices**.  Client represents and warrants that it will use Talent Management Services for its own hiring and/or HR management purposes only.  Client acknowledges and agrees that ADP will not be deemed to be involved in any hiring decisions or evaluation of candidates in connection with the recruitment services, or with any compensation decisions in connection with the compensation management services.

   ii. **Customized Content**.  Client understands and agrees that to the extent it chooses to customize any content or documents made available to job candidates through Talent Management Services, including but not limited to job descriptions, online application instructions and questions, Client is responsible for the content of any such customization.  Client acknowledges that any content provided by the Talent Management Services may not be suitable for all situations or in all locations.  Client should review applicable laws in the jurisdictions in which Client operates and should consult with its own legal counsel prior to utilizing the services.

   iii. **Sensitive Data**. If Client implements the Talent Management Services to collect any sensitive data elements (or special categories of data), Client shall comply with any additional requirements for the processing of these data elements, and it shall be responsible for respecting all individual rights of access, correction or deletion and for responding to any individual or regulatory inquiries.

12. **COBRA SERVICES**

COBRA Services are included as part of the Comprehensive HR and/or Comprehensive Benefits Services at no additional charge. Clients purchasing Comprehensive Payroll Services (without Comprehensive HR and/or Comprehensive Benefits) can add COBRA Services for an additional fee.

A. **COBRA Administration.** ADP will make available to Client nondiscretionary, ministerial recordkeeping and COBRA notification services regarding Client's group health plans identified by Client on ADP's Health Plan Information Forms (the "**COBRA Services**"). COBRA notification services will be provided to Client's employees and qualified beneficiaries that Client identifies to ADP and that meet qualifying event requirements under COBRA. ADP will collect the applicable COBRA premium from the participating employees and beneficiaries and credit Client the amounts required for Client to pay the monthly premium directly to Client's applicable health insurance carriers. ADP agrees to perform the Services with respect to the Plan(s) (as defined in subsection 1C below) in accordance with a reasonable good faith interpretation of federal COBRA requirements.

B. **COBRA Client Guide.** With respect to the COBRA Services, Client will be granted access to ADP's Client Guide for the COBRA Services (the "**Guide**") via www.BeneDirect.adp.com. Client understands that the Guide may be amended from time to time by ADP and such amendments will be posted at www.BeneDirect.adp.com. Client will be deemed to have accepted and approved the Guide and each amendment to the Guide and to have directed ADP to implement the changes set forth therein if Client does not promptly notify ADP in writing that it objects to such changes.

C. **ADP's Non-Fiduciary Status.** Client expressly acknowledges and agrees that ADP is not an "Administrator", "Plan Sponsor," or a "Plan Administrator" as defined in Section 3(16)(A) of ERISA, and Section 414(g) of the Internal Revenue Code of 1986, as amended (the "**Code**"), respectively, nor is ADP a "fiduciary" within the meaning of ERISA Section 3(21), and Client shall not request or otherwise require ADP to act as such. ADP shall not exercise any discretionary authority or control respecting management of any of Client's benefit or welfare plans ("**Plan**" or "**Plans**") or management or disposition of any of Client's benefit or welfare Plan assets. ADP has no discretionary authority or discretionary responsibility in the administration of the Plan(s).

D. **Use of ADP'S Name.** Except for references to ADP as a service provider in IRS Form 5500 or a similar filing as required by ERISA, Client shall not use ADP's name without ADP's prior written consent.

E. **Client Data.** Client and the Plan Administrator(s) of the Plan(s) must perform their responsibilities and provide the information required of them as set forth in the Guide and any amendments thereto. ADP reserves the right to request additional information from Client and/or the Plan Administrator(s) of the Plans(s) at any time. Prior to the commencement of any COBRA Services, Client shall furnish to ADP all necessary information and data for each Plan, and shall continue to provide ADP with such information and data that is necessary for the provision by ADP of the COBRA Services. ADP shall be entitled to rely on any information provided by the Client and/or the Plan Administrator(s) of the Plan(s) as accurate, valid and complete. Client shall perform all refinement, purification and reformatting of the Client data in order for the COBRA Services to be performed by ADP. ADP shall be compensated on a time and expense basis at ADP's standard rates in effect at such time in the event ADP is required to perform any such refinement, purification or reformatting. Upon receipt from ADP, Client will promptly review all records, reports and documents produced by ADP for accuracy, validity and conformity with Client's records. Client will promptly notify ADP of any error or omission discovered by Client or any discrepancy between the information provided by ADP and Client's records and will not rely on any record, report or document containing any such error, omission or discrepancy until such error, omission or discrepancy, as the case may be, has been corrected. In the event of an error in ADP's records or any reports or statements prepared by ADP and caused by ADP, ADP shall correct such records, reports or statements, provided that Client advised ADP of such error within ninety (90) days of the receipt of such record, report or statement.

F. **Client Contact.** Prior to the commencement of ADP's provision of COBRA Services, Client shall designate in writing to ADP the name or names of one or more persons who shall serve as ADP's designated contact for the Services and as project manager for the implementation of the COBRA Services (the "Client Contact"). Client hereby represents and warrants to ADP that the Client Contact has, and shall at all times have, the requisite authority to (i) transmit information, directions and instructions on behalf of Client, each Plan Administrator and, if applicable, each "fiduciary" (as defined in Section 3(21) of ERISA) of each separate Plan and (ii) issue, execute, grant, or provide any approvals (other than amendments to this Agreement), requests, notices, or other communications required or permitted under this Agreement or requested by ADP in connection with the COBRA Services.

G. **Application of Funds.** CLIENT AGREES THAT ADP SHALL RETAIN THE TWO PERCENT (2%) ADMINISTRATIVE FEE THAT SHALL BE ADDED TO THE PREMIUM DUE. ALL AMOUNTS EARNED ON FUNDS OR PREMIUMS REMITTED TO ADP IN CONNECTION WITH THE SERVICES PENDING DISBURSEMENT TO CLIENT, CLIENT'S DESIGNEE OR TO PLAN PARTICIPANTS SHALL BE RETAINED BY ADP AS COMPENSATION. ADP'S CURRENT PROCESS FOR DISBURSEMENT OF SUCH FUNDS IS DESCRIBED IN ATTACHMENT 1 TO THIS ANNEX G. ADP MAY COMMINGLE SUCH FUNDS WITH SIMILAR FUNDS FROM OTHER CLIENTS AND WITH SIMILAR ADP AND ADP-ADMINISTERED FUNDS.

H. **Client Indemnity.** Client agrees to defend, indemnify and hold harmless ADP, its affiliates and their directors, officers, employees, legal representatives, agents, successors, and assigns from and against all claims, losses, liabilities, damages, demands, causes of action, costs and expenses (including reasonable attorneys' fees and costs of litigation) (collectively "**Losses**") incurred as a result of entering into and performing the COBRA Services or any other cause arising out of this Agreement or the Plan(s), except to the extent those Losses resulted from the negligence, willful misconduct or willful breach of this Agreement by ADP in the performance of the COBRA Services.

I. **Disbursement Process.** Participant payments are received via check or, if arrangements are made by the participant, via ACH transfer. Such payments are made throughout the month and are deposited into an ADP account for processing and reconciliation by ADP. This ADP account is maintained separately from ADP's operating accounts. Due to the nature of the ACH system, payments received through ACH generally clear within two (2) business days. On average, participant checks require forty-eight (48) to seventy-two (72) hours to clear. On a monthly basis, ADP reviews each payment and records each payment to the participant's record. ADP then reconciles to the particular client, the amounts paid by participants. After completing this recording and reconciliation process,

Exhibit A, 000036

ADP remits to the Client the payment amounts made by participants for that month's premiums, along with payments made by participants that are still within the applicable grace period (in each case, with respect to COBRA Services, less the two percent (2%) administrative fee allowed by COBRA). Such payments to the Client or Carriers are made by ADP either by check or by Fed wire. On occasion, participants may pay for coverage in advance of the applicable due date. Amounts disbursed to ADP are held by ADP for approximately fifteen (15) days prior to disbursement by ADP. Once disbursed by ADP, if payments are made by check, checks are presented for payment approximately fourteen (14) to twenty-one (21) days following disbursement. ADP invests such funds, pending disbursement or presentment for payment, in long and short term investments, such as money market funds, United States treasury obligations, United States government agency obligations, corporate notes, and other investments.

J.  **HIPAA Business Associate Amendment.**  Pursuant to the federal Health Insurance Portability and Accountability Act, Public Law 104-191 ("**HIPAA**"), the Health Information Technology for Economic and Clinical Health Care Act passed as part of the American Recovery and Reinvestment Act of 2009 ("**ARRA**"), the U.S. Department of Health and Human Services regulations entitled "Standards for Privacy of Individually Identifiable Health Information" ("**Privacy Rule**"), Security Standards for the Protection of Electronic Protected Health Information ("**Security Rule**") and the Breach Notification for Unsecured Protected Health Information ("**Breach Notification Rule**"), if COBRA Services are subject to HIPAA then such services are subject to additional terms and conditions located at http://www.adp.com/BAA which are incorporated herein and may be modified from time to time and as required by law.

## 13.  MISCELLANEOUS

A.  **Inducement; Entire Agreement; Modification.**  Client has not been induced to enter into this Agreement by any representation or warranty not set forth in this Agreement. This Agreement contains the entire agreement of the parties with respect to its subject matter and supersedes and overrides all prior agreements on the same subject matter, and shall govern all disclosures and exchanges of Confidential Information made by the parties previously hereto. This Agreement shall not be modified except by a writing signed by ADP and Client.

B.  **Third-Party Beneficiaries.**  Except as expressly provided herein or in an applicable exhibit, annex, appendix or schedule by express reference to this Section 12B, nothing in this Agreement creates, or will be deemed to create, third party beneficiaries of or under this Agreement. Client agrees that ADP's obligations in this Agreement are to Client only, and ADP has no obligation to any third party (including, without limitation, Client's personnel, directors, officers, employees, users and any administrative authorities).

C.  **Force Majeure.**  Any party to this Agreement will be excused from performance of its obligations under this Agreement, except for Client's obligation to pay the fees to ADP pursuant to Section 3, for any period of time that the party is prevented from performing its obligations under this Agreement due to an act of God, war, earthquake, civil disobedience, court order, labor disputes or disturbances, governmental regulations, communication or utility failures or other cause beyond the party's reasonable control. Such non-performance will not constitute grounds for breach.

D.  **Non-Hire.**  During the term of this Agreement and for the twelve (12) months thereafter, neither Client nor the ADP regions providing the Services, shall knowingly solicit or hire for employment or as a consultant, any employee or former employee of the other party who has been actively involved in the subject matter of this Agreement.

E.  **Waiver.**  The failure of either party at any time to enforce any right or remedy available to it under this Agreement with respect to any breach or failure by the other party shall not be construed to be a waiver of such right or remedy with respect to any other breach or failure by the other party.

F.  **Headings.**  The headings used in this Agreement are for reference only and do not define, limit, or otherwise affect the meaning of any provisions hereof.

G.  **Severability.**  If any of the provisions of this Agreement shall be invalid or unenforceable, such invalidity or unenforceability shall not invalidate or render unenforceable the entire Agreement, but rather the entire Agreement shall be construed as if not containing the particular invalid or unenforceable provision or provisions, and the rights and obligations of Client and ADP shall be construed and enforced accordingly.

H.  **Relationship of the Parties.**  The parties hereto expressly understand and agree that each party is an independent contractor in the performance of each and every part of this Agreement, is solely responsible for all of its employees and agents and its labor costs and expenses arising in connection therewith.

I.  **Governing Law.**  This Agreement is governed by the laws of the State of New York without giving effect to its conflict of law provisions.

J.  **Additional Documentation.**  In order for ADP to perform the Services, it may be necessary for Client to execute and deliver additional documents (such as reporting agent authorization, client account agreement, limited powers of attorney, etc.) and Client agrees to execute and deliver such additional documents.

K.  **Regulatory Notice.**  No state or federal agency monitors or assumes any responsibility for the financial solvency of third-party tax filers.

L.  **Use of Agents.**  ADP may designate any agent or subcontractor to perform such tasks and functions to complete any services covered under this Agreement. However, nothing in the preceding sentence shall relieve ADP from responsibility for performance of its duties under the terms of this Agreement.

M.  **Conflicts Clause.**  In the event of a conflict between the terms of this Agreement and any additional terms, the terms of this Agreement shall control, unless an Addendum to this Agreement is executed unilaterally herewith or subsequently hereto, in which case the terms of such Addendum shall control.

N.  **Counterparts.**  This Agreement may be signed in two or more counterparts by original, .pdf (or similar format for scanned copies of documents) or facsimile signature, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

O.  **Assignment.**  Neither party may assign its rights or obligations under this Agreement without the prior written consent of the other party. However, ADP may assign its rights and obligations under this Agreement to a commonly controlled affiliate of ADP without the prior written notice or consent of Client in order for such affiliate to perform any or all of the Services, provided that ADP will remain responsible for the performance of such Services.

Exhibit A, 000037

**P.   Notices.**  All notices, including any notices of termination in accordance with Section 12 herein, shall be in writing and shall be delivered or sent by recognized courier or registered or certified mail, return receipt requested, to the addresses indicated on the face hereof with an additional copy to ADP at 5800 Windward Parkway, Alpharetta, GA 30005, Attention: ADP WFN Comprehensive Services SVP/GM, or to such other addresses as the parties shall specify by notice given pursuant hereto.  A copy of all communications to ADP of a legal nature must be sent to ADP at One ADP Boulevard, Roseland, New Jersey 07068, Attention: Legal Department.

**Q.   Survival**.  Those provisions which by their content are intended to, or by their nature would, survive the performance, termination, or expiration of this Agreement) shall survive termination or expiration of this Agreement.

Exhibit A, 000038

**SCHEDULE 1 TO ANNEX A**
**ADP Workforce Now® Comprehensive Services**
**Statements of Core and Optional Services**

**Statement of Core Services**

| Services | Service Specifics | Roles and Responsibilities |
|---|---|---|
| **Solutions Platform** | | |
| ADP Workforce Now ("WFN") | WFN is ADP's trademarked, branded, web-based payroll, HR, Benefits and Time and Attendance technology.  WFN serves as the access point for all Client administrators, employees and managers.  General information about ADP WFN can be found at www.productdescription.majoraccounts.adp.com (which may be modified from time to time). | |
| WFN Technology Support | Access to specialists to support Client in use of WFN technology solutions. | |
| **Implementation** | | |
| Implementation – Project Manager | The ADP Project Manager is responsible for the overall Comprehensive Services technology implementation and as such creates and maintains a project plan during implementation.  The Project Manager conducts an implementation planning meeting to review the multi-faceted implementation, holds regular status meetings with the entire project team (Client, ADP, and external assigned resources) and manages deliverables accordingly. | The Project Manager provides cross product guidance for the duration of implementation and introduces the training curriculum to Client.  The Project Manager directs the team of ADP implementation specialists and consultants who work on the multi-faceted implementation required for Client to go live on ADP Comprehensive Services, including WFN. |
| Implementation -- Assignment of a dedicated ADP Relationship Manager | The ADP Relationship Manager participates in implementation and partners with the Project Manager to complete the Implementation.  The ADP Relationship Manager: <br>• Schedules onsite visit for Client's strategic analysis during or immediately after implementation kickoff meeting. <br>• Schedules planning meeting to introduce Client's managers and employees to WFN portal and self-service functionality. <br>• Coordinates and schedules Employee/Manager Self Service Launch Meeting and distribution of Welcome Kits. <br>Develops Client Strategic Action Plan for additional services to help assure alignment of Services with Client strategic direction and business drivers in all related functional areas. | The ADP Relationship Manager acts as a business consultant during the implementation process and performs business analysis.  Client is responsible for validating the accuracy of all converted data.  Client will attend all necessary implementation meetings and provide timely feedback as requested. |

Exhibit A, 000039

| Services | Service Specifics | Roles and Responsibilities |
|---|---|---|
| Set-up of Payroll, HR & Benefits, and Time and Attendance modules (as applicable) | Implementation includes all activities needed to complete set-up of the Payroll, HR & Benefits, and Time and Attendance modules (the "Module(s)") including the following:<br>• Implementation of all outsourcing services listed in this Statement of Service.<br>• Scheduling and planning all implementation meetings.<br>• Coordinating the collection of implementation service questionnaires.<br>• Setting-up the Module(s) based on Client's requirements.<br>• Collecting all relevant human resources ("HR"), payroll and enrollment data and loading them into the Module(s).<br>Client must provide all data (e.g., corporate information, payroll data, benefit plan information, relevant HR data, including current personal and work data and employee/dependent enrollment information) in a format required by ADP.<br><br>ADP will determine Client and ADP's readiness to go live based on completion of key deliverables and success of data gathering, conversion and other implementation milestones.<br><br>ADP will set-up the HR & Benefits module to incorporate Client's (i) corporate structure (e.g., divisions, locations, employee classes, and departments) and user rights; (ii) benefit plans and providers; (iii) HR data, including reports to information, performance management, leave data, job titles, salary structures, and HR reason codes; and (iv) census data, including current personal and work data and employee/dependent enrollment information for all applicable parties. | Client is responsible for (i) accurately completing and providing questionnaires to ADP's implementation team in a timely manner; (ii) providing all HR corporate group information to ADP; (iii) providing all plan requirements information, company policies and procedures to either configure WFN and/or incorporate into administrative practices; (iv) providing all payroll data; (v) providing any documents and materials needed to complete employee access set-up; (vi) providing all plan participant and enrollment data in a predefined format required by ADP; (vii) reviewing all information in the Module(s) for accuracy; and (viii) all fees related to travel.  Failure to meet these requirements may impact the date upon which Client may access the Services.<br><br>Client is responsible for maintaining system configuration of and data related to all HR-related information (e.g., salary structures, job codes, leave policies, manager access, etc.) post implementation.<br><br>Client's implementation team will determine Client's readiness to start implementation and assign Client its implementation team members.  The make-up of Client's implementation team may vary according to the number of complementary products or services purchased.  Client's implementation team will coordinate with the service team and Client's designated team members to ensure all requirements are understood and will assist in the transition to service. |
| Interfaces - ADP Carrier Connection® | If Client purchases Comprehensive HR and/or Comprehensive Payroll, either separately or together, but without Comprehensive Benefits, Client shall be entitled to up to three (3) standard carrier connections at set up of the Services.  If Client purchases Comprehensive Benefits alone or with any other Comprehensive Service(s), Client shall be entitled to unlimited standard carrier connections at set up (initial implementation) of the Services.<br><br>Client may elect additional standard carrier connections for an additional fee.  Subsequent reconfiguration of existing carrier connections and additional elections requested after set up (initial implementation) of the Services are available for an additional fee.  Carrier connections shall be subject to an annual maintenance fee. | Client shall promptly deliver to ADP any Client Content required by ADP to set-up standard carrier connections.<br><br>With respect to Carrier Connections, any changes in Client's benefit providers that require the establishment of a new carrier connection or the modification of an existing carrier connection shall be considered a new carrier connection and shall be completed by ADP at ADP's then current rates. |
| Interfaces - Payroll Interfaces, Custom Interfaces | Client may require payroll or other custom interfaces in order to electronically transmit data, including but | ADP's  construction of interfaces are subject to configuration by Client of |

Exhibit A, 000040

| Services | Service Specifics | Roles and Responsibilities |
|---|---|---|
| | not limited to employee payroll data, certain HR and other demographic employee data, etc., to designated third parties authorized by Client..<br><br>The development of such Interfaces shall be at ADP's then current fees for such services and fees shall be depend on the amount of customization required by ADP to create such interfaces.  ADP shall provide Client with an estimate of the cost of the interface prior to its development.<br><br>An annual maintenance fee shall apply to all interfaces, including Payroll Interfaces and Custom Interfaces. | the applicable Client Content and the formatting of such transmission to designated third parties.<br><br>ADP's ability to transmit Client Content is dependent on the agreement by the designated third parties and ADP will not be obligated to transmit data unless the designated third parties have agreed to accept data via the interface. |
| **ADP Personnel – Roles and Responsibilities** | | |
| ADP Relationship Manager | The ADP Relationship Manager actively communicates with Client and acts as the primary contact between ADP and Client. Each Client is assigned one (1) ADP Relationship Manager, no matter which Services Client has purchased.<br><br>The ADP Relationship Manager is actively engaged in understanding Client's business model and project objectives to ensure alignment with Client objectives.<br><br>. | The Relationship Manager focuses on assisting Client achieve its goals and promote alignment with the Comprehensive Services offering. .<br><br>The Relationship Manager is engaged with all levels within the Client organization.  They are involved in key client interactions and focused on quality client experience and consultative opportunities.  They drive utilization of Services, including applicable technology. The ADP Relationship Manager acts as a client advocate within ADP, escalating issues appropriately within ADP, coordinating with the Client to determine the impact of certain Client business events on the Services, and preparing and presenting regular account reviews.<br><br>Additionally, the Relationship Manager will coordinate resources for ongoing projects and changes outside of initial implementation and will serve as an escalation point for all ADP products and services received by Client.<br><br>The Relationship Manager schedules at least an annual review with Client to recap all activities completed on its behalf and discuss goals and objectives for the upcoming years' plan to achieve Client's objectives. |
| **ADP Service Centers** | | |
| ADP Service Center (for Client administrators) | Access to a toll free number with Client identification and issue routing via telephony. | ADP provides access to an assigned specialist team that will be Client's primary support resource.  ADP will provide standard service center hours 8:00 am to 5:30 pm, Client local time (Clients in Hawaii will have service center access 8:00 am to 5:30 pm PST), Monday through Friday, except for scheduled downtime for training, meetings and ADP-recognized |

Exhibit A, 000041

| Services | Service Specifics | Roles and Responsibilities |
|---|---|---|
| | | company holidays.  Such scheduled downtime shall not exceed two percent (2%) of available hours each calendar quarter. |
| Employee Service Center | Access to a toll free number for use by employees and managers for:<br>• General self-service and payroll inquiries<br>• General HR inquiries where Client policy is explicit when WFN Comprehensive HR is elected<br>• Benefit call support when WFN Comprehensive Benefits is elected<br><br>As authorized by Client, respond to Client's employees inquiries, when ADP has all pertinent information related to:<br><br>• Employee personal information<br>• Employee pay information and issues<br>• Vacation, holiday, and leave of absence information<br>• Hours of work and overtime information<br>• Benefit Participant Information when WFN Comprehensive Benefits is elected<br><br>Further, the Employee Service Center can provide bi-lingual support for both English and Spanish speaking employees.  Other languages are available via a partnership with AT&T's language line for an additional fee charged back to Client on a pay per usage basis. | As a prerequisite to use of Employee Service Center, Client is responsible to support and promote employee self-service and manager self-service. ADP will conduct one (1) onsite employee self-service/manager self-service launch meeting.  On request, ADP will support multiple virtual self-service launch meetings.  ADP will answer employee and manager questions that have an apparent relationship to data entry visible through the WFN applications.<br><br>ADP will provide standard service center hours 8:00 am to 11:30 pm EST, Monday through Friday, except for scheduled downtime for training, meetings and ADP-recognized company holidays.  Such scheduled downtime shall not exceed two percent (2%) of available time each calendar quarter. |
| **Pay and Tax Administration** | | |
| Payroll and Tax | ADP payroll processing with tax service to authorized jurisdictions (also included:  CheckView, Payroll Preview, Total Tax Plus$^{SM}$, Full Service Direct Deposit or TotalPay® banking options, Labor Distribution, iPayStatements, iReports).  Additional fees will apply for ADP delivery via courier.<br><br>**Year-end Forms W-2 will be provided and Clients will be billed separately.  Additional fees will apply for direct mailing of year-end Forms W-2.** | ADP processes payroll and files and deposits appropriate federal, state and local taxes.  **Client must review and approve final payments**. |
| Time and Attendance Feed to Payroll | Import employee Time and Attendance records provided that such records are in an ADP-acceptable format (if not utilizing ADP's Time and Attendance Module). | ADP provides Client with required file formats to utilize this feed. Client is responsible for adaptation of its file feed to a format that is compatible with ADP's feed. |
| Checks and Direct Deposit | ADP offers Clients two (2) banking features:  Full Service Direct Deposit (payroll wages electronically deposited into employees' bank account(s)) or TotalPay (ADPCheck plus Full Service Direct Deposit). | Client must choose one of the banking features (unless Client is purchasing Comprehensive Payroll which requires TotalPay). |
| Wage Garnishment Processing Services (WGPS) | ADP provides tools to calculate garnishments based on court orders and client interpretation and also generates reports documenting garnishment activity. | Client provides employee liens and withholding information to ADP. ADP processes employee deductions for liens, wage garnishments and court ordered support and disburses payments to third parties as appropriate. |

| Services | Service Specifics | Roles and Responsibilities |
|---|---|---|
| | | The following shall only apply if Client is not purchasing Comprehensive Payroll Services: Client is responsible for lien interpretation.  Client is responsible for all compliance with agency notification requirements; replies to garnishment notices received; notices of employee terminations and all other required written responses.  Client must provide minimum of two (2) weeks notice prior to processing of any special pays to accommodate any garnishment requirements. |
| HR, Payroll and Benefits Reporting | Comprehensive standard and analytical reports cover HR, payroll, and benefits data. | ADP provides access to certain standard payroll reports.  Client has access to ADP reporting tools to generate a limited number of custom reports. |
| GL Interface | ADP will generate a file every payroll that contains labor expense information that can be entered into popular general accounting programs.  Custom programming not included. | |
| Paid Time Off (PTO) | Access to systems to track employees' paid time off. | Client is responsible for leave administration unless Total Absence Management is purchased as an optional service. |
| Non-Paid Persons | Access to HR & Benefits module to track Client headcount not included in the payroll system.  Such persons may include international employees (located outside the U.S.), independent contractors paid outside the payroll system, persons on leave, and retirees. | |
| **State Unemployment Insurance (SUI) Administration** | | |
| Administer SUI Claims (where authorized by state law) | Provide pre-separation unemployment insurance (UI) counseling to Client.  UI claims administration. Audit SUI tax rate components.  Audit UI benefits charges.  Voluntary contribution review. Provide a quarterly summary report of claims activity.  **Client hearing and appeals not included in base services.** | ADP assists Client with unemployment claims administration and unemployment tax filings to help Client manage claims and State unemployment costs. |
| **COBRA Services** | | |
| COBRA Administration | COBRA Services are included as part of the Comprehensive HR and/or Comprehensive Benefits Services at no additional charge.  Clients purchasing Comprehensive Payroll Services (without Comprehensive HR and/or Comprehensive Benefits) can add COBRA Services for an additional fee.  ADP will make available nondiscretionary, ministerial recordkeeping and COBRA notification services regarding the group health plans identified by Client on ADP's Health Plan Information forms. COBRA notification services are provided to Client's employees and qualified beneficiaries so identified and meet qualifying event requirements under federal COBRA law. | COBRA Services will be initiated when a COBRA qualifying event is entered by Client into the WFN Benefits module. **Client is responsible for compliance with and fulfillment of all state COBRA law requirements.** |

Exhibit A, 000043

| Services | Service Specifics | Roles and Responsibilities |
|---|---|---|
| **Training and Development** | . | |
| Employee/Manager Self-Service Launch Training | Training for both Client employees and managers on the self-service tools and application (includes one on-site Employee Self-Service Kickoff and, upon request, virtual Employee Self-Service Kickoff meetings). | Client shall require its employees and managers to attend self-service tools and application training. |
| Core Product Training | Product training on all the core products for administrator users (not employees or managers). | Client shall require administrator users to attend core product training. |
| **Compliance Support** | | |
| Compliance Newsletters *Note: The offering does not include legal advice or guidance.* | Access to periodic subject matter Compliance Newsletters. | |
| Alerts *Note:  The offering does not include legal advice or guidance.* | Access to periodic subject matter Alerts and e-mails. | |
| Tip of the Week *Note: The offering does not include legal advice or guidance.* | Access to weekly Tips related to best practices and compliance changes. | |
| Online Compliance Resources | Access to law summaries, best practices, sample forms and sample policies. | |
| EEO-1 Report | Access to tools through the HR & Benefits module for tracking EEO-1 required data. | Client prepares and files EEO-1 report. |
| Veterans Report | Access to tools for the tracking of VET-4212 required data. | Client prepares and files VET-4212 report. |

Exhibit A, 000044



<div align="right">

**ANNEX D**
**ADP Workforce Now® Comprehensive Payroll**
(together with Statement of Services)

</div>

The following terms supplement the general terms and conditions in Annex A and apply to the extent Client purchases ADP Workforce Now® Comprehensive Payroll.

1. **PAYROLL SERVICES, FEES & PROCESS/USE.**

   A. **Services.** ADP will make its Payroll Administration Services set forth in the Comprehensive Payroll Description of Core Services attached hereto as Schedule 1 to Annex D (the "Payroll Services") available to clients that meet certain criteria established by ADP and that agree to the terms and procedures outlined in this Annex. As a Payroll Services client, Client shall not perform any payroll/payroll module updates in ADP's systems unless directed by ADP; ADP shall make and maintain all necessary updates or changes based on information provided by Client to ADP. ADP shall not be responsible for (i) any changes made by Client directly into the payroll module and (ii) the impact Client's actions and inputs may have on the accuracy of Client's payroll.

   B. **Client Information.** All Payroll Services will be based upon information provided to ADP by Client and Client will be responsible for the accuracy and timely submission of all such information. ADP shall not be responsible for any delays or inaccuracies in Client's delivery of data to ADP. Upon receipt from ADP, Client will promptly conduct a detailed review of all payroll registers produced by ADP for accuracy, validity and conformity with Client's records. Client will promptly notify ADP of any error or omission discovered by Client in any payroll registers, disbursement records, reports and documents produced by ADP or any discrepancy between the information provided by ADP and Client's records. Client will not rely on any record, report or document containing any discovered error, omission or discrepancy until such error, omission or discrepancy, has been corrected. Client will be responsible for any consequences resulting from instructions Client may give to ADP with regard to Payroll Services or any payroll registers, disbursement records, reports and documents prepared by ADP based on information provided by Client.

2. **TIME AND ATTENDANCE MANAGED SERVICES.** ADP shall provide the Time and Attendance Managed Services as further described in this Annex and the attached Schedule 1 to Annex D (the "TA Managed Services") in accordance with and subject to the terms of this Annex and the Agreement. The TA Managed Services are only made available as part of Payroll Services to ADP Workforce Now Comprehensive Payroll clients that utilize the ADP Workforce Now Time and Attendance module (the "TA module"). The TA Managed Services to be performed by ADP hereunder are as follows:

   A. **End of Pay Period Administration; Resolution of Error Exceptions.** Client acknowledges and agrees that Client will be responsible for ensuring that all time and labor data input submitted by Client to ADP is accurate, complete and delivered on time. For the purposes of this Annex, the term "error exception(s)" shall mean any data requirements within the TA module that, based on Client's configuration, have been assigned a severity level designation of "error"; such designation shall create a requirement for an operational task to be completed in order to proceed with Client's payroll processing. Failure to resolve an error exception will prevent Client's payroll from being processed as scheduled. Client acknowledges and agrees that Client will be responsible to clear all error exceptions preventing the time and attendance file from processing. Client also agrees that all timeframes referenced below shall be determined during the implementation process. TA Managed Services shall include, but shall not be limited to, the following operational support to assist Client in the end of pay period process:

   i. within an agreed upon timeframe prior to the deadline for payroll submission, ADP will notify all Client supervisors with error exceptions to clear all outstanding error exceptions in the TA module using electronic alerts established in the TA Module;

   ii. if within a predetermined timeframe prior to the deadline for payroll submission Client has not cleared all outstanding error exceptions, ADP will advise Client's designated contact of all outstanding error exceptions; and

   iii. lock the end of pay period process with respect to Client clearance of error exceptions.

   B. **Data Administration.** All data entry, adjustment and corrections to the TA module must be made by Client. ADP can make adjustments in the Payroll module only. Prior to commencement of Services, Client shall provide to ADP all necessary information and guidance relating to its time and attendance policies and guidelines and coordinate with ADP to establish standards for ADP in its execution of the Services.

   C. **Navigation Support.** ADP will provide telephone support to all Client employees and users for TA module navigation issues or inquiries through ADP's Employee Service Center ("ESC").

   D. **Password Resets.** ADP will provide telephone support to all Client employees and users for username and password reset requests through ADP's ESC. ADP will manage requests, and provide support, for any new Client employees or users that need to initialize their access to the TA module, including securing a username and password.

   E. **Liability for TA Managed Services. ADP shall not be liable for any damages to Client arising from the delay in submitting pay period files for processing after Client has failed to clear outstanding error exceptions within the specified deadline.**

3. **TIME AND ATTENDANCE PRODUCTS.** ADP agrees to provide Client with the data collection devices (e.g. Timeclock, HandPunch, etc.) (the "Timeclock Equipment"), time and attendance module or application, and related services (collectively, the "Time Products") described in the Sales Order. For the hosted Enhanced Time (also known as Enterprise eTIME) product only, additional license terms are available at www.adp.com/tlmlicenseterms. ADP Enhanced and Essential Time products are available for use in a limited number of countries outside the United States, although certain restrictions and requirements may apply.

   A. **Installation.** Client shall provide and install all power, wiring and cabling required for the installation of any Timeclock Equipment. Client shall also pay an installation and setup fee for each unit of Timeclock Equipment if such equipment is installed on Client's premises by ADP.

<div align="right">

Exhibit A, 000045

</div>

**B.** **Use of Timeclock Equipment and Right to Inspect**. Regarding Timeclock Equipment provided on a subscription basis only, Client shall not make any alterations or attach any device not provided by ADP to the Timeclock Equipment, nor shall Client remove the Timeclock Equipment from the place of original installation without ADP's prior consent. Upon reasonable written notice to Client, ADP shall have the right to enter Client's premises to inspect the Timeclock Equipment during normal business hours. Title to the Timeclock Equipment shall at all times remain in ADP unless Client has chosen the purchase option and has paid ADP in full the purchase price. Except if so purchased and paid for by Client, the Timeclock Equipment is at all times shall remain, a separate item of personal property notwithstanding its attachment to other Timeclock Equipment or real property.

**C.** **Return of Timeclock Equipment**. Upon termination or cancellation of this Agreement, Client shall, at its expense, return the Timeclock Equipment to ADP in accordance with ADP's instructions. The Timeclock Equipment shall be returned in as good condition as received by Client, normal wear and tear excepted. In the event the Timeclock Equipment is not returned within ninety (90) days, Client agrees to purchase it at the prevailing manufacturer's suggested retail price. If timely payment for the Timeclock Equipment is not made by Client, ADP shall have the right to take immediate possession of such equipment. The terms of this Section 5 shall not apply if prior to the time of such termination or cancellation Client already purchased and paid for the Timeclock Equipment in full.

**D.** **Warranty**. ADP warrants to Client that the Timeclock Equipment shall be free from defects in material and workmanship at the date such Timeclock Equipment is shipped and for ninety (90) days thereafter. ADP's sole obligation in case of any breach of any warranty contained herein shall be to repair or replace, at ADP's option, any defective items. The foregoing is the extent of ADP's liability with respect to all claims related to Timeclock Equipment, including without limitation, contract and negligence claims and shall constitute Client's sole remedy.

**E.** **Maintenance Fees**. Maintenance services for the Timeclock Equipment (set forth below in Section 3F) apply automatically to Timeclock Equipment obtained under the subscription option (and any charges therefore are already included in the monthly time and attendance subscription fees). The costs for maintenance services for Timeclock Equipment under the purchase option are not included in the purchase price for such equipment; a separate annual maintenance fee applies. Client, under the purchase option, may terminate its receipt of maintenance services by providing written notice to ADP no less than thirty (30) days prior to the end of the then current annual coverage period. ADP is not required to rebate to Client any maintenance fees relating to a current or prior coverage period. (NOTE: If Client selects the purchase option but opts not to receive (or terminates) maintenance services hereunder by executing a waiver of maintenance services, any such services provided by ADP at Client's request will be subject to ADP's then current charges for such services.) No Timeclock Equipment maintenance is done at the Client site. Client shall bear all delivery/shipping costs and all risk of loss during shipment/delivery of Timeclock Equipment relating to maintenance services.

**F.** **Maintenance Services**. ADP will maintain the Timeclock Equipment to be free from defects in material and workmanship as follows: Any parts found to be defective (except as specifically excluded below) shall be replaced or repaired, at ADP's or its designee's option, without charge for parts or labor, provided that the Timeclock Equipment has been properly installed and maintained by Client and provided that such equipment has been used in accordance with this Agreement and any online or shrink-wrap terms or license, or other accompanying documentation including, but not limited to, Client's Sales Order provided by ADP or its designee and has not been subject to abuse or tampering. The foregoing repairs and replacements may be made only by ADP or its designee, and will be made only after ADP or its designee is notified of a problem, receives delivery from Client of the Timeclock Equipment at issue and determines that it results from defective materials or workmanship. Notwithstanding the foregoing, ADP may deliver a temporary replacement item for Client's use while such determination is being made with respect to the Timeclock Equipment in question. Repairs and replacements required as a result of any of the following shall not be included in the foregoing maintenance services and shall be charged at ADP's then current rates: (i) damage, defects, or malfunctions resulting from misuse, accident, neglect, tampering, unusual physical, or electrical stress, or causes other than normal or intended use; (ii) failure of Client to provide and maintain a suitable installation environment; (iii) any alterations made to or any devices not provided by ADP attached to the Timeclock Equipment; and (iv) malfunctions resulting from use of badges or supplies not approved by ADP.

**G.** **Upgrades**. In order to keep the Time Products current, ADP may from time to time perform maintenance fixes and other upgrades to the Time Products Client is there receiving. ADP will perform these upgrades on Client's behalf for all hosted products. For non-hosted products, Client will be required to install the upgrade provided by ADP in accordance with the written notice provided to Client

**4.** **TAX REGISTRATION SERVICES.** ADP shall provide tax registration services as further described in this Annex and the attached Schedule 1 to Annex D (the "**Tax Registration Services**") in accordance with and subject to the terms of this Annex and the Agreement. The Tax Registration Services provided hereunder relate solely to obtaining jurisdiction account numbers requested by ADP for employment tax. There shall be no additional fees for Tax Registration Services. In receiving the Tax Registration Services hereunder, Client acknowledges the following:

**A.** Client understands that ADP will not perform Tax Registration Services in connection with the following events: (i) mergers and acquisitions; (ii) name, address or entity (corporate form) changes; (iii) applications to a state's Secretary of State; and (iv) closing of accounts with a state taxing agency.

**B.** As a third-party service provider, ADP's services hereunder are consultative in nature. ADP is not representing Client in any dealings before any tax agencies. ADP's provision of the Registration Services should not be construed as legal, tax, or accounting advice. Client should consult its legal, tax, or accounting advisors for such advice.

**C.** All submissions to the taxing jurisdiction will be (i) reviewed by Client prior to submission, when provided and (ii) signed by Client where necessary or Client will instruct ADP to affix electronically the Client signature provided by it. By signing the

Exhibit A, 000046

documents or requesting that ADP affix its electronic signature, Client is confirming that (i) it has reviewed the documents being submitted to the taxing jurisdiction and (ii) the information contained in the documents is complete and accurate.

D. By utilizing the Tax Registration Services, Client is authorizing ADP to act on its behalf in obtaining jurisdiction employment tax account numbers including, but not limited to, affixing the electronic signature provided by Client to registration forms and other documentation, submitting forms to tax agencies and directly communicating with such agencies as necessary.

E. Client understands that ADP's services are based solely on the information provided by Client about its business established within a particular jurisdiction and other written correspondence that is in reply to ADP's questions regarding the registration process or otherwise provided by Client. Client authorizes ADP to rely upon the information it furnishes in providing the Tax Registration Services. ADP is not responsible for Tax Registration Services provided hereunder based on any inaccurate information supplied by Client or the failure by Client to provide ADP with information relating to the registration process.

F. Client understands that, for reasons beyond ADP's reasonable control, ADP may not be successful in securing an employment tax account number for Client in any particular jurisdiction.

G. ADP is not responsible for any penalties or interest incurred by Client as a result of ADP's failure to timely recieve Client's identification numbers.

5. **RESTRICTIONS ON USE/OWNERSHIP.** Client's right to use the products and services contained in Payroll Services are specifically limited. Only Client's authorized employees may access the products and services contained within Payroll Services. Any alterations made to or suggested for Payroll Services, documentation or related software by Client shall be the exclusive property of ADP. ADP retains all right, title, and interest to Payroll Services. Client shall not offer, loan, encumber, sell or otherwise transfer the products or services included within Payroll Services to any third party. This Annex is personal to Client. Client shall not assign or otherwise transfer any rights (other than the limited right for Client's authorized agent to access Payroll Services on its behalf) or obligations under this Annex or the Agreement. All right, title and interest to all intellectual property with respect to the products and services contained in Payroll Services, including that, which may be or become protectable by patent, copyright, trademark, trade secret or similar laws, shall remain exclusively with ADP. No license or other right of any kind is granted to Client by ADP's furnishing the products or services to Client, except for the limited right to use and test Payroll Services as expressly provided in this Annex. Client shall not use ADP's copyrights, trademarks, trade names or other intellectual property in any way.

6. **RETURN OF PRODUCT.** Upon the expiration or termination of this Agreement or upon Client's cessation of Payroll Services, Client shall promptly return to ADP all software, documentation and other materials, whether supplied by ADP or made by Client, in connection with Payroll Services.

7. **GARNISHMENT SERVICES.**

A. **Description of the Garnishment Services.** ADP will provide Client with (i) wage garnishment order evaluation and processing, (ii) wage garnishment payment processing, (iii) voluntary wage deduction processing, (iv) third party wage garnishment order response services and (v) call center support services as further described on Schedule 2 to this Annex D (the "**Garnishment Services**"). ADP's provision of the Garnishment Services will be based upon and subject to the information supplied by or on behalf of Client (including orders or information provided by courts of law, attorneys, agencies, or Client). ADP will act solely in the capacity of a third party service provider of garnishment data evaluation and data and payment processing. ADP will in no way provide Client with legal services or representation in connection with its provision of the Garnishment Services.

B. **Additional Documents.** Client will execute and deliver to ADP copies of such documents, forms or instruments necessary for ADP to render to Client the Garnishment Services.

C. **Improvements, Enhancements, etc.** ADP will deliver to Client, at no additional cost, all improvements, enhancements, modifications and updates to the Garnishment Services if and as they are made generally available by ADP to its other Garnishment Services clients at no additional cost. All other improvements, enhancements, modifications and updates to the Garnishment Services will be made available by ADP to Client at ADP's then prevailing prices. All such improvements, enhancements, modifications and updates may, if applicable, be delivered to Client in the form of computer media and will be installed by Client. Client acknowledges and agrees that ADP will not be liable to Client for any degradation to the Garnishment Services or errors that occur as a result of Client's failure to implement any improvements, enhancements, modifications and/or updates to the Garnishment Services (including associated client interfaces) that ADP reasonably determines are necessary to ADP's provision of the Garnishment Services.

D. **ADP Performance of Services.** ADP's performance of the Garnishment Services shall be in accordance with and subject to the documents, policies, directives, rules, practices and procedures for such administration provided to ADP by Client or by third parties (such as courts, attorneys and agencies) to the extent that Client has directed ADP and ADP has agreed to accept such documents, policies, directives, rules, practices and procedures for such administration from such third parties. In the event ADP shall have any questions relating to the application of same to a particular set of facts, or if a garnishee notifies ADP of his or her objection to ADP's evaluation or application of the same, then ADP shall notify Client of such questions or objections. Client shall be responsible for obtaining answers to any such questions or resolving such objections and ADP shall be entitled to rely upon such answers and to follow any directions communicated by Client. Client authorizes ADP to release employee-related data to applicable courts of law, other third party vendors of Client as are designated by Client from time to time or to the extent necessary to provide the Garnishment Services.

E. **Client Indemnity.** Client shall indemnify, defend and hold ADP harmless from and against any and all liabilities, claims, penalties, damages, forfeitures, suits, and the costs and expenses incident thereto (including the costs and expenses of defense, settlement and reasonable attorneys' fees), arising from or claimed to have arisen from the performance by ADP of the Garnishment Services, including any such liability, claims, damages, costs or expenses arising from or claimed to have arisen from actions ADP performs in connection with Garnishment Services pursuant to any data supplied by Client or any instruction,

Exhibit A, 000047

request or representation of Client, except to the extent such liability, claims, damages, costs or expense arise from the negligence or willful misconduct of ADP. ADP shall be under no duty to review any such Client data, instruction, request or representation.

F.    **Additional Termination.**

   i.    Basis of Termination. If (a) Client fails remit or otherwise make available to ADP sufficient, good and available funds within the deadline established by ADP, and (b) such failure, in ADP's reasonable opinion, creates a risk of loss of funds to ADP (based upon ADP's standard procedures), ADP may, in its sole discretion and upon notice to Client, immediately terminate the Garnishment Services under this Annex D. In addition, if ADP reasonably determines that it can no longer provide all or any portion of the Garnishment Services due to changes in applicable law or application of existing law, ADP may, in its sole discretion and upon notice to Client, immediately terminate the applicable portion of the Garnishment Services.  If the Garnishment Services are terminated by ADP pursuant to this Section 7F, Client will immediately (1) be responsible for payment of Client's wage garnishment and voluntary deduction amounts associated with that portion of the Garnishment Services terminated by ADP not otherwise collected from Client by ADP including, without limitation, any judgments, court costs, legal fees, and/or interest accruing after the date of such termination, (2) be responsible for its garnishment answer and filing obligations, (3) reimburse ADP for all such payment obligations paid by ADP on behalf of Client and theretofore not paid or reimbursed by Client, and (4) pay any and all fees and charges invoiced by ADP to Client relating to the Garnishment Services.

   ii.    Reinstatement after Termination. If ADP terminates the Garnishment Services because Client fails remit or otherwise make available to ADP sufficient, good and available funds within the deadline established by ADP, and Client determines that its failure to do so was the result of a clerical error, Client may request in a writing delivered to ADP (a "Reinstatement Request") that ADP reinstate the Garnishment Services.  The Reinstatement Request shall be certified by an executive officer of Client and include a detailed description of the circumstances surrounding Client's failure to make such funds available.  If ADP agrees, in its reasonable discretion, that Client failed to remit or otherwise make available to ADP sufficient, good and available funds because of a clerical error, ADP will reinstate Client's Garnishment Services at the earliest date reasonably possible.

   iii.    Additional Requirements. If Client fails to remit or otherwise make available to ADP sufficient, good and available funds and ADP chooses in its discretion to not terminate this Annex D, as a condition to continuing to provide the Garnishment Services, ADP may require Client to pay all outstanding and future wage garnishment payment obligations covered by the Garnishment Services and/or all ADP fees and charges for the Garnishment Services hereunder to ADP by (a) bank or certified check, (b) wire transfer of immediately available funds, and/or (c) in advance of the then current schedule.

G.    **Electronic Income Withholding Orders Program.**

   i.    Authorization. To the extent the Electronic Income Withholding Orders Program (the "e-IWO Program") is available in any particular jurisdiction, Client authorizes ADP as its third party service provider to receive from the Office of Child Support Enforcement (the "OCSE") electronic income-withholding orders/notices issued by all states/tribes/territories participating in the e-IWO Program.  Client also authorizes ADP to rely on the documents and information provided to it by the OCSE and to handle and process income-withholding orders/notices electronically transmitted to it in the same manner as if they were received from Client.

   ii.    ADP Obligation. ADP's sole obligation with respect to the e-IWO Program is to handle and process income-withholding orders/notices that are actually received by it from the OSCE.  ADP shall not be liable or deemed to be in default for any act, failure to act, negligence or bad faith by any state/tribe/territory or the OCSE.

   iii.    Client Obligation. In order to participate in the e-IWO Program, Client must provide to ADP the information necessary to provide this functionality.  For the jurisdictions participating in the e-IWO program, Client shall continue to forward any and all income-withholding orders/notices or related documentation or information received by it to ADP.

   iv.    Mechanics of the e-IWO Program. Client understands that there is a 30-day start up period in which orders will convert from hard-copy documents mailed to Client to the electronic method.  Client agrees to provide written notice to ADP at least 45 days in advance if it wishes to no longer participate in the e-IWO Program.  Client also acknowledges and agrees that ADP may, at its sole discretion, discontinue participation in the e-IWO Program at any time.

   v.    Client understands that any electronic income-withholding orders received by ADP as its third party service provider shall be considered records generated during the ordinary course of business and that the electronic income-withholding orders received by ADP shall be considered admissible as evidence in the same manner as paper documents.

8.    **CERTIFIED PAYROLL.** Client acknowledges and agrees that Client, and not ADP, will be solely responsible for the preparation and processing of all certified payroll needs, including any reporting requirements. Client will be responsible to comply with all regulations pertaining to the preparation of certified payrolls and related reporting.  Government contracting, certified payroll reporting and compliance support of the Davis Bacon Act, the Service Contract Act or any state law equivalents is outside the scope of the Services. Client will be responsible for the maintenance of any third party system Client engages to meet its certified payroll requirements. Client will also be responsible for the creation of any and all reports and import files relating to certified payroll. ADP disclaims any liability whatsoever for any activities or actions relating to certified payroll and Client shall be liable for, and shall indemnify ADP against, any loss, liability, claim, damage or exposure incurred by ADP arising from or in connection with Client's certified payroll operations.

---

Exhibit A, 000048

**SCHEDULE 1 TO ANNEX D**

**Comprehensive Payroll Statement of Services**

The following supplements the ADP Workforce Now Comprehensive Services Statements of Core and Optional Services (Schedule 1 to Annex A) and applies to the extent that Client purchases ADP Workforce Now Comprehensive Payroll.

| Services | Service Specifics | Roles and Responsibilities | |
|---|---|---|---|
| | | **ADP** | **Client** |
| **Implementation of Comprehensive Payroll** | | | |
| Standard Operating Procedures | ADP obtains detailed information required to configure and deliver the Payroll Services.<br><br>During implementation, ADP works with the Client to conduct an analysis in order to ensure that ADP has up-to-date and accurate information on Client's programs and policies that will be administered by ADP.<br><br>ADP's Transformation Services, will assist the Client and Client managers with change management | ADP uses analysis documents and meetings with Client to capture all of Client's pay practices and creates Standard Operating Procedures ("SOP").<br><br>ADP provides Client with best practices and guidance while developing the combined standard operating procedure ("SOP") documents which include ADP's standard procedures. | Client provides ADP with its payroll practices and procedures and assists ADP with completing the SOP, which will be used to perform the Payroll Services.<br><br>To the extent that Client does not purchased ADP's WFN HR, Time and Attendance and/or Benefits Modules, the SOPs shall outline additional Client responsibilities that may arise as a result of Client's use of such non-ADP systems (e.g. downstream impact to potential government agency reporting requirements, such as ACA reporting).<br><br>Prior to commencement of the Payroll Services, Client must acknowledge the SOP. |
| Implementation Schedule | Implementation of Payroll Services will proceed in accordance with an implementation schedule agreed upon between ADP and Client. | | Client agrees to use commercially reasonable efforts to implement Payroll Services within fourteen (14) weeks of the commencement of implementation of Payroll Services. |
| **Workforce Now Comprehensive Payroll Support Team** | | | |
| Payroll Specialists | ADP Payroll Specialists coordinate the administration of Payroll Services on an ongoing basis, including payroll processing and administration activities, establishing and maintaining processing schedules, coordinating any non-standard processing events, and managing critical payroll events during the year (e.g., year-end processing) | | Client shall adhere to the Comprehensive Payroll timeline as documented in the Client SOP. |
| **Payroll Services** | | | |
| Time and Attendance Managed Services | Time and Attendance module (Comprehensive Payroll Services includes ADP Essential Time. | ADP provides access to and set-up of the Time and Attendance module ("TA | Provide to ADP Client business rules and policies for time capture, changes in |

Exhibit A, 000049

| Services | Service Specifics | Roles and Responsibilities | |
|---|---|---|---|
| | | **ADP** | **Client** |
| | ADP Enhance Time is available for an additional charge), | module"), an ADP web-hosted time and attendance system that uses the Internet to automate employee time and attendance record keeping, including best practice recommendations about integration of the Time and Attendance Module. | organizational structure, etc. required to set-up and maintain TA module. |
| | Time collection and Reporting | Identify and escalate any error exception(s) to designated client contact.<br><br>Identify error exceptions per agreed upon guidelines/ thresholds and escalate to Client.<br><br>Reconcile escalations per Client guidance but ADP will not make adjustments to Client data within the TA module.<br><br>Create time data batch and submit to payroll. | Collect employee time according to Client business rules and policies within the appropriate payroll schedule.<br><br>Client assigns employees to work schedules within TA module.<br><br>Review and approve employee time data; notify employees and reconcile error exceptions and discrepancies in accordance with Client business rules and policies.<br><br>Designated client contact must assign a secondary contact if unavailable for scheduled call/contact<br><br>Respond to escalations as needed for approval per agreed upon schedule.<br><br>Client is responsible for all time entries, adjustments and approvals. |
| Payroll Administration | The complete details of the Comprehensive Payroll Timeline will be documented in the Client Standard Operating Procedures. All HR-related changes must be submitted 5 business days prior to Client's check date and all time and attendance records must be approved 4 business days prior to the Client's check date, at the deadline designated by ADP. | ADP provides services and resources to the Client related to the administration of payroll.  Provides problem management resolution for payroll problems/issues (includes case management, escalation and reporting) from both Client and Client employees and managers.  ADP communicates errors and corrective actions including reporting on open items. | Client supports ongoing processes, conducts strategic planning, develops Client business rules and policies and notifies ADP of any Client procedural or organizational changes affecting the Payroll Services.  Client assists in resolving issues escalated by ADP in accordance with the Comprehensive Payroll timeline documented in the Client acknowledged SOP. |
| | Cost allocations | ADP maintains costing definitions to permit cost allocations from payroll data.  ADP maintains all tables supporting the payroll | Client defines labor costing and distribution codes and rules and provides to ADP. |

Exhibit A, 000050

| Services | Service Specifics | Roles and Responsibilities | |
|---|---|---|---|
| | | **ADP** | **Client** |
| | | function. | |
| | Payroll Calendar/Schedule and Maintenance | ADP will apply and configure payroll calendars and cycles based on information provided by Client.<br><br>ADP will update schedule as requested by client per established update process. | Client defines timekeeping schedules, payroll calendars and cycles in accordance with parameters provided by ADP.<br><br>Client will inform ADP of all changes to schedules, calendars, or cycles that impact payroll in a timely manner and in accordance with the Comprehensive Payroll timeline documented in the Client acknowledged SOP. |
| | Employer Updates | ADP will process updates impacting payroll per Client direction and approved process provided that any such changes are effective at the beginning of the pay period.<br><br>Any mid-cycle process updates impacting payroll shall be considered a change control and additional fees shall apply. | Client will provide information and updates for:<br>• Earning types<br>• Deduction types<br>• Mass changes<br>• Rate changes<br>• Organizational changes<br>• Accumulators and work rules; and<br>• Other updates as required. |
| | Event Processing | Based on information provided by Client, ADP processes changes related to Clients' employees. | Client enters data in ADP Workforce Now or a designated ADP format (pre-audited and import ready) in a timely manner for the following Client employee changes:<br>• Terminations<br>• Leaves of absence<br>• Transfers and promotions<br>• Status changes<br>• Hire/rehire<br>• Client organizational changes; and<br>• Other updates as required. |
| | Employee Record Setup and Maintenance | ADP will:<br>• Process submitted and approved employee changes<br>• Process new employee pay/time file setup<br>• Collect and process employee pay file changes<br>• Process direct deposit enrollments and changes<br>• Manage and maintain payroll database and | Client will:<br>• Enter and approve employee changes<br>• Provide special payment information (e.g., one-time or infrequent payments such as bonuses or sales commissions, etc.)<br>• Provide ADP with pre-audited, approved ADP formatted import files |

Exhibit A, 000051

| Services | Service Specifics | Roles and Responsibilities | |
|---|---|---|---|
| | | ADP | Client |
| | | payroll records<br>• Process mass changes<br>• Import files that are in pre-audited, approved-ADP format<br><br>ADP will set up the tax validation tables based on Client's direction<br><br>Provide guidance and best practices | Client will provide all applicable employee level tax coding |
| | Paid Time Off (PTO) | Provide modules to track employees' paid time off based on Client's PTO policy. | Provide PTO policy information and exceptions. Provide updates and changes in PTO policy to ADP. Client is responsible for reconciling employee PTO balances and tracking, including balance issues. |
| Payroll Processing | Payroll Module | Provide payroll processing module for calculation of gross to net processing through ADP's proprietary software | Client agreement to not make changes within the payroll module |
| | Gross to Net | Provide and maintain module to calculate gross to net pay, including deductions. | Client will provide applicable information to set up earnings and deductions for the calculation. |
| | Pay Processing and Off-Cycle Processing<br>• Manual Checks<br>• Retro Adjustments<br>• Bonus/Supplemental Pay<br><br>If an additional payroll processing is required, such processing shall be subject to additional cost. | ADP will process Client's payroll data as follows:<br>• Input into and verify pay data in payroll module<br>• Calculate retroactive pay adjustments for exempt employees, being paid a fixed salary, within sixty (60) days of the current pay period begin date<br>• *Calculating retroactive pay adjustments for all employees beyond the sixty (60) day threshold will be done by work order only – additional fees will apply*<br>• Process prorated payments per data provided by Client<br>• Process off-cycle payrolls as requested by Client or as deemed necessary by ADP<br>• Provide Client access to off-cycle payroll data via online reporting tools<br>• Update payroll balances and accumulators, as | Client will:<br>• Notify ADP of upcoming off-cycle processing changes and coordinate processing, including submission of data in required format<br>• Calculate and provide data to ADP for retroactive pay adjustments required for all nonexempt employees, paid hourly or by fixed salary<br>• Calculate and provide data to ADP for retroactive adjustments required for all exempt employees being paid a fixed salary outside the sixty (60) day window or in mid-payroll cycle<br>• Calculate and provide data to ADP for all employees for all overtime retroactive pay calculations<br>• Provide ADP with data for prorated payments<br>• Provide ADP with data needed to calculate mid- |

| Services | Service Specifics | Roles and Responsibilities | |
|---|---|---|---|
| | | **ADP** | **Client** |
| | | needed per request from Client<br>• Process required earnings or deduction adjustments to reflect accurate system or control information within the module (primarily system tables or processing tables)<br>• Provide summary reporting on deductions and payments<br>• Submit and reconcile statutory deductions<br>• Create benefit deductions per data provided by Client<br><br>If ADP performs an off-cycle payroll, payroll amendment or issues manual checks at Client's request, additional fees may apply. | cycle or retroactive adjustments for benefit deductions<br><br>If a manual check is required, the Client Payroll Contact must submit the Manual Check Request to the ADP Payroll Specialist. The ADP Payroll Specialist will calculate the check, provide the Client Payroll Contact with the net pay and update the ADP Workforce Now® Payroll module with the next payroll. The Client Payroll Contact is responsible to issue a manual check in house from its own check stock or print such manual check within ADP Workforce Now. |
| Payment Services | Checks and Direct Deposit | Provide TotalPay, which includes Full Service Direct Deposit (payroll wages electronically deposited into employees' bank account(s)) and ADPCheck.<br><br>Prepare pay deposits or checks for employees. | Client ensures that sufficient funds are available in Client's designated account for direct debit to ADP's designated account, or transferred by means of wire transfer to ADP's designated account, as applicable, within specified deadlines to satisfy all of Client's payroll obligations and off-cycle processing.<br><br>• Client ensures that employees may not cash checks prior to check dates. Noncompliance with this request will result in additional fees to Client |
| | Stop Payments/Voids | ADP will process stop payments and voids as directed by Client. | Client will notify ADP of need for stop payments and voids and provide data to identify specific payment(s) impacted. |
| | Reversals | Process reversals as directed by client within the current pay period or as funds are available. | Notify ADP of need for reversals and provide data to identify specific payment(s) impacted.<br><br>Client is responsible for collection of overpaid funds. |
| | Payments to Third Party Vendors | | Client is responsible for payments to third party vendors. |
| | Reconciliation | For funds paid using TotalPay and/or ADPCheck, | Client will be responsible for reconciliation of payments |

Exhibit A, 000053

| Services | Service Specifics | Roles and Responsibilities | |
|---|---|---|---|
| | | **ADP** | **Client** |
| | | ADP will reconcile all payments issued. | issued outside of TotalPay and ADPCheck |
| Payroll Tax Filing | Payroll Taxes | File and deposit federal and state payroll taxes on Client's behalf in jurisdictions where ADP is authorized.<br><br>*Forms W-2 are provided at an additional fee.* | Review and approve final payments for payroll tax services.<br><br>File and deposit payroll taxes for jurisdictions where ADP is not authorized |
| Payroll Compliance | Quick Reference Guides<br>*Note: The offering does not include legal advice or guidance.* | Access to Quick Reference Guides for each of the fifty (50) United States, which include a summary of the top compliance issues for Client's review and application.<br><br>ADP reviews payroll trends and evaluates and communicates payroll best practices and guidance through various forms of communication, such as Payroll Alerts | Client remains responsible for its compliance with all applicable laws.<br><br>Client remains responsible for action required in communications issued to Client in the various forms of communications, such as Payroll Alerts.<br><br>The Comprehensive Payroll Services are not designed to take into account payroll laws in local jurisdictions. |
| HR, Payroll and Benefits Reporting Tool | ADP Reporting provides comprehensive standard and analytical reports covering HR, payroll, and benefits data. | Provide tools for reporting and support.<br><br>If Client requires additional assistance in developing reports, ADP will assist in Client's efforts to create reports but will not be responsible for Client's report writing requirements. | Utilize reports and reporting tools as needed to support business needs. |
| Pay Data Files | Client Pay Data Files submitted to ADP may be subject to additional charges. Pay Data Files are typically used to process specific payroll-related data (For example: commission, bonus, taxable stock transactions and non-standard ADP employee deductions such as union dues, or other types of payroll transactions. | Import and process up to four (4) required ADP pre-approved formatted file(s) into Payroll module per payroll schedule.  If Client requires more than four (4) files, additional fees may apply.<br><br>If a designated ADP resource is required to manage/create a Payroll Interface, additional fees will apply. See Payroll Interfaces below.<br><br>Notify Client of any format issues.  Work with client to resolve issues, as needed. | Client contact submits pre-audited file to ADP using ADP format specifications, process, and schedule/timeline (5 business days prior to pay date).<br><br>Maintain and resolve data accuracy for files.<br><br>Client shall adhere to schedule/timeline. |
| Payroll Interfaces | General Ledger ("GL") Interface | Maintains system to create expense information file.<br><br>Provides access and system to create file that contains | Generates file and imports to financial system as needed.<br><br>Maintains mapping of payroll fields to financial system |

Exhibit A, 000054

| Services | Service Specifics | Roles and Responsibilities | |
|---|---|---|---|
| | | **ADP** | **Client** |
| | | expense information that can be entered into the more popular general accounting programs.<br><br>Communicates any payroll related changes that may impact field mapping. | fields.<br><br>Communicates any mapping updates that impact payroll processing to ADP. |
| | Payroll Outbound Interfaces | Create/Run interface file per the payroll schedule and agreed upon format *(custom programming fees may apply)*.<br><br>Provide file to designated Client contact. | Provide initial file/setup requirements and formats for each interface.<br><br>Provide updates to ADP for any changes to file/setup requirements.<br><br>Maintain and resolve data accuracy for transferred files. |
| International and Expatriate Employees | The rules around wage and tax withholding and reporting for Expatriates (U.S. employees working outside the U.S.) and Foreign Nationals (employees from foreign countries working in the U.S.) are complex and require a high level of coordination from Client's payroll, benefit and human resources contacts. ADP will have no responsibility or liability with respect to any payroll calculations, including tax withholding, for Expatriates or Foreign Nationals | | Client must have a detailed written policy for compensation of these types of employees and should work with a legal and tax professional due to the complexity of the compensation and taxation at the federal and state level. |
| | Expatriates (U.S. employees working outside of the U.S.) | ADP will process payroll for Client to expatriates via such person's U.S. bank account based exclusively on payroll information, including all earnings types, deductions and tax withholdings, provided to ADP by Client.<br><br>ADP will reasonably assist Client in producing reports requested by Client. | Client must calculate all compensation, including all earnings types, deductions and tax withholdings on global assignments. These calculations include, but are not limited to: cost of living adjustments, hypothetical tax calculations, housing costs, living allowances, state tax issues, tax equalization, tax protection, etc.<br><br>Client must provide all necessary information for these employees (including earnings, tax withholding, deductions, etc). |
| | Foreign Nationals (Foreign employees working in the U.S.) | ADP will process payroll for Client to foreign nationals via such person's U.S. bank account based exclusively on payroll information, including all earnings types, deductions | Client must verify eligibility to work in the U.S.<br><br>Client must verify VISA and pay requirements under VISA regulations. |

Exhibit A, 000055

| Services | Service Specifics | Roles and Responsibilities | |
|---|---|---|---|
| | | **ADP** | **Client** |
| | | and tax withholdings, provided to ADP by Client. | Client must provide tax withholding guidance for income and Social Security withholdings which may be different for each employee and each type of VISA and country of origin.<br><br>Client must accurately perform the aforementioned withholdings calculations (typically performed by a third party) to provide ADP with the appropriate direction.<br><br>Client will monitor hours worked and all events that require tax and other compensation changes and will notify ADP of such changes when required. |
| | ADP shall process the payments for the Client's nonemployee workers and annually prepare Forms 1099-MISC for the Client's nonemployee workers ("1099 Workers") as requested by Client for an additional fee. The 1099 Workers must all be listed under a separate control (company code). | ADP will not provide any Wage Garnishment Processing Services (WGPS) or Full Service Garnishment Services for the 1099 Workers. | Client will be responsible for, among other things: (i) compliance with orders to withhold and remittance of amounts demanded for any type of garnishment; (ii) all lien interpretation; (iii) responses to initial orders; and (iv) preparation and transmittal of all employee termination and leave of absence notifications to the appropriate agencies. |
| Form 1065 (Schedule K-1) Partner's Share of Income, Deductions, Credits, etc. | | | Client will be responsible. |
| Form 8922 – Third Party Sick Pay Recap | Special rules apply to the reporting of sick pay payments to employees. How these payments are reported depends on whether the payments are made by the employer or a third party, such as an insurance company. | ADP will establish a separate company code if the Client requires the Form 8922. Pay data will be processed to capture the information required on the form. The Form 8922 will be printed at the end of the tax year and sent to the Client for filing with the IRS. | Client must consult with third party plan administrator to determine if plan administrator or ADP will be issuing the employee Forms W-2 and who will be required to file Form 8922.<br><br>Client understands ADP does not provide tax filing services for Form 8922. |
| Form 1099-MISC Workers | ADP shall process the payments for the Client's nonemployee workers and annually prepare Forms 1099-MISC for the Client's nonemployee workers ("1099 Workers") as requested by Client for an additional fee. The 1099 Workers must all be listed under a separate control (company code). | ADP will not provide any Wage Garnishment Processing Services (WGPS) or Full Service Garnishment Services for the 1099 Workers. | Client will be responsible for, among other things: (i) compliance with orders to withhold and remittance of amounts demanded for any type of garnishment; (ii) all lien interpretation; (iii) responses to initial orders; and (iv) preparation and transmittal of all employee |

Exhibit A, 000056

| Services | Service Specifics | Roles and Responsibilities | |
|---|---|---|---|
| | | **ADP** | **Client** |
| | | | termination and leave of absence notifications to the appropriate agencies. |
| Employees located in the US Territories and Caribbean, including Puerto Rico, Guam, and US Virgin Islands | Outside the scope of services under the Comprehensive Payroll offering. | | Client must manage all related processing on their own in a separate company code, with separate FEIN. ADP does not provide any payroll compliance support. |
| **Tax Registration Services** | | | |
| Relevant and Required Information | | ADP shall obtain relevant and required information to complete online or paper registration applications. | Client must provide to ADP all information requested by ADP with respect to the Tax Registration Services |
| Submission of Applications | Upon Client's request, ADP shall initiate the registration process for each jurisdiction identified by Client and arrange for the submission of the application(s) to the appropriate tax agency on the Client's behalf. | ADP will not perform Tax Registration Services in connection with the following events: (i) mergers and acquisitions; (ii) name, address or entity (corporate form) changes; (iii) applications to a state's Secretary of State; and (iv) closing of accounts with a state taxing agency. | Client may need to provide a signed Power of Attorney (POA) or Reporting Agency Authorization (RAA) when needed by ADP for it to obtain account number and status information from an employment tax jurisdiction. |
| Communications | ADP shall communicate with the tax agency representatives on the status of the application and notify Client in writing of the new account numbers (to the extent this information is communicated to ADP by the tax agency), other account status information, or problems encountered during the process. | ADP is not responsible for P&I based on timeliness of receipt of the client's ID number. | Client must promptly provide ADP with any communications received from the tax agency which are directly or indirectly applicable to the registration process or that may otherwise impact Client's request for an account number. |

Exhibit A, 000057

**SCHEDULE 2 TO ANNEX D**

**Garnishment Services**
**ADP Description of Roles and Responsibilities**
**for Garnishment Services**

This matrix defines the responsibilities of ADP in delivering Garnishment Services to Client, and also highlights the responsibilities remaining with Client.  Please note that all services are provided in accordance with standard ADP processes and methodologies, and are therefore is subject to change in the reasonable discretion of ADP.

| Garnishment Services | | Responsibility | | | |
|---|---|---|---|---|---|
| Area | Task/Activity | ADP | Client | Third Party | Notes |
| **Garnishment Services Implementation** | Provide wage garnishment data in single electronic file in ADP standard format, along with copies of all associated original garnishment orders; resubmit data if original data is returned by ADP | | ✓ | | |
| | Complete data conversion test and return any data errors to Client for analysis and resubmission | ✓ | | | |
| | Validate results of data conversion test | | ✓ | | |
| **ADP Wage Garnishment Administration** | Send garnishment orders and wage attachments to ADP | | ✓ | | NOTE:  ADP assumes garnishments provided to ADP are valid |
| | Process new and/or existing garnishment orders and wage attachments received from Client | ✓ | | | |
| *Employee Communications* | Notify Client employee of garnishment order and/or wage attachment requirements, including processing fee for deductions associated with collection of child support or creditor lien through payroll deduction | ✓ | | | |
| *Non Court-Filed Communications* | Complete and send notifications directly to applicable third party(ies) | ✓ | | | |
| *Court-Filed Communications* | Complete court-filed notifications; send electronically to Client via GENAS for either electronic signature or wet physical signature where required due to State requirement or notary requirement. | ✓ | | | NOTE:  Court-filed notifications include the following types of correspondence for Writs of Garnishment, wage assignments, bankruptcy, Georgia state tax levies and other documentation required to be filed with a court: |

Exhibit A, 000058

| Garnishment Services | | Responsibility | | | |
|---|---|---|---|---|---|
| Area | Task/Activity | ADP | Client | Third Party | Notes |
| | Complete recurring answers as required by courts each pay cycle, including accompanying payments withheld from appropriate individual(s) (where payment is required to accompany such answers); send to Client for either electronic or physical signature (as described in the preceding section) as required | ✔ | | | • Interrogatory (basic form type that do not require any legal interpretation)<br>• Answer of continuing lien<br>• Employee copy of continuing lien<br>• Notice of unable to withhold<br>• Notice of employee termination<br>• Notice of employee not on file<br>• Final answer<br>• |
| | Review, approve (via either electronic signature or physical signature as indicated by ADP), and notarize (if required), court-filed notifications and/or recurring answers within timeframe set out in standard operating procedure; send signed hard copy documents to ADP via overnight delivery | | ✔ | | |
| | Process approved documents as follows:<br>• For documents that can be signed electronically, affix Client signature, send electronically to applicable court<br>• For documents that require physical signature and/or notarization, scan signed documents and send to applicable court | ✔ | | | |
| | Retain ownership of completion of any court-filed communications not signed and/or sent within timeframe set out in standard operating procedure as described herein | | ✔ | | |
| Garnishment Disbursement and Funding | Process garnishment payments every payroll, or according to a defined frequency (e.g., end of each month) in accordance with requirements of garnishment order | ✔ | | | |
| | Fund garnishment payments | | ✔ | | |
| Garnishment Administrative Fee Service | Collect garnishment administration fees associated with collection of child support and creditor lien payments through payroll deduction | ✔ | | | NOTE: Administrative fees collected are calculated based on applicable, state-dictated rates |

Exhibit A, 000059

| Garnishment Services | | Responsibility | | | |
|---|---|---|---|---|---|
| Area | Task/Activity | ADP | Client | Third Party | Notes |
| | Report garnishment administration fees collected to Client via payroll output report; return collected fees to Client via adjustment to impounded amount for garnishments | ✓ | | | |

Exhibit A, 000060

 Workforce*Now*

1. **OVERVIEW.**
   A. **Description.** ADP will provide the Essential ACA solution specified in the Sales Order (and any applicable service specification) (collectively, the "**Essential ACA**") to Client in accordance with the terms of this Agreement. Essential ACA is a technology and software solution to assist Client in managing compliance needs related to the Affordable Care Act (ACA), including eligibility calculations and affordability determinations, preparation and electronic filing of Forms 1094-C and 1095-C forms, access to evidence of benefit offering information and benefit offering audit reports. Client must use ADP Workforce Now payroll, HR and benefits services in order to purchase and implement Essential ACA. The Essential ACA services will commence for the 2017 filing period. ADP will not assist with the 2016 filing period. For the avoidance of doubt, all Forms filed by ADP with the IRS on behalf of Client will be filed electronically; any Forms sent to Client for its employees by ADP shall be sent in paper form, and, if Client has ADP's iPay functionality, ADP will also make Forms accessible to Client employees electronically. It will then be Client's responsibility to distribute the Forms directly to its employees.
   B. **Delivery of Client Content.** Client shall promptly deliver to ADP the Client Content as required by ADP in an electronic file format specified by and accessible to ADP and will include any materials relating to Client and necessary for incorporation in the Essential ACA solution, including, but not limited to, any Human Resources, Payroll, Time and Labor, Benefits, Form I-9, and/or financial data.

2. **THE SERVICES.**
   A. **Client ACA Liaison.** Prior to the commencement of ADP's provision of the Essential ACA solution, Client shall designate in writing to ADP the name of one person who shall serve as ADP's principal designated contact for the Essential ACA solution (the "Client ACA Liaison"). Client hereby represents and warrants to ADP that the Client ACA Liaison has, and shall at all times have, the requisite authority to transmit information, directions and instructions on behalf of Client. The Client ACA Liaison also shall be deemed to have authority to issue, execute, grant, or provide any approvals (other than amendments to this Agreement), requests, notices, or other communications required or permitted under this Agreement (including, without limitation, Change Items) or requested by ADP in connection with the Essential ACA solution. Client shall designate an alternate Client ACA Liaison in the event the principal Client ACA Liaison is not available.
   B. **Client Instructions.** In the event ADP shall have any questions relating to a particular set of facts or client directions, then ADP shall request clarification from the Client ACA Liaison. The Client ACA Liaison shall have the responsibility to obtain answers to any such questions or objections and ADP shall be entitled to rely upon such answers and to follow any directions communicated by the Client ACA Liaison. Client authorizes ADP to release employee-related data to third party vendors of Client as are designated by Client from time to time. ADP shall be under no duty to question the measures taken or directions provided by Client pursuant to any section of this Annex E.
   C. **Disclaimer. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN OR IN THE SCOPE OF SERVICES, CLIENT EXPRESSLY ACKNOWLEDGES THAT ADP IS NOT THE "ADMINISTRATOR" OR "PLAN ADMINISTRATOR" AS DEFINED IN SECTION 3(16)(A) OF ERISA AND SECTION 414(g) OF THE INTERNAL REVENUE CODE, RESPECTIVELY, NOR IS ADP A "FIDUCIARY" WITHIN THE MEANING OF ERISA SECTION 3(21). ADP SHALL NOT EXERCISE ANY DISCRETIONARY AUTHORITY OR DISCRETIONARY CONTROL RESPECTING MANAGEMENT OF ANY BENEFIT PLANS SPONSORED OR OFFERED BY CLIENT. ADP HAS NO DISCRETIONARY AUTHORITY OR DISCRETIONARY RESPONSIBILITY IN THE ADMINISTRATION OF THE CLIENT'S BENEFIT PLAN(S).**

3. **IMPLEMENTATION SERVICES.**
   A. **Implementation Services.** ADP will assist Client in implementing the Essential ACA solution for the benefit of and in conjunction with Client in accordance with the provisions of this Section 3. ADP will use commercially reasonable efforts to complete the implementation services in a timely manner.
   B. **Conversion of Data; Required Timeline.** Client shall provide to ADP, such applicable Client files, databases and other information (the "Client Files") as is necessary to permit the Essential ACA solution to be performed. Client must provide the Client Files to ADP by November 1st of the year preceding the year in which the preparation and electronic filing of the Forms will be provided. For purposes of clarification and example, in order for ADP to perform the preparation and electronic filing of the Forms in January of the current filing year, Client must provide the Client Files in accordance with the terms and conditions of this Addendum, and such Client Files must be accepted and converted by ADP by December 9 of the previous year. Client assumes the responsibility for the Client Files to be transmitted to ADP, including, but not limited to, their condition, content, format, usability or correctness. Client shall perform all Client Files refinement, purification and reformatting in order for the Essential ACA solution to be performed by ADP. With Client's pre-approval, ADP shall be compensated on a time and expense basis at ADP's standard rates in effect at such time in the event ADP is required to perform any such refinement, purification or reformatting. Client will cooperate with ADP and provide ADP with all necessary information and assistance required in order for ADP to successfully convert the Client Files. Client understands and agrees that if Client fails to provide the Client Files in order for such Client Files to be accepted and successfully converted by November 1st, in any given year, ADP will not provide the preparation and electronic filing of the Forms for that year and Client will not be eligible for credit of any fees paid for the Essential ACA solution for that year. Client is responsible for the accuracy of all Client Files and will review for accuracy the preview of the Forms prior to filing. In the event that a Form 1094-C or 1095-C needs to be refiled due to an inaccuracy in the Client files, Client will be billed for such refiling. The obligations described in this Section 3B shall apply to ongoing provision of Client Files to ADP by Client.
   C. **Project Lead.** Client will designate a project lead for the implementation of the Essential ACA solution and will promptly notify ADP of the name, telephone number and email address of such person. The Client project lead will be deemed to have authority to issue, execute, grant, or provide any approvals, requests, notices, or other communications required under this Annex or requested by

Exhibit A, 000061

the other party in connection with the implementation of the Essential ACA solution.   The project lead will bring appropriate personnel/skillsets to the project as needed.

4.   **LICENSED ENTITY.**

Notwithstanding the use in this Annex E of the word "ADP", in the event that ADP determines that all or a portion of the Essential ACA solution may be subject to licensing or other regulatory requirements, such services shall be performed solely by such wholly owned subsidiary of Automatic Data Processing, Inc. as shall be designated by ADP.

Exhibit A, 000062

1

## <u>CERTIFICATE OF SERVICE</u>

2          I am a resident of the State of California and over the age of eighteen years,

3    and not party to the within action; my business address is 300 South Grand Avenue,

4    Twenty-Second Floor, Los Angeles, California, 90071-3132.  On August 27, 2020,

5    I served the within document(s):

6

7    **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
     DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST
     AMENDED COMPLAINT**

8

9    on the interested parties in this action as follows:

10         Electronic Service via the Court's CM/ECF system pursuant to Civ. L.R.

11   5.4(c) and email, for purposes of the proposed order.

12         I declare under penalty of perjury, under the laws of the United States of

13   America and the State of California, that the above is true and correct.

14         Dated this 27th day of August, 2020 at Los Angeles, California.

15

16

17                                        Christine Resendez

18

19

20

21

22

23

24

25

26

27

28

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Los Angeles

DB2/ 39476285

24

MEMORANDUM OF PS & AS ISO
DEF'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT;
CASE NO. 3:20-CV-01352-WQH-DEB

Exhibit A, 000063