UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLAZA HOME MORTGAGE, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>AUTOMATED DATA PROCESSING, INC., a Delaware corporation doing business as ADP, LLC; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.: 3:20-cv-01352-WQH-DEB<br><br>**ORDER** |

HAYES, Judge:

    The matter pending before the Court is the Motion to Dismiss filed by Defendant Automated Data Processing, Inc. (ECF No. 13).

**I.    PROCEDURAL BACKGROUND**

    On March 16, 2020, Plaintiff Plaza Home Mortgage, Inc. initiated this action by filing a Complaint against Defendants Automated Data Processing, Inc. ("ADP") and DOES 1 through 20, inclusive, in the Superior Court of California for the County of San Diego, where it was assigned case number 37-2020-00016686-CU-BC-CTL. (ECF No. 1-2). On July 16, 2020, Defendant ADP removed the action to this Court pursuant to 28

U.S.C. §§ 1332 (diversity jurisdiction), 1441, and 1446. (ECF No. 1). On July 23, 2020, Defendant ADP filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). (ECF No. 5).

On August 13, 2020, Plaintiff filed a First Amended Complaint, which is the operative pleading in this case. (ECF No. 12). Plaintiff alleges that "[a]s a result of [Defendant] ADP's negligently designed and implemented payroll software, [Plaintiff] suffered harm . . . ." *Id*. at 2. Plaintiff brings the following five causes of action against Defendant ADP: (1) breach of contract, (2) express indemnity, (3) equitable indemnity, (4) unfair competition in violation of Business & Professions Code § 17200 *et seq*., and (5) declaratory relief. *See id*. at 8-16. Plaintiff seeks compensatory, incidental, consequential, and non-economic damages; attorneys' fees; costs; pre-judgment and post-judgment interest; "a judicial determination and declaration that [Defendant] ADP must indemnify, defend and hold [Plaintiff] harmless from and against any and all third party liabilities, claims, penalties, damages, forfeitures, suits, and the costs and expenses incident thereto"; and "such other and further relief as the Court deems just and proper." *Id*. at 17.

On August 27, 2020, Defendant ADP filed a Motion to Dismiss Plaintiff's First Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). (ECF No. 13). On August 31, 2020, the Court issued an Order denying Defendant ADP's Motion to Dismiss (ECF No. 5) as moot. (ECF No. 14). On September 21, 2020, Plaintiff filed a Response in opposition. (ECF No. 15). On September 28, 2020, Defendant ADP filed a Reply. (ECF No. 16).

## II.     ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

Defendant "ADP is a payroll and human resources services provider . . . ." (ECF No. 12 at 2). Defendant "ADP represents itself as a leader in time and attendance and compliance services." *Id*. at 3. Plaintiff "relied on [Defendant] ADP's expertise and paid significant sums for that service, which included Enhanced Payroll, Essential Time, Payroll & Tax Support, Payroll Specialist, and Workforce Now Performance, among others." *Id*.

at 2-3. "On May 22, 2017, [Plaintiff] and [Defendant] ADP entered into the ADP Workforce Now Comprehensive Services Master Services Agreement, including an Addendum" ("the 2017 Agreement"). *Id*. at 4.

Plaintiff's "internal policies were designed to comply with California wage and hour laws, and [Plaintiff] used [Defendant ADP's] [s]ervices to comply with those legal and regulatory requirements." *Id*. Plaintiff "ensured all time and labor data inputted was accurate, complete, and delivered on time." *Id*. Plaintiff "provided [Defendant] ADP all necessary information and guidance related to its time and attendance policies and guidelines, and coordinated with [Defendant] ADP to establish standards for [Defendant] ADP in its execution of the [s]ervices." *Id*.

"When [Plaintiff] began using [Defendant] ADP's services, [Defendant] ADP did not ask [Plaintiff] to select the laws it wanted [Defendant] ADP to incorporate into its services." *Id*. at 5. "Further, [Defendant] ADP never informed [Plaintiff] that it would not implement aspects of California wage and hour laws, including, without limitation, meal period penalties, unless specifically requested to do so." *Id*. Plaintiff "purchased the 'peace of mind' [Defendant] ADP was selling, and [Plaintiff] reasonably expected [Defendant] ADP's software to be free from defects with respect to its ability to catch and account for wage and hour violations." *Id*.

Plaintiff's "employees entered their time in [Defendant] ADP['s] 'TA Module,' and [Defendant] ADP assigned a pay code based on the data provided." *Id*. Defendant "ADP programed the pay codes, and the pay codes dictated how the employees were paid." *Id*. "Under California law, when an employer fails to provide a proper meal break to a nonexempt employee, the premium (penalty) owed is one hour of extra pay for each work day that this occurs." *Id*.

"In September of 2016, [Plaintiff] notified [Defendant] ADP that [Defendant] ADP was not identifying missed meal periods, meaning [Defendant] ADP's software was not recognizing the need to pay those premiums." *Id*. "On September 7, 2016, [Defendant]

ADP advised that changes were made to comply with the Meal Period law for California." *Id*.

"[I]n April 2018[,] [Plaintiff] later discovered another defect within [Defendant] ADP's system." *Id*. Defendant "ADP's negligently designed software would only flag and pay meal period premiums for the 5 hour premium, regardless of a missed 10 hour premium." *Id*. "To mitigate its potential liability, in the spring of 2018, [Plaintiff] paid missed meal period premiums to approximately 104 current and former employees." *Id*. at 5-6.

"On . . . April 3, 2018, [Plaintiff] received a wage and hour demand from counsel representing multiple [ ] ex-employees." *Id*. at 6. "On April 12, 2018, [Plaintiff] sent [Defendant] ADP a litigation hold notice and put [Defendant] ADP on notice of the demand." *Id*. Plaintiff "requested a litigation hold be placed on any and all [Plaintiff]-related wage and hour records maintained by [Defendant] ADP for a period of four years, with a starting date of March 28, 2018." *Id*. Defendant "ADP failed to respond, and [Plaintiff] sent a follow up e-mail on April 25, 2018." *Id*. "More stunning was [Defendant] ADP's April 26, 2018 refusal to agree to the preservation demand." *Id*.

"[O]n . . . April 23, 2018, Leslie McDonough filed a class action complaint against [Plaintiff] alleging seven causes of action, including the violation of Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums).[]" *Id*. "On . . . June 6, 2018, Mario Guerrero filed a separate representative action pursuant to the Private Attorneys General Act (PAGA), also alleging a violation of Labor Code §§ 226.7 and 512(a).[]" *Id*.

Plaintiff "provided copies of the McDonough and Guerrero complaints to [Defendant] ADP and requested that [Defendant] ADP confirm it would honor its agreement to indemnify, defend, and hold [Plaintiff] harmless pursuant to the terms of their agreement." *Id*. Defendant "ADP sought to prevent performance under the 2017 Agreement and withhold its benefits from [Plaintiff] by providing a bad-faith reason in support of its decision to deny [Plaintiff]'s request for indemnity." *Id*. Defendant "ADP responded by saying [Defendant] ADP had the accurate design to comply with the legal

and regulatory requirements of California law, however, [Defendant] ADP claimed [Plaintiff] 'failed to give instructions to implement it.'" *Id*. at 7. "As a result of [Defendant] ADP's bad-faith denial of its obligation to indemnify [Plaintiff], [Plaintiff] has had to pay, and continues to pay, defense costs out-of-pocket – costs which [Defendant] ADP still has not paid for no defensible reason." *Id*.

"Subsequent to the filing of the McDonough and Guerrero complaints, [Plaintiff] uncovered additional meal period flagging errors by [Defendant] ADP's negligently designed software for the period of time after [Defendant] ADP confirmed changes were made . . . 'to comply with the Meal Period law for California.'" *Id*. Specifically,

> (a) If an employee never entered a meal period and simply entered a full day of work, [Defendant] ADP failed to identify a meal period violation. For example, an employee's time entry of 8:00 a.m. to 4:00 p.m. would not result in [Defendant] ADP flagging a meal period violation for the missed meal period;
> (b) [Defendant] ADP failed to flag missed and short second meal periods. This affected a group of employees who worked shifts longer than 10 hours;
> (c) "Short" meal periods that were between 20-29 minutes in length did not result in a meal period premium payment;
> (d) Employees were not paid for late meal periods that were taken at 5 hours and 1 minute (or more) into the employee's shift. A meal period that starts 5 hours and 1 minute into the shift would be considered "late" and should have resulted in [Defendant] ADP flagging the late meal period so [Plaintiff] could pay the employee a meal period premium payment.

*Id*. at 7-8.

"On . . . January 24, 2020, Guerrero dismissed his complaint and filed a new class-action complaint along with McDonough, alleging unpaid meal period premiums.[]" *Id*. at 8. "The cases were combined into one." *Id*.

### III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . .

.” Fed. R. Civ. P. 8(a)(2). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001)).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citation omitted). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell*, 266 F.3d at 988. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft*, 556 U.S. at 678).

## IV.   DISCUSSION

### a. Breach of Contract (claim 1)

Defendant ADP contends that Plaintiff breached its contractual obligations to Defendant ADP. Defendant ADP contends that Plaintiff is responsible for how it uses Defendant ADP's services to comply with legal and regulatory requirements and that Plaintiff's own failures have exposed Plaintiff to potential liability. Defendant ADP contends that Plaintiff's right to indemnification only arises from Defendant ADP's negligence or willful misconduct, neither of which Plaintiff has sufficiently alleged. Defendant ADP contends that actions taken before the 2017 Agreement, Plaintiff's

corrective payments to mitigate potential liability, and Plaintiff's failure to confirm the accuracy of submitted data fail to establish Defendant ADP's negligence. Defendant ADP contends that Plaintiff failed to promptly notify Defendant ADP in writing of a suit or cause of action, failed to permit Defendant ADP to control negotiations and defense, and failed to take all reasonable steps to mitigate any potential damages that may result.

Plaintiff contends that it entered into the 2017 Agreement With Defendant ADP. Plaintiff contends that it performed all conditions, covenants, and promises required by the 2017 Agreement. Plaintiff contends that Defendant ADP breached the 2017 Agreement and that Plaintiff suffered damages. Plaintiff contends that it has sufficiently alleged Defendant ADP's negligence or willful misconduct. Plaintiff contends that it took all reasonable steps to mitigate any potential damages. Plaintiff contends that it put Defendant ADP on notice of the wage and hour demand and the *McDonough* and *Guerrero* actions. Plaintiff contends that promptness of notice is a disputed fact issue that cannot be resolved at the pleading stage.

Under New York state law, "[t]he elements of a breach of contract include the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages . . . ." *Morningside Acquisition I, LLC v. Gandy*, 66 Misc. 3d 276, 281 (N.Y. Sup. Ct. 2019) (citation omitted).[1] "As a general matter, the objective of contract interpretation is to give effect to the expressed intentions of the parties." *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989). "Where the language of the contract is unambiguous, and reasonable persons could not differ as to its meaning, the question of interpretation is one of law to be answered by the court." *Id*. "Contract language is not ambiguous if it has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which

---

[1] The parties agree that the 2017 Agreement is governed by the laws of New York and that there is no conflict between the laws of New York and California regarding breach of contract for purposes of this Order.

there is no reasonable basis for a difference of opinion." *Id*. (alteration in original). "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." *Id*. "The court is not required to find the language ambiguous where the interpretation urged by one party would strain[] the contract language beyond its reasonable and ordinary meaning." *Id*. (alteration in original). In other words, "if an agreement is complete, clear and unambiguous on its face[, it] must be enforced according to the plain meaning of its terms." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (alteration in original).

The 2017 Agreement states that

> Design of the Services.  ADP will design the Services, including the functions and processes applicable to the performance of the Services, to assist the Client in complying with its legal and regulatory requirements applicable to the Services, and ADP will be responsible for the accuracy of such design. Client and not ADP will be responsible for (i) how it uses the Services to comply with its legal and regulatory requirements and (ii) the consequences of any instructions that it gives or fails to give to ADP, including as part of the implementation of the Services, provided ADP follows such instructions. Services do not include any legal, financial, regulatory, benefits, accounting or tax advice.

(ECF No. 13-1 at 37) (emphasis omitted). The 2017 Agreement further states that

> End of the Pay Period Administration; Resolution of Error Exceptions.  Client acknowledges and agrees that Client will be responsible for ensuring that all time and labor data input submitted by Client to ADP is accurate, complete and delivered on time. . . .
>
> Data Administration.  All data entry, adjustment and corrections to the TA module must be made by Client.  ADP can make adjustments in the Payroll module only.  Prior to commencement of Services, Client shall provide to ADP all necessary information and guidance relating to its time and attendance policies and guidelines and coordinate with ADP to establish standards for ADP in its execution of the Services.

*Id*. at 51 (emphasis omitted).  The Addendum to the 2017 Agreement states that

> Section 7 of ANNEX A – ADP Workforce Now Comprehensive Services – General Terms and Conditions (together with Statements of Core and Optional Services) of the Agreement is hereby amended by the addition of the following as Section 7.C.: "C. General Indemnity. Subject to monetary limit on damages in Section 7.A. of the Annex A of the Agreement, ADP will indemnify, defend and hold Client harmless from and against any and all third party liabilities, claims, penalties, damages, forfeitures, suits, and the costs and expenses incident thereto (including the costs and expenses of defense, settlement and reasonable attorneys' fees), arising from the negligence or willful misconduct of ADP in its performance of the Services including any Incident provided that, (i) ADP is promptly notified in writing of such suit or cause of action, (ii) ADP controls any negotiations or defense and Client assists ADP as reasonably required by ADP, and (iii) Client takes all reasonable steps to mitigate any potential damages that may result."

*Id*. at 34-35.

In the First Amended Complaint, Plaintiff alleges that

> Plaza has performed all conditions, covenants and promises required on its part to be performed in accordance with the terms and conditions of the 2017 Agreement.  This includes, without limitation, Plaza ensured all time and labor data inputted was accurate, complete, and delivered on time.  Plaza provided ADP all necessary information and guidance related to its time and attendance policies and guidelines, and coordinated with ADP to establish standards for ADP in its execution of the Services.

(ECF No. 12 at 8).  Plaintiff further alleges that

> ADP has breached the 2017 Agreement by failing to provide the Services in a good, diligent and professional manner in accordance with industry standards, utilizing personnel with a level of skill commensurate with the Services to be performed.
>
> As alleged above, Plaza employees entered their time in the ADP "TA Module," and ADP assigned a pay code based on the data provided.  ADP programed the pay codes, and the pay codes dictated how the employees were paid. . . .  In September of 2016, Plaza notified ADP that ADP was not identifying missed meal periods, meaning ADP's software was not recognizing the need to pay those premiums.
>
> On September 7, 2016, ADP advised that changes were made to comply with the Meal Period law for California.  Prior to that time, as admitted by

> ADP, its Services were not capturing missed meal periods. Contrary to ADP's representations of error-free payroll processing, ADP's software was negligently designed and implemented.
>
> After the pay code changes were allegedly implemented to comply with California wage and hour laws, in April 2018 Plaza later discovered another defect within ADP's system. ADP's negligently designed software would only flag and pay meal period premiums for the 5 hour premium, regardless of a missed 10 hour premium. To mitigate its potential liability, in the spring of 2018 Plaza paid missed meal period premiums to approximately 104 current and former employees.
>
> Plaza uncovered additional meal period flagging errors by ADP's negligently designed software for the period of time after ADP confirmed changes were made to Pay Class CAHRLY, CAPTHRLY, and CATEMPHRLY "to comply with the Meal Period law for California." . . .
>
> If ADP's Services were designed in a good, diligent and professional manner in accordance with industry standards, utilizing personnel with a level of skill commensurate with the Services to be performed, the above errors would not have occurred.

*Id*. at 9-10. Plaintiff further alleges that

> On or around April 3, 2018, Plaza received a wage and hour demand from counsel representing multiple Plaza ex-employees. On April 12, 2018, Plaza sent ADP a litigation hold notice and put ADP on notice of the demand. Plaza requested a litigation hold be placed on any and all Plaza-related wage and hour records maintained by ADP for a period of four years, with a starting date of March 28, 2018. ADP failed to respond, and Plaza sent a follow up e-mail on April 25, 2018. More stunning was ADP's April 26, 2018 refusal to agree to the document preservation demand.
>
> Thereafter, on or around April 23, 2018, Leslie McDonough filed a class action complaint against Plaza alleging seven causes of action, including the violation of Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums).[] On or around June 6, 2018, Mario Guerrero filed a separate representative action pursuant to the Private Attorneys General Act (PAGA), also alleging a violation of Labor Code §§ 226.7 and 512(a).[]
>
> Plaza provided copies of the McDonough and Guerrero complaints to ADP and requested that ADP confirm it would honor its agreement to

> indemnify, defend, and hold Plaza harmless pursuant to the terms of their agreement. ADP breached its obligations to Plaza, including, without limitation, its breach of the 2017 Agreement by refusing to indemnify, defend, and hold Plaza harmless for the claims asserted in the McDonough and Guerrero actions that arise from ADP's negligent performance of the Services.
>
> On information and belief, ADP sought to prevent performance under the 2017 Agreement and withhold its benefits from Plaza by providing a bad-faith reason in support of its decision to deny Plaza's request for indemnity. Contrary to the terms of the 2017 Agreement and the written correspondence between the parties, ADP responded by saying ADP had the accurate design to comply with the legal and regulatory requirements of California law, however, ADP claimed Plaza "failed to give instructions to implement it." As a result of ADP's bad-faith denial of its obligation to indemnify Plaza, Plaza has had to pay, and continues to pay, defense costs out-of-pocket – costs which ADP still has not paid for no defensible reason. On information and belief, ADP has failed to undertake its obligation to indemnify, defend, and hold Plaza harmless because it is more interested in avoiding the obligation, and thus, put its own interests above that of Plaza.

*Id*. at 10-11.

Plaintiff alleges that it "performed all conditions, covenants and promises required on its part to be performed in accordance with the terms and conditions of the 2017 Agreement" by "ensur[ing] all time and labor data inputted was accurate, complete, and delivered on time" and by "provid[ing] [Defendant] ADP all necessary information and guidance related to its time and attendance policies and guidelines, and coordinat[ing] with [Defendant] ADP to establish standards for [Defendant] ADP in its execution of the [s]ervices." (ECF No. 12 at 8). Plaintiff alleges that it provided Defendant ADP with "instructions", "including as part of the implementation of the [s]ervices," as required by the 2017 Agreement. (ECF No. 13-1 at 37). Plaintiff sufficiently alleges performance of its obligations pursuant to the 2017 Agreement regarding Defendant ADP's alleged "fail[ure] to provide the [s]ervices in a good, diligent and professional manner in accordance with industry standards, utilizing personnel with a level of skill commensurate with the [s]ervices to be performed." (ECF No. 12 at 9).

Plaintiff alleges that it "performed all conditions, covenants and promises required on its part to be performed in accordance with the terms and conditions of the 2017 Agreement" by "sen[ding] [Defendant] ADP a litigation hold notice and put[ting] [Defendant] ADP on notice of the [wage and hour] demand" on April 12, 2018 and by "provid[ing] copies of the McDonough and Guerrero complaints to [Defendant] ADP . . . ." (ECF No. 12 at 8, 10-11). Plaintiff alleges that it "promptly notified [Defendant ADP] in writing of such suit or cause of action . . . ." (ECF No. 13-1 at 34-35). Plaintiff sufficiently alleges performance of its obligations pursuant to the 2017 Agreement regarding Defendant ADP's alleged "bad-faith denial of its obligation to indemnify" Plaintiff and Defendant ADP's alleged "fail[ure] to undertake its obligation to indemnify, defend, and hold [Plaintiff] harmless . . . ." (ECF No. 12 at 11).

The Court finds that the 2017 Agreement "is complete, clear and unambiguous on its face" regarding Plaintiff's obligation to provide Defendant ADP with "instructions", "including as part of the implementation of the [s]ervices," and Plaintiff's obligation to "promptly notif[y] [Defendant ADP] in writing of such suit or cause of action . . . ." *Eternity Glob. Master Fund Ltd.*, 375 F.3d at 177; ECF No. 13-1 at 34-35, 37. The Court finds that the 2017 Agreement "must be enforced according to the plain meaning of its terms." *Eternity Glob. Master Fund Ltd.*, 375 F.3d at 177. The Court finds that Plaintiff sufficiently alleges performance of its obligations pursuant to the 2017 Agreement and Defendant ADP's breach of the 2017 Agreement. The Court concludes that Plaintiff alleges a plausible claim for breach of contract against Defendant ADP.

### b. Express Indemnity (claim 2)

Defendant ADP contends that Plaintiff's claim for express indemnity relies on the indemnification provision of the 2017 Agreement. Defendant ADP contends that Plaintiff is not entitled to indemnification because indemnification is not owed pursuant to the terms of the contract. Plaintiff contends that it sufficiently alleges a claim for express indemnity. Plaintiff contends that Defendant ADP negligently performed its services and that third-party suits arose from Defendant ADP's negligence. Plaintiff contends that the express

language of the 2017 Agreement controls and requires Defendant ADP to provide defense and indemnity.

In the First Amended Complaint, Plaintiff alleges that

> On or around May 22, 2017, Plaza and ADP entered into the 2017 Agreement, whereby ADP agreed to indemnify, defend and hold Plaza harmless from and against any and all third party liabilities, claims, penalties, damages, forfeitures, suits, and the costs and expenses incident thereto (including the costs and expenses of defense, settlement and reasonable attorneys' fees), arising from the negligence or willful misconduct of ADP in its performance of the Services including any Incident.
>
> Thereafter, due to ADP's negligence and/or willful misconduct, as alleged herein, ADP failed to provide the Services in a good, diligent and professional manner in accordance with industry standards, utilizing personnel with a level of skill commensurate with the Services to be performed.
>
> On or around April 3, 2018, Plaza received a wage and hour demand from counsel representing multiple Plaza ex-employees. On April 12, 2018, Plaza sent ADP a litigation hold notice and put ADP on notice of the demand. Plaza requested a litigation hold be placed on any and all Plaza-related wage and hour records maintained by ADP for a period of four years, with a starting date of March 28, 2018. ADP failed to respond, and Plaza sent a follow up e-mail on April 25, 2018. More stunning was ADP's April 26, 2018 refusal to agree to the preservation demand.
>
> On or around April 23, 2018, Leslie McDonough filed a class action complaint against Plaza alleging seven causes of action, including the violation of Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums).
>
> On or around June 6, 2018, Mario Guerrero filed a separate representative action pursuant to the Private Attorneys General Act (PAGA), also alleging a violation of Labor Code §§ 226.7 and 512(a).
>
> On or around January 24, 2020, Guerrero dismissed his complaint and filed a new class-action complaint along with McDonough, alleging unpaid meal period premiums.
>
> If McDonough, Guerrero, and any member of the defined class sustained damages as alleged in their complaints, these damages were caused,

> entirely or in part, by Defendants' negligently and/or intentionally designed and implemented software, and the alleged damages are due to no fault of Plaza.
>
> Plaza gave written notice to ADP of the commencement of the McDonough and Guerrero complaints, requesting ADP honor its agreement to indemnify, defend, and hold Plaza harmless pursuant to the terms of the 2017 Agreement. ADP refused to indemnify, defend, and hold Plaza harmless pursuant to the terms of the 2017 Agreement.
>
> Plaza has performed all the conditions and obligations to be performed on its part under the 2017 Agreement.

(ECF No. 12 at 12-13).

The Court has found that Plaintiff sufficiently alleges performance of its obligations pursuant to the 2017 Agreement regarding Defendant ADP's alleged "bad-faith denial of its obligation to indemnify" Plaintiff and Defendant ADP's alleged "fail[ure] to undertake its obligation to indemnify, defend, and hold [Plaintiff] harmless . . . ." *Id.* at 11. The Court concludes that Plaintiff alleges a plausible claim for express indemnity against Defendant ADP.

### c. Equitable Indemnity (claim 3)

Defendant ADP contends that Plaintiff's claim for equitable indemnity arises outside of the 2017 Agreement because Plaintiff seeks relief regarding events which occurred between April 23, 2014 and May 21, 2017. Defendant contends that between April 23, 2014 and May 21, 2017, the parties' relationship was governed by other contracts that did not provide for indemnification. Defendant ADP contends that equitable indemnity is barred by Plaintiff's failure to sufficiently allege a basis for tort liability against Defendant ADP. Plaintiff contends that it sufficiently alleges a claim for equitable indemnity. Plaintiff contends that it faces liability to a third party through no fault of its own for Defendant ADP's negligent or intentional conduct. Plaintiff contends that its equitable indemnity claim is limited to a narrow timeframe that predates the 2017 Agreement because the

equitable indemnity claim is limited to members of the defined classes in the *McDonough* and *Guerrero* actions from April 23, 2014 to May 21, 2017.

In the First Amended Complaint, Plaintiff alleges that

> On or around April 23, 2018, Leslie McDonough filed a class action complaint against Plaza alleging seven causes of action, including the violation of Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums).
>
> On or around June 6, 2018, Mario Guerrero filed a separate representative action pursuant to the Private Attorneys General Act (PAGA), also alleging a violation of Labor Code §§ 226.7 and 512(a).
>
> On or around January 24, 2020, Guerrero dismissed his complaint and filed a new class-action complaint along with McDonough, alleging unpaid meal period premiums, defining the proposed class as all current and former hourly-paid or non-exempt employees who worked at Plaza within the State of California at any time during the period from April 23, 2014 to final judgment.
>
> If McDonough, Guerrero, and any member of the defined class during the period of April 23, 2014 to May 21, 2017 sustained damages as alleged in the complaints, these damages were caused, entirely or in part, by Defendants' negligently and/or intentionally designed and implemented software, and the alleged damages are due to no fault of Plaza.
>
> Plaza gave written notice to ADP of the commencement of the McDonough and Guerrero complaints, requesting ADP indemnify, defend, and hold Plaza harmless. ADP refused.
>
> Plaza has performed all the conditions and obligations to be performed on its part.

(ECF No. 12 at 14).

The Court has found that Plaintiff sufficiently alleges performance of its obligations pursuant to the 2017 Agreement regarding Defendant ADP's alleged "bad-faith denial of its obligation to indemnify" Plaintiff and Defendant ADP's alleged "fail[ure] to undertake its obligation to indemnify, defend, and hold [Plaintiff] harmless . . . ." *Id.* at 11. The Court

concludes that Plaintiff alleges a plausible claim for equitable indemnity against Defendant ADP.

### d. Declaratory Relief (claim 5)

Defendant ADP contends that Plaintiff's declaratory relief claim fails because the relief sought concerns a hypothetical controversy regarding Defendant ADP's alleged obligation to indemnify Plaintiff. Defendant ADP contends that it has an obligation to indemnify Plaintiff only when all contractual conditions in the 2017 Agreement have been satisfied and that Plaintiff fails to establish that the conditions have been met. Plaintiff contends that it sufficiently alleges a claim for declaratory relief and seeks a judicial determination of the parties' future rights and obligations. Plaintiff contends that it has identified the subject on which declaratory relief is needed, has articulated the parties' respective positions on the subject, and has asked the Court to issue a declaration about the future rights and legal obligations of the parties.

In the First Amended Complaint, Plaintiff alleges that

> An actual and substantial controversy has arisen and now exists regarding ADP's obligation to indemnify, defend and hold Plaza harmless from and against any and all third party liabilities, claims, penalties, damages, forfeitures, suits, and the costs and expenses incident thereto (including the costs and expenses of defense, settlement and reasonable attorneys' fees), arising from the negligence or willful misconduct of ADP in its performance of the Services including any Incident, including, without limitation, with respect to the McDonough and Guerrero complaints.

> Plaza contends that ADP must indemnify, defend and hold Plaza harmless from and against any and all third party liabilities, claims, penalties, damages, forfeitures, suits, and the costs and expenses incident thereto (including the costs and expenses of defense, settlement and reasonable attorneys' fees), arising from the negligence or willful misconduct of ADP in its performance of the Services including any Incident, including, without limitation, with respect to the McDonough and Guerrero complaints. ADP denies such obligation.

> By reason for the foregoing controversy, Plaza respectfully requests the Court make a judicial determination to settle the parties' future rights and legal

>obligations with respect to whether ADP must indemnify, defend and hold Plaza harmless from and against any and all third party liabilities, claims, penalties, damages, forfeitures, suits, and the costs and expenses incident thereto (including the costs and expenses of defense, settlement and reasonable attorneys' fees), arising from the negligence or willful misconduct of ADP in its performance of the Services including any Incident, including, without limitation, with respect to the McDonough and Guerrero complaints.
>
>Such a judicial determination is necessary at this time in order for the parties to resolve their dispute as expressed in the instant action, and it will obviate the need for multiple future lawsuits between the same parties.

(ECF No. 12 at 15-16).

The Court has found that Plaintiff sufficiently alleges performance of its obligations pursuant to the 2017 Agreement regarding Defendant ADP's alleged "bad-faith denial of its obligation to indemnify" Plaintiff and Defendant ADP's alleged "fail[ure] to undertake its obligation to indemnify, defend, and hold [Plaintiff] harmless . . . ." *Id*. at 11. The Court concludes that Plaintiff alleges a plausible claim for declaratory relief against Defendant ADP.

### V.  Unfair Competition in Violation of Business & Professions Code § 17200 *et seq*. (claim 4)

Defendant ADP contends that Plaintiff's unfair competition claim fails because Plaintiff has fails to allege facts sufficient to show unlawful or unfair conduct or unfair, deceptive, untrue, or misleading advertising by Defendant ADP. Plaintiff states that it "does not oppose [Defendant] ADP's motion with respect to its fourth cause of action for [u]nfair [c]ompetition." (ECF No. 15 at 20).

Courts will grant a motion to dismiss when the non-moving party files a notice of non-opposition. *See* CivLR 7.1(f)(3)(a); *see e.g.*, *Palomares v. Bear Stearns Residential Mortg. Corp.*, No. 07cv01899 WQH (BLM), 2008 WL 686683, at *3 (S.D. Cal. Mar. 13, 2008) (same). The Court will grant Defendant ADP's Motion to Dismiss Plaintiff's fourth cause of action for unfair competition in violation of Business & Professions Code § 17200 *et seq*. because Plaintiff has made a clear statement of non-opposition to dismissal of this

claim. *See* ECF No. 15 at 20; *see e.g.*, *Palomares*, 2008 WL 686683, at *3 ("The Court will grant the Motion to Dismiss the causes of action against Bear Stearns for violation of California Civil Code sections 1920 and 1921, concealment, negligent misrepresentation, negligence and breach of the implied covenant of good faith and fair dealing because Plaintiffs have made a clear statement of non-opposition to dismissal of these claims.").

## VI. CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss filed by Defendant Automated Data Processing, Inc. (ECF No. 13) is GRANTED as to Plaintiff's fourth cause of action for unfair competition in violation of Business & Professions Code § 17200 *et seq*. and is otherwise DENIED.

Dated: January 4, 2021

*[signature]*
Hon. William Q. Hayes
United States District Court